UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT
HARTFORD

```
*************************************
 GARY SESSION                         *    CIVIL ACTION NO.
                    PLAINTIFF         *    303-CV-00943 (AWT)
                                      *
 VS.                                  *
                                      *
 CITY OF NEW HAVEN; STEPHEN           *    JUNE 19, 2006
 COPPOLA; AND EDWIN RODRIGUEZ         *
                                      *
                                      *
                                      *
                                      *
                    DEFENDANTS        *
*************************************
```

**OBJECTION TO PLAINTIFF'S MOTIONS TO COMPEL AND FOR SANCTIONS DIRECTED TO COPPOLA AND RODRIGUEZ DATED MAY 31, 2006**

The individual defendants, Steven Coppola ("Coppola") and Edwin Rodriguez ("Rodriguez") hereby object to the Plaintiff's Motions to Compel and for Sanctions related to discovery dated May 31, 2006. For all of the reasons set forth herein, Plaintiff's Motions to Compel and for Sanctions directed to Coppola and Rodriguez must be denied.

**I.   FACTS.**

The facts of this case are not complex. There was a fatal drive-by shooting in New Haven. Homicide detectives Rodriguez and Coppola were among other officers/detectives assigned to investigate. Plaintiff's Exhibits J and K. Their investigation led them to have reasonable suspicion that Plaintiff was involved in this murder which appeared to be retaliation for lower level "employees" stealing from their drug dealing "boss." See id.; see also, Plaintiff's Exhibit C. They had reviewed police reports from officers that responded that evening. See Plaintiff's Exhibits J and

K. They had interviewed several people to see if anyone knew, heard or saw anything. See id. They reviewed autopsy records and reports of forensic testing. See id. They took witness statements from individuals, including a confidential informant provided to Rodriguez from his two superiors. See id. This confidential informant had proven reliable and credible in the past according to his superior officers. Photo boards were also reviewed and identifications made by witnesses as set forth in the witness statements. See id.[1]

The statement that the confidential informant relayed on November 8, 1999, suggested that Plaintiff had instructed his "employee" (identified as Jose "Bebe" Santiago) to cause injury or death to other low-level "employees" (Black kids) who had stolen drug money from him. See Plaintiff's Exhibit C, Statement of Myra Mercado, p. 4-8. She indicated that on the night in question, she was with Plaintiff when received a call from Sean and met up with Sean who had received a call from Sharon that the Black kids were in the area. See id., p. 8, 10, 14, 15. She stated she saw Plaintiff hand Santiago a gun, and then saw him (see id., p. 19-21), Sean and a guy named "Willie" took off in a Honda CRX. See id., p. 18, 20 and 21. She went on her way and heard six gunshots a short time later. See id., p. 22. She was later interviewed again on December 5, 1999, wherein she stated that she ran into Santiago on December 3, 1999 and he told her how he shot a Black kid and earned his respect – and a teardrop tattoo (signifying that he has killed) – down on Howard Avenue at Beirne's (a pharmacy on the corner). See id., p. 2, 3, 5, 6, 10 and 11. She stated he then showed her a gun in his waist band. See id., p. 7. Her identity as Myra Mercado has since been disclosed by the City of New Haven, and Plaintiff has been in possession of her statements, since at least December

---

[1] Despite individual Defendants disclosing the statements of Larkland Martin and Sharon Adkins, in addition to those of Scruggs and McCann, Plaintiff has not included same in Plaintiff's Exhibits J and K. Therefore Martin and Adkins's statements are attached hereto as Exhibits A and A-1. Plaintiff produced the statements of Scruggs, McCann, Martin, Adkins, and Mercado at his deposition on December 30, 2005, and thus is in possession of same.

2

30, 2005.

These statements were consistent with the statement of Juan Scruggs, an occupant of the vehicle fired upon, who gave a statement on July 25, 1999, the night of the murder. He stated he had just come from his female friend's house on Columbus Avenue. See Plaintiff's Exhibit A, Statement of Juan Scruggs, p. 3. He stated that a car with Puerto Ricans cut them off and words were exchanged, and then when they reached the intersection of Howard and Columbus Avenues, near Beirne's, they were fired upon. See id., p. 3-4. He further stated that he returned fire. See id., p. 17. The Plaintiff is in possession of his statement.

These statements were also consistent with the statement of Albert McCann, the driver of the vehicle shot upon and the cousin on the murder victim, which statement was also taken on July 25, 1999, the night of the murder. He stated that they had just come from his friend's female friend's house. See Plaintiff's Exhibit B, Statement of Albert McCann, p. 3. He stated that a light blue Honda cut them off. See id., p. 7. He saw three people in the Honda, he thought they were Hispanic. See id., p. 9. He stated they exchanged words and then the passenger pulled out a gun and started shooting at them. See id., p. 9-12. The Plaintiff is in possession of his statement.

These statements were also consistent with the statement of Sharon Adkins whose statement was taken on November 7, 1999. At the time she lived on Columbus Avenue. She sells drugs for Sean (later identified as DeShawn Johnson), E (later identified as Albert McCann) and Black for income. See Exhibit A, Statement of Sharon Adkins, p. 5-6. She stated that Sean works for Plaintiff and E stole money from Sean. See id., p. 8. She stated that Sean told her to call him if E came to her house. See id., p. 12. She further stated that E went to her house so she called Sean as instructed. See id., p. 13-15. She heard shots shortly thereafter when she and her friend were walking. See id., p. 16-17. The Plaintiff is in possession of her statement.

3

These statements were also consistent with the statement of a second confidential informant taken on December 4, 1999. He stated that he was at a house on Howard Avenue when he heard gunshots. See Exhibit A-1, Statement of Larkland Martin, p. 2. He looked and saw three people in a car, possibly a Honda – two Hispanics and an African American. See id. The African American was driving and the passenger was shooting towards a red jeep. See id., p. 4-5. After Plaintiff's arrest, this confidential informant's identity as Larkland Martin has been disclosed and Plaintiff is in possession of his statement.

Aside from being present during when one or more of the foregoing witness statements were taken, Coppola sought a search and seizure warrant for the McCann vehicle – a red Suzuki jeep-like vehicle. Plaintiff's Exhibit K. Coppola did not sign the arrest warrant application; Rodriguez did.[2] Plaintiff's Exhibit J. Based upon the witness statements and photo board identifications recited in the application and a probable cause hearing, the Court found probable cause and issued the arrest warrant on January 5, 2001. Plaintiff's Exhibit J. The Plaintiff is in possession of the application for arrest warrant as well as the search and seizure warrant for the red Suzuki.

Charges against the Plaintiff were nolled, and the Plaintiff released. The charges were dropped against him. He thereafter commenced this action for purported violations of his Constitutional rights as were as state law claims.

II.     ARGUMENT.

Plaintiff contends a delay concerning the scheduling order occurred due to replacement of corporation counsel, however, corporation counsel and the undersigned had executed the 26f

---

[2] It should be noted that Plaintiff's Exhibits D and E were not available to Defendants at the time of Plaintiff's probable cause hearing. Exhibit D states therein that a private investigation was conducted on August 1, 2001 (several months after the probable cause hearing and issuance of the arrest warrant). Exhibit E is not dated or signed and therefore its evidentiary value is questionable. Neither Exhibit is relevant at all to the Motions to Compel.

4

Report, and it took approximately a year for Plaintiff's counsel to execute and file same. See Exhibit B, letters from undersigned requesting Plaintiff's counsel to file the executed 26f report. During the telephonic hearing with Magistrate Martinez on May 10, 2006, Plaintiff's counsel acknowledged that the City was likely in possession of documentation responsive to outstanding discovery requests.[3] She further acknowledged that she was in possession of responses by Coppola and Rodriguez and she was "for the most part, satisfied that the City could produce everything." See Exhibit C, Transcript from May 10, 2006 telephonic conference with Magistrate Martinez, p. 17, lines 2-3.  **In fact, Plaintiff's counsel represented "at this time I would represent to the Court that I'm not looking to file a motion to compel against the individual detectives only as**

---

[3] Coppola and Rodriguez had provided documents in their and/or counsel's possession with the exception of statements of a confidential informant in which the investigation is reported to be open and certain information from their personnel files. These statements of the confidential informants are protected under the Freedom of Information Act, as they contain information concerning the informant. The undersigned pointed out to the Magistrate, however, that Plaintiff had disclosed the confidential informants' statements during Plaintiff's deposition, essentially rendering the request for same and related objections (interrogatories #24 and 25) based on FOIA moot. The copies obtained by the individual defendants are exactly the same as that which the Plaintiff produced at his deposition. While it is unclear if and what was redacted, the individual defendants are not in possession of any other copy and therefore are unable to produce a different version.

With respect to production requests seeking the individual defendants' entire personnel files, the individual defendants disclosed all commendations and discipline. The individual defendants did not disclose those documents which contain address information, social security numbers, pay information and/or spouse or children information. Based on the individual defendants' objections, this information is not reasonably calculated to lead to the admissibility of discoverable evidence and would interfere with employee/employer confidences. Police officers often maintain unlisted phone numbers and try to protect their addresses and family information from the public for safety reasons. After the continuation of Plaintiff's deposition, all counsel had a conference and the personnel files were mentioned. This concern was conveyed to Plaintiff's counsel and an in camera review was suggested by counsel to the City. Plaintiff's counsel indicated that such a review sounded reasonable, never mentioned it again or sought in camera review, and now seems to have changed her mind. The individual defendants are willing to allow Plaintiff's counsel to view the contents of the personnel file, however would like some assurance that any personal information concerning address, spouse, social security, pay, and/or children, will not be relayed to Plaintiff and/or any other person – a confidentiality stipulation would accomplish this end.

5

**to the City of New Haven."** Id. at lines 5-8. Thereafter, the Court gave the City time to work with Plaintiff's counsel to resolve outstanding discovery. See id, at lines 10-15.

With respect to interrogatories #27, 29 and 35, the individual officers answered the interrogatory posed. Plaintiff is now seeking additional and/or other information without requesting permission to serve additional interrogatories. These responses seem to be of a sort that could easily be obtained through deposition. When the undersigned conveyed this to Plaintiff's counsel, she responded that the interrogatories were not drafted by her and were admittedly poorly written. In footnote 4 of Plaintiff's brief, Plaintiff complains that he was never given a copy of the statements of Scruggs, Mercado, Martin and McCann. Included in the Request for Production responses filed by both individual defendants, dated November 18, 2005, copies of the statements for McCann and Scruggs were disclosed to Plaintiff. As for the other two, similar FOIA objections were made as they were listed as confidential informants in the application for arrest warrant and according to City personal, the investigation was still ongoing. Despite Plaintiff's position that he has never been provided with any statements of these four people, all of the statements related to these four were disclosed by Plaintiff at his deposition on December 30, 2005.

Finally, Plaintiff argues that it is difficult to believe that discovery provided would only include the application for the arrest warrant, letters of commendation and a letter of rescindation. In actually, statements of all non-confidential informants, all affidavits prepared by the individual defendants, all warrant applications, all police reports, and all commendations and disciplinary action documentation, were provided. There were no forensic tests performed by individual defendants, nor were there any photographs taken by individual defendants so there were no documents to produce in regard to those requests as indicated. With respect to tapes, video recordings and/or evidence logs, those are property of the police department itself, and the

6

individual defendants are no longer employed by the police department. On November 14, 2005, the undersigned, by her paralegal, wrote to the City to obtain copies of any tapes, videos and or evidence logs and the verbal response was that there were not any. See Exhibit D.  Accordingly, there were no documents, tapes, videos or logs to disclose in response thereto.  To the extent that any evidence and/or tapes, statements, etc. were destroyed, the individual Plaintiffs claim no involvement in that.  To their knowledge, any evidence they collected was placed in a homicide box. Therefore, as it has been represented to the undersigned that no tapes, video recordings and/or evidence logs exist that have not been disclosed to Plaintiff, and the individual defendants maintain that they did not destroy any evidence, etc., the undersigned believes that only the City can explain what occurred.  On February 3, 2006, counsel for the City disclosed all search and seizure warrants/evidence logs, including those executed by individual Defendants.  The orders for destruction of same were signed by the Court and do not have the individual Defendants' names as either the destroyer or witness to the destruction, so any claim by Plaintiff that individual Defendants destroyed evidence is wholly unfounded.

    Plaintiff's baseless claims of suspicion surrounding individual defendants purported lack of cooperation and/or baseless claims of beliefs that things are different than otherwise conveyed to Plaintiff's counsel on numerous occasions both verbally and in writing lack merit and are tiring. Plaintiff has spent months asking the same questions over and over and is unwilling to accept the responses given rather than deposing the individual defendants and/or other employees at the City in efforts to expand upon written discovery.

    The Plaintiff has previously moved to compel against  the City and attempted to include the individual defendants.  This matter was addressed in the conference with Magistrate Martinez. Plaintiff's conduct is intended to annoy, harass and delay and any fees and costs incurred in this

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN,CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

repetitive scheme were needlessly incurred and recovery of same by way of sanction is wholly inappropriate. Plaintiff seeks to sanction each individual defendant to the amount of $14,070.00. However the timesheets supplied show that the total of ALL work performed on this file was $14,070.00, which is being billed at an incredibly high rate for the level of work performed, most of which is paralegal in nature, and the majority of which does not relate to either of the individual defendants or their compliance. In fact, as shown in Plaintiff's Exhibit M, on February 2, 2006, Plaintiff's counsel wrote to the undersigned and counsel for the City and only mentioned the City's purported lack of production. On February 9, 2006, Plaintiff's counsel wrote to the undersigned to cancel scheduled depositions, again referring to the City's purported lack of compliance. See Plaintiff's Exhibit M. In that letter, Plaintiff's counsel also referred to other documentation she was seeking from the individual Defendants related to a lawsuit against the City – which was the first request to the undersigned or individual Defendants for same. See id. The undersigned responded on February 13, 2006, indicating that there was no discovery request directed to same. See id. Again on February 13, 2006, Plaintiff's counsel wrote the undersigned to indicate that depositions could not be rescheduled prior to receipt of purported outstanding discovery from the City – no mention of any outstanding discovery from individual Defendants is indicated or suggested. See id. On February 15, 2006, Plaintiff's counsel again wrote to counsel for the City to indicate receipt of documents from the City and indicating that further documentation requests may be forthcoming, thus further delaying the depositions. See id. On February 21, 2006, Plaintiff's counsel, unsatisfied with the City's production, wrote the undersigned to seek more "complete answers" to the individual defendants' interrogatory responses and production. See Plaintiff's Exhibit N. On March 2, 2006, after consultation with the individual Defendants, the undersigned responded to same. See Plaintiff's Exhibit M. The communication between Plaintiff's counsel and the undersigned

8

concerning Plaintiff's perceived non-compliance by the individual Defendants was limited to a couple of telephone calls, wherein Plaintiff's counsel was told that all documents in possession of individual Defendants and the undersigned had been provided, and the February 21, 2006 letter from Plaintiff's counsel to which the undersigned responded.  While the undersigned maintains the position that Plaintiff cannot 'get blood from a stone,' and feels that repeated attempts to ask for things from the individual Defendants that do not exist or are not in possession of the individual Defendants, but may or may not be in possession of the City, were unnecessary, such communications do not warrant sanctions on the part of the individual Defendants, and certainly do not add up to the unjustifiable amount Plaintiff seeks.  Rather, sanctions should be awarded to the individual Defendants for having to expend time and energy responding to these two motions to compel and for sanctions, after the undersigned indicated to Magistrate Martinez that she would seek sanctions if Plaintiff continued to look to the individual Defendants for discovery not in their possession. See Exhibit C, p. 14-15, lines 21-9 (lines 8 & 9 are the undersigned, not Mayer [sic]) and after Plaintiff's counsel unequivocally represented that she was not seeking to file a motion to compel against individual Defendants, but only as to the City. See id., p. 17, lines 5-8.  Reasonable sanctions against the Plaintiff for the filing of the two Motions to Compel against each of the individual Defendants total $1,382.00, which is 12 hours to review discovery, correspondence and transcript and draft a joint objection, at $125 per hour, and $132 which is the cost of the transcript from the hearing with Magistrate Martinez. See Exhibit D, attorney's fees and costs.

### III.    CONCLUSION.

There are no other documents to compel from the individual Defendants. Plaintiff has always been free to claim any outstanding objections to interrogatories and/or requests for production, which are moot now as to confidential informant statements.  Plaintiff's Motions to

9

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

Compel directed to Coppola and Rodriguez must be denied, as well as any request for sanctions, for all of the reasons as set forth herein. An award of sanctions against the Plaintiff is warranted under the circumstances in the amount of $1,382.00 representing fees and costs associated with opposing Plaintiff's motions.

                        THE DEFENDANTS,
                        STEPHEN COPPOLA AND EDWIN RODRIGUEZ

BY:        /s/ STEPHANIE S. BAIER
                Stephanie S. Baier
                Susman, Duffy & Segaloff, P.C.
                P. O. Box 1684
                New Haven, CT 06507-1684
                Phone: (203) 624-9830
                Fax: (203) 562-8430
                Federal Bar no: ct25370

## **CERTIFICATION**

I hereby certify that on June 19, 2006, a copy of the foregoing Objection to Plaintiff's Motions to Compel and for Sanctions against Coppola and Rodriguez was filed electronically and swerved by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                By:   /s/ Stephanie S. Baier
                    Stephanie S. Baier (ct25370)
                    Susman Duffy & Segaloff, P.C.
                    55 Whitney Avenue
                    P.O. Box 1684
                    New Haven, CT 06507
                    Telephone: (203) 624-9830
                    Facsimile: (203) 562-8430
                    Email:   sbaier@susmanduffy.com

`V:\Client N-O\NHCITY\Session\Pleadings\obj to motions to compel and for sanctions.wpd`