UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GARY SESSION | \* | CIVIL ACTION NO. |
| PLAINTIFF | \* | 303-CV-00943 (AWT) |
| | \* | |
| VS. | \* | |
| | | |
| CITY OF NEW HAVEN; STEPHEN | \* | AUGUST 15, 2006 |
| COPPOLA; AND EDWIN RODRIGUEZ | \* | |
| | \* | |
| DEFENDANTS | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' STEPHEN COPPOLA AND EDWIN RODRIGUEZ
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 (b), the Defendants Stephen Coppola (hereinafter, "Coppola") and Edwin Rodriguez (hereinafter, "Rodriguez," and collectively with Coppola, the "Defendants"), through counsel, move for summary judgment as to the Plaintiff's Complaint, in its entirety, and, in support, submit the following. Summary Judgment should enter as to Counts Four and Seven for the following reasons: (1) The Plaintiffs cannot establish claims for false arrest, false imprisonment or malicious prosecution because they cannot prove a lack of probable cause; (2) The Plaintiffs cannot establish claims for false arrest, false imprisonment or malicious prosecution because the Plaintiff cannot prove that the underlying criminal proceeding terminated in the Plaintiff's favor and; (3) The Defendants are entitled to qualified immunity. Summary judgment should also enter, in favor of the Defendants, with respect to the Plaintiff's pendant state law claims on the following grounds: (1) The Plaintiff cannot establish claims for false arrest, false imprisonment or malicious

1

prosecution under Connecticut law because the Plaintiff cannot prove a lack of probable cause; (2) the Court should decline supplemental jurisdiction if it disposes of the Plaintiff's Section 1983 claims; (3) The Defendants are immune from suit for their discretionary acts; and (4) The Plaintiff have failed to establish a claim for either negligent or intentional infliction of emotional distress.

## I.    BACKGROUND.

*A. Gunfight and Homicide.*  On July 25, 1999, at approximately 1:50 a.m., Anthony Lucky, Jr. (hereinafter, "Lucky") was a rear-seated passenger in a 1998 Suzuki Samurai (hereinafter, the "Samurai") being operated by his cousin, Albert McCann (hereinafter, "McCann"). L.Civ.R 56(a)1 Statement, ¶1.  Juan Scruggs (hereinafter, "Scruggs") was seated in the front passenger seat of that vehicle. Id., ¶2.  While in the vicinity of Columbus and Howard Avenues in New Haven, Connecticut, the Samurai came under gunfire from a passenger in a nearby Honda vehicle. Id., ¶3. Scruggs identified the occupants of the Honda vehicle as Hispanic in appearance. Id., ¶4.  McCann had a pistol in the vehicle, which Scruggs retrieved and used to return gunfire. Id., ¶5.  Scruggs stated that he saw blood on Lucky's shirt. Id., ¶6.  Lucky had been struck by a bullet during that ensuing gunfire battle and died thereafter at Yale-New Haven Hospital. Id., ¶7.

*B. Investigation into Lucky's Death.*

The Defendants worked as homicide detectives for the New Haven Police Department and, were assigned to investigate the shooting death of Lucky. Id., ¶8.  As part of their investigation, the Defendants conducted interviews of persons who may have knowledge of Lucky's death and reviewed police incident reports prepared by other officers. Id., ¶9.  On July 25, 1999, the date of the murder, Rodriguez took a statement from McCann. Id., ¶10.  On that same date, Rodriguez and Coppola also took a statement from Scruggs. Id., ¶11.

2

On July 26, 1999, the Chief Medical Examiner determined that Lucky had died from a gunshot wound, Id., ¶12; with the entry wound located in Lucky's back. Id., ¶13. The bullet was not recovered. Id., ¶14. Ballistic tests performed by the City of New Haven Police Department concluded that a single bullet had penetrated a spare tire mounted on the tailgate of the Samurai and struck Lucky. Id., ¶15.

On November 7, 1999, Defendants interviewed Sharon Adkins (hereinafter "Adkins"). Id., ¶40. She told the Defendants that she sold crack for an individual named DeShawn Johnson (hereinafter "Johnson"), who, in turn, worked for the Plaintiff. Id., ¶41 & ¶48. Adkins told detectives that McCann, who she referred to as "E," stole money and crack from Johnson. Id., ¶42. Johnson told Adkins that if McCann came to her house to call him. Id., ¶43. In July, 1999, McCann came to her house and Adkins called Johnson from a payphone. Id., ¶45. Upon returning from the payphone to her home, Adkins heard gunshots near her house. Id., ¶46. Adkins explained that the Plaintiff knew McCann and Scruggs because they both worked on Hallock Street at the Plaintiff's spot.[1] ¶49. Adkins had, at times, purchased crack from McCann, Johnson and Scruggs. Id., ¶50.

Shortly thereafter, the Defendants' superiors, Sergeants Canning and Norwood, put Rodriguez in touch with a registered confidential informant (hereinafter, "Mercado") that they used and found to be reliable in the past. Id., ¶16. Rodriguez interviewed this informant with Sergeants Canning and Norwood present on November 8, 1999. Id., ¶17. Mercado stated that on July 20, 1999 she had been at the Plaintiff's house, while the Plaintiff was counting drug money.[2] Id., ¶18 - 19. She stated that some "black kids," whose names she did not know, stole some of the Plaintiff's

---

1 In a subsequent interest with Rodriguez, on December 5, 1999, Adkins recognized Scruggs from a photoboard and referred to him as Buddha or Buddha Man. She also recognized McCann. Local Rules ¶ 51.
2 Mercado referred to the Plaintiff as Shabazz throughout her interview with detectives.

3

money. Id., ¶20.  Mercado overheard the Plaintiff arguing with Jose Santiago (hereinafter, "Santiago"). Id., ¶21.  She could hear the Plaintiff saying that they'd find the kids and hit them up or pistol whip them. Id., ¶22.  Mercado heard the Plaintiff say that he wanted the kids who stole the money to work it off penny by penny or, otherwise, be killed. Id., ¶23.

During the interview, Mercado also stated that on July 24, 1999[3], she was with the Plaintiff when he got a call from Johnson telling him that the three kids were on Kimberly Avenue, in the Hill Section of New Haven. Id., ¶24.  She stated that this call came into the Plaintiff's cell phone and he was using a hands free function so she heard the entire conversation. Id., ¶25.  She told the detectives that she worked for the Plaintiff. Id., ¶26.  After the Plaintiff received this phone call, Mercado set about her regular route, dropping off drugs and picking up money for the Plaintiff. Id. ¶ 25.  In the early morning hours of July 25, 1999, while she was at a payphone at the corners of Hallock Street, Columbus Avenue and Washington Street, Johnson approached Mercado saying that the Plaintiff should be there soon. Id., ¶27.  While waiting, Adkins called Johnson to say that the kids who stole the Plaintiff's money were on the block. Id., ¶28.  Johnson tried to call the Plaintiff to tell him this information. Id., ¶29.  Shortly thereafter, the Plaintiff arrived. Id.  Mercado saw the Plaintiff hand Santiago a gun and Santiago then got into a Honda CRX. (hereinafter, the "Honda") Id.  She said Johnson was driving the Honda, and that Santiago was in the passenger seat. Id., ¶30.

Mercado was asked to identify several of the individuals believed to be involved in the events of the early morning hours of July 25, 1999.  She recognized the Plaintiff, as well as Johnson, from photoboards. Id., ¶31.  She also recognized McCann from a photoboard, who she referred to as "E," as one of the three boys who stole money from the Plaintiff. Id., ¶32- 33.  She further

---

3 The detectives questioning Mercado inadvertently referred to the events of July 25, 1999 as events occurring on September 24, 2999.  Mercado did not correct the date and continued to answer the detective's questions.  She did not amend the date until a subsequent interview.

4

recognized Adkins on a photoboard as the one the one who called Johnson to say that the three boys were in the neighborhood. Id., ¶34.

While investigating a different murder on December 4, 1999, Rodriguez came upon Larkland Martin (hereinafter, "Martin"). Id., ¶52. Martin told Rodriguez that he had witnessed a shooting back on July 25, 1999, while at an address on Howard Avenue. Id., ¶53-54. He saw a Honda, occupied by two Hispanic males and a Black male. Id., ¶55. Shortly thereafter, he heard four to six shots and looked and saw one of the Hispanic men in the Honda with an automatic gun. Id., ¶56 - 57. Martin saw the Hispanic male shoot about three or four times. Id., ¶58. Martin identified the shooter as Santiago and the driver as Johnson from photoboards. Id., ¶60. In a subsequent statement given on March 5, 2000, he identified the second Hispanic male in the Honda as Efrain Mendez and said he had seen him before at a store on Howard Avenue. Id., ¶61. Rodriguez went to the window from where Martin stated that he witnessed the murder. Id., ¶62. He found the lighting and visibility conditions to be adequate to support Martin's account. Id., ¶63.

The Defendants conducted an additional interview of Mercado on December 5, 1999. In that interview, Mercado stated that two days earlier, she ran into Santiago, who she referred to as "BeBe," on Congress Avenue. Id., ¶35. In slang terms, he indicated how he had "earned his respect" by killing a black man on Howard Avenue. Id., ¶36. Santiago showed Mercado an automatic gun and stated how he earned a teardrop tattoo. Id., ¶37.[4] Mercado identified Santiago on a photoboard. Id., ¶38.

In addition to the interviews of Mercado, Adkins and Martin, police incident reports were generated on the night of the murder and during the course of the investigation, which were

---

4 A tear drop tattoo typically symbolizes an act of killing among certain gang affiliations.

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

reviewed by the Defendants before applying for an arrest warrant. Id., ¶64.  Some reports were generated by patrol officers in the vicinity of Columbus and Howard Avenues, who heard gunshots on the night of the shooting. Id., ¶65.  Other reports were generated by police officers who removed bullets from a pharmacy on the corner of Columbus and Howard Avenues and an officer who located the Samurai, McCann, Scruggs and Lucky, and the gun that Scruggs had fired. Id., ¶66.  In addition, there was a police incident report and photographs detailing a reconstruction of the events. Id., ¶67.

### C. Application for Arrest Warrants and Termination of Criminal Proceeding

Based on the foregoing accounts, Rodriguez prepared the Application for Arrest Warrant seeking the arrest of the Plaintiff. Id., ¶69.  In support of this application, Rodriguez included the written statements from the witnesses. Id., ¶70.  In addition, Rodriguez obtained an affidavit from Coppola, which among other things, described the location of the bullet hole in the vehicle in which Lucky was killed. Id., ¶71.  The Court granted the arrest warrant application on January 5, 2001. Id., ¶76.  The Plaintiff was arrested on January 8, 2001. Id., ¶77.  The Defendants were not part of that arrest. Id.

The Plaintiff was charged with murder, conspiracy and gun charges. Id., ¶73.  Santiago and Johnson were also charged with conspiracy and murder. Id..  The charges against the Plaintiff were nolled on November 15, 2001, Id., ¶80, and subsequently dismissed on August 14, 2002. Id., ¶81.

### D. Plaintiff's Lawsuit.

Plaintiff commenced this action by complaint dated May 28, 2003.  A revised complaint was filed on June 29, 2005 (herein, the "Complaint").  The Complaint alleges that the Defendants acted in a "wanton, reckless or malicious disregard of the Plaintiff's constitutional rights" by depriving him of the right to be free from false imprisonment and from summary punishment, of property

6

without due process, and of due process and equal protection of the laws. (Complaint Counts Four and Seven). The Plaintiff brings these claims against the Defendants under the Fourth, Fifth,[5] Eighth[6] and Fourteenth Amendments[7] of the United States Constitution and 42 U.S.C. § 1983

---

[5]    The tenor of the Plaintiff's claims under the Fifth Amendment of the United States Constitution is quite broad and may be based upon the Due Process Clause, the Takings Clause, or the clause guaranteeing the right to a grand jury. Regardless of which clause forms the basis of the Plaintiff's claim, these claims must fail. The "Due Process Clause of the Fifth Amendment applies solely to claims made against federal officials. . . . In a case. . . where the defendants are municipal, rather than federal, officials, a due process claim under the Fifth Amendment cannot be sustained." Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 170 (2003). Therefore, any claim based upon the Due Process clause of the Fifth Amendment must fail.

        Similarly, a claim based upon the Takings Clause must fail. The Plaintiff has alleged that he was deprived of property, yet he does not specify which property he has been deprived of. Moreover, "to be compensable as unlawful, a governmental taking must deprive the property owner of all economically viable use of the owner of that property." Lucas v. South Carolina Coastal Council. 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Because the Plaintiff has failed to allege any specific property of which he was deprived and whether he was deprived of all economically viable use of that property, his Fifth Amendment Claims must fail.

        The only remaining portion of the Fifth Amendment upon which Plaintiff may be basing his claims, is the clause that provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." In Connecticut, there is no right to a Grand Jury Proceeding. A criminal defendant is entitled to a probable cause hearing, but this proceeding can be waived. See Connecticut General Statutes § 54-46a. Therefore, any Fifth Amendment claim must be based upon the right to a Grand Jury must fail.

[6]    "The Eighth Amendment to the Constitution prevents 'cruel and unusual punishment.' The Eighth Amendment, however, only attaches when an individual receives a formal adjudication of guilt." (citations omitted). "Inasmuch as the complaint is devoid of any claim required to bring the protection of the Eighth Amendment into play, all Eighth Amendment claims [must be] dismissed." Daley v. Hoyt, 27 F.Supp.2d 339, 343 (D. Conn.) (1998). To the extent the plaintiff is asserting Eighth Amendment protection from excessive bail, although no facts have been alleged to support such a claim, individual police officers sued in their personal capacities are protected by absolute judicial immunity from 42 U.S.C. 1983 claims for money damages associated with officers' obligations to set bail under Conn. Gen. Stats. 54-63c. Sanchez v. Doyle, 254 F.Supp.2d 266, 269-70 (D. Conn. 2003).

[7]    The Plaintiff claims that he was deprived of due process of law and equal protection of the laws under the Fourteenth Amendment. It is not entirely clear whether the Plaintiff's invocation of the Fourteenth Amendment due process claim is an acknowledgement that the rights that he is asserting – the rights to be free from false arrest, false imprisonment and malicious prosecution – are applied to the states through the Due Process Clause or is an attempt to establish a separate claim under the Due Process Clause. If this is Plaintiff's attempt to bring a separate claim under the Fourteenth Amendment Due Process Clause, the Plaintiff's attempts must fail. "Allegations of false arrest or malicious prosecution have been held to be within the contours of the Fourth Amendment." Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 127 L. ed. 2d 114 (1994).

        If the Plaintiff is attempting to bring an equal protection claim, these attempts must too fail. To survive summary judgment as to an equal protection claim, one must allege and show with documentary evidence that he or she

7

(hereinafter, "1983").[8]  The Plaintiff brings nearly identical claims under the Connecticut

Constitution, particularly Article 1, sections 8 and 9, and the laws of the State of Connecticut.

(Complaint Counts Five and Eight).  Moreover, the Plaintiff maintains that as a "direct and

proximate result of the acts and omissions of the [Defendants] . . . , the Plaintiff was caused to

suffer great emotional distress, shame, humiliation, disgrace, embarrassment and anxiety."

(Complaint Counts Six and Nine).

## LEGAL STANDARD.

Summary judgment is an appropriate procedural vehicle to determine whether a

governmental official is protected by the doctrine of qualified immunity; Crawford-El v. Britton,

523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); and "to isolate and dispose of factually

unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548,

91 L.Ed. 2d 265 (1986).  Motions for summary judgment are governed by FED. R. CIV. P. 56.

Where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment

as a matter of law," summary judgment "shall" enter in favor of the movant. FED. R. CIV. P. 56(c);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact.").

---

was treated differently from others similarly situated. Brown v. Oneonta, 195 F.3d 111, 119 (2d Cir.1999); Presnick v.
Town of Orange, 152 F.Supp.2d 215, 224 (2001) (D. Conn.).  There is no such allegation or evidence herein.
Accordingly, summary judgment must be granted as to any equal protection claim.

8       The Plaintiff also cites to 42 U.S.C. § 1988. Section 1988 does not create an independent cause of action but
authorizes resort to remedies and procedures of state and common law where those of federal law are inadequate.
McPartland v. American Broadcasting Cos. (1985 S.D.N.Y.).  Because the Plaintiff has clearly asserted claims under the
Fourth Amendment and Section 1983, Section 1988 is inapplicable.

8

In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 255; Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the nonmoving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Indeed, a showing of mere "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. Matshushita, supra, 475 U.S. at 586. Furthermore, where the movant demonstrates the absence of factual support for an essential element of the nonmovant's case, summary judgment is properly granted. Celotex, supra, 477 U.S. at 323-24. Once this burden is met, "the burden shifts to the nonmoving party to raise triable issues of fact." Larsen v. The Prudential Insurance Company of America, 151 F.Supp.2d 167, 171 (D.Conn.2001). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. Anderson, supra, 477 U.S. at 249-50.

## II.    ARGUMENT.

Summary Judgment should enter as to Counts Four and Seven for the following reasons: (1) The Plaintiffs cannot establish claims for false arrest, false imprisonment or malicious prosecution because they cannot prove a lack of probable cause; (2) The Plaintiffs cannot establish claims for false arrest, false imprisonment or malicious prosecution because the Plaintiff cannot prove that the underlying criminal proceeding terminated in the Plaintiff's favor and; (3) The Defendants are entitled to qualified immunity. Summary judgment should also enter, in favor of the Defendants, with respect to the Plaintiff's pendant state law claims on the following grounds: (1) The Plaintiff cannot establish claims for false arrest, false imprisonment or malicious prosecution under Connecticut law because the Plaintiff cannot prove a lack of probable cause; (2) the Court should

9

decline supplemental jurisdiction if it disposes of the Plaintiff's Section 1983 claims; (3) The
Defendants are immune from suit for their discretionary acts; and (4) The Plaintiff have failed to
establish a claim for either negligent or intentional infliction of emotional distress. Accordingly, the
Defendants maintain that summary judgment should be granted in their favor.

### A. The Plaintiff cannot establish the absence of Probable Cause:

"A §1983 false arrest claim[9] requires the plaintiff to establish that (1) the defendant
intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was
no consent to the arrest; and (4) the arrest was not supported by probable cause. . . .  Further, [i]n
order to prevail on a §1983 claim against a state actor for malicious prosecution, a plaintiff must
show a violation of his rights under the Fourth Amendment . . . and establish the elements of a
malicious prosecution under state law."  (Citations omitted; internal quotation marks omitted.)
Shattuck v. Town of Stratford, 233 F. Supp. 2d 301, 306 (2002).  To establish a malicious
prosecution claim, a plaintiff must prove the following elements: "(1) the defendants initiated or
procured the institution of the criminal proceedings against the plaintiff; (2) the criminal
proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and
(4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender
to justice. QSP, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 360 n. 16 (1991). "Hence if
probable cause existed for the arrest, the plaintiffs cannot satisfy the elements of either a false arrest
claim or a malicious prosecution claim under §1983.  The threshold issue for the court is whether,
on the facts alleged, [the plaintiff's] right to be free from arrest without probable cause was violated.
This question is primary both for a § 1983 false arrest or malicious prosecution analysis . . .

---

9 The terms false arrest and false imprisonment are generally used interchangeably.  See Outlaw v. Meriden, 43
Conn. App. 387, 392 (1996).

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN,CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

[because] the existence of probable cause is a complete defense to a civil rights claim alleging false arrest or malicious prosecution." Shattuck, supra, 233 F. Supp. 2d 301, 307. The Plaintiff's §1983 claims based upon false arrest, false imprisonment and malicious prosecution against the individual Defendants, set forth in Counts Four and Count Seven of the complaint, must fail because the Plaintiff on the facts alleged cannot establish a lack of probable cause.

Probable cause exists under federal law when "the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir.1995). "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." Curley v. Village of Suffern, 268 F.3d 65, 70 (2001). "[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause," United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), and a "plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." Rivera v. United States, 928 F.2d 592, 602 (2d Cir.1991). In order to mount such a challenge, the plaintiff must make a "substantial preliminary showing" that the affiant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); Golino v. City of New Haven, 950 F.2d 864, 870-71 (1991). Recklessness may be inferred where the omitted information was critical to the probable cause determination. Id., 871.

"In determining whether the necessary quantum of evidence existed to support a finding of

11

probable cause, the Court is required to evaluate the totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "If there is no question of material fact that probable cause to arrest and prosecute [ ] existed, summary judgment must enter for the defendants." Bontatibus v. Town of Branford, 386 F.Supp.2d 28, 32 (2005).

Here the circumstances clearly support a finding of probable cause. In order to establish a lack of probable cause, the Plaintiff must show that, in connection with the application for the arrest warrant, the Defendants acted knowingly and intentionally or with reckless disregard for the truth, made a false statement. The Plaintiff maintains that, in arresting the Plaintiff, the Defendants acted without probable cause and based their application for an arrest warrant on unreliable information. In support of this contention, the Plaintiff alleges that the circumstances surrounding Mercado's interview with the Defendants made her statement unreliable and that the Defendants should have investigated every aspect of Mercado's statements before determining that she was reliable. Moreover the Plaintiff contends that the Defendants based their application for an arrest warrant *solely* on Mercado's statements, which the Plaintiff contends, the Defendants should have realized were unreliable. However, the Defendants relied on a variety of interviews and police reports, *in conjunction* with Mercado's statements, in applying for the arrest warrant. L.Civ.R 56(a)1 Statement, ¶ 68-71. Mercado was a known informant, who was considered reliable by the New Haven Police Department, and her statements were corroborated by other witnesses. Id. ¶ 16-17. Finally, the arrest warrant was signed by a neutral magistrate, further evidencing that there was probable cause. Id. ¶ 75. Probable cause is most evident, however, in the fact that the neutral magistrate issued the warrant. "Probable cause is presumed when the arrest is made pursuant to a warrant issued by a neutral magistrate." Romagnano v. Town of Colchester, 354 F. Supp.2d 129, 135 (2004). Accordingly, Plaintiff cannot establish as a matter of law that there was no probable

12

cause to arrest, imprison or prosecute him in the criminal action. For these reasons, the individual Defendants are entitled to summary judgment as a matter of law as to Counts Four and Seven.

**B. No favorable disposition.**

"It is well-settled in the Second Circuit that in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor. . . . A criminal proceeding terminates in favor of the plaintiff only when its final disposition is such as to indicate the accused in not guilty. . . . A nolle, like [a]n adjournment in contemplation of dismissal involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt." (Citations omitted; internal quotation marks omitted.) Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (2003). "A nolle is simply a statement by the prosecution that it will not be pursuing the case at this time; it does not foreclose the possibility that, if prosecuted, the plaintiff would have been found guilty" Assegai v. Bloomfield Board of Education, 308 F. Supp. 2d 65, 71 (2004). A "person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." Assegai v. Bloomfield Board of Education, 308 F. Supp. 2d 65, 70 (2004).

The charges against Plaintiff were nolled. L.Civ.R 56(a)1 Statement, ¶80. Accordingly, the Plaintiff can prove that the criminal proceedings terminated in his favor for the purposes of bringing a false arrest or a malicious prosecution claim. See Roesch, Assegai and Singleton, *supra*. Plaintiff has forfeited his claims for false arrest, false imprisonment and malicious prosecution because he did not pursue his criminal case to the end. See Assegai, *supra*, 308 F.Supp.2d at 71. There is no outstanding genuine issue of material fact as to this issue, and as such any claim for false arrest, false imprisonment or malicious prosecution must fail as a matter of law. See L.Civ.R 56(a)(1)

13

Statement, ¶80, and Report of Parties' Planning Meeting, (stipulating at Section IV, ¶4, that the charges against the Plaintiff were nolled).[10]

### C. Summary Judgment Should Enter as to the Defendants Claims for False Arrest, False Imprisonment, and Malicious Prosecution under 42 U.S.C. § 1983 Because the Defendants are entitled to qualified immunity:

The Defendants are entitled to qualified immunity because (1) the Plaintiff has not alleged a violation of a constitutional right and (2) even if the Plaintiff has so alleged, the conduct of the Defendants was objectively reasonable in light of the existing law and the particular circumstances of the case. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. . . . The privilege is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citations omitted) (quotation marks omitted).

Qualified immunity analysis consists of several questions that must be resolved in proper sequence. If the court answers one of the questions in the negative, then that court need not make any further inquiries and must conclude that the defendant official is immune from suit. Saucier, *supra*, 533 U.S. 201; Poe v. Leonard, 282 F.3d 123, 133 (2d. Cir. 2002). The threshold question is whether, in a light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a federal statutory or constitutional right. Saucier, 533 U.S. at 201. The second question is whether that right was "clearly established" in light of the specific circumstances of the case. Id. The Second Circuit has refined the second inquiry so that immunity is established

---

10 The Plaintiff's case was nolled on November 15, 2001. The charges were nolled because two witnesses became unavailable pursuant to Connecticut General Statutes § 54-56b. See Exhibit M. Section 54-56b provides that a nolle may enter as to any count in a complaint or information, even if the accused objects and demands dismissal, when the prosecutor represents to the court that "a material witness has died, disappeared or became disabled or that material evidence has disappeared or has been destroyed and that further investigation is therefore necessary." Id. Therefore, given these circumstances, it becomes even more evident that the entry of the nolled was not an admission on behalf of the prosecutor that foreclosed the possibility that the Plaintiff could be found guilty.

14

when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Poe, 282 F.3d at 133 (quotation marks omitted).

### 1. The Defendants are entitled to qualified immunity because the Plaintiff has failed to allege a violation of a clearly established right.

To set forth a claim under§ 1983,[11] a plaintiff must allege that (1) the defendant acted under color of state law and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory or constitutional rights. Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998). The Plaintiff claims that the Defendants acted in violation of the Fourth Amendment to the United States Constitution,[12] particularly the prohibition against arrests or the issuance of warrant without probable cause. Whether the Plaintiff has properly alleged such a claim is a question of law for the court. Poe, 282 F.3d at 132.

Counts Four and Seven do not support a cognizable claim of injury under the Fourth Amendment. Although it is well settled that the plaintiff has a constitutional right not to be arrested without probable cause, Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002), as discussed supra, there was probable cause to arrest the Defendant. See Part II, A, supra.

### 2. The Defendants' Actions were Objectively Reasonable.

Even if the court determines that there was no probable cause, the Defendants' actions were

---

[11] 42 U.S.C. §1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

[12] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in the persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

15

objectively reasonable. "The objective reasonableness test is met – and the defendant is entitled to qualified immunity – if officers of reasonable competence could disagree on the legality of the defendant's actions." (Citations omitted.) Shattuck v. Town of Stratford, 233 F.Supp.2d 301, 307 (2002). "The Second Circuit has repeatedly held that: A police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest." Id., 308.

A "[p]olice officer may be entitled to qualified immunity for arrests based on warrants issued by a judge or magistrate. . . .[T]he issue is whether a reasonably-trained officer in the [defendants'] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. . . .[T]he officer will not be immune if, on an objective basis, it is obvious that no reasonably competent officer could have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized. . . . The court's inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization." Id., 308-309.

The Plaintiff cannot produce any evidence from which a reasonable juror could conclude that the Defendants knew or should have known that the warrants lacked probable cause. As framed by the complaint, the Plaintiff asserts that Mercado's statements were unreliable. Mercado was considered a reliable informant, utilized by the New Haven Police Department on prior occasions. L.Civ.R 56(a)1 Statement, ¶16-17. Her statement coincided with the statements of two independent witnesses and with the police reports generated by various officers throughout the investigation. The Plaintiff does not allege that the Defendants made any false statements in their application for

16

the arrest warrant but focuses almost entirely on his implication that the Defendants did not investigate, thoroughly, Mercado's reliability prior to making the application. Notwithstanding, the Defendants acted reasonably in fully investigating the case prior to applying for the arrest warrant.

**D.    Summary Judgment Should Enter as to the Plaintiff's Corresponding State Law Claims for False Arrest, False Imprisonment and Malicious Prosecution.**

"In Connecticut, the tort of false arrest is synonymous with that of false imprisonment." Outlaw v. City of Meriden, 43 Conn.App. 387, 392 (1996). "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." Id. It is well-established that there is no cause of action if the plaintiff was arrested pursuant to a facially valid warrant. Id. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983" Weyant v. Okst, 1010 F. 3d 845, 852 (1996) To establish a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: "(1) the defendants initiated or procured the institution of the criminal proceedings against the plaintiff; (2) the criminal proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. QSP, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 360 n. 16 (1991).

The plaintiff bears the burden of demonstrating a lack of probable cause for the arrest. Baker v. McCollan, 443 U.S. 137, 143-46 (1979). Under Connecticut law, probable cause "comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity had occurred." State v. Barton, 219 Conn. 529, 548, 594 A.2d 917 (1991). As discussed, supra, in Part II, Section A, the Defendants maintain that the Plaintiffs cannot establish a lack of probable cause. Accordingly, summary judgment should enter as to Counts Five and Eight.

17

**E.     This Court Should Decline Jurisdiction Over the Plaintiff's State Law Claims Because the Plaintiff's Federal Claims Cannot Survive Summary Judgment.**

This Court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367 (a) (2000).[13] Subsection (c), however, provides in relevant part that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Thus, in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *see also Zak v. Robertson*, 249 F. Supp.2d 203, 209 (D. Conn. 2003) (declining to exercise supplemental jurisdiction over plaintiffs' state claims because the Court entered summary judgment for the defendants on the plaintiffs' federal claims).

Counts Five, Six, Eight and Nine of the Complaint allege state law causes of action. Because the Defendants are entitled to summary judgment on the Plaintiff's federal claims, the Court should decline to exercise its supplemental jurisdiction over the Plaintiff's remaining state law claims.

**F.     Summary Judgment Should Enter as to the Plaintiff's State Law Claims Because the Defendants Entitled to Governmental Immunity.**

According to Connecticut law, a governmental employee is generally immune from suit for the performance of discretionary acts. Spears v. Garcia, 263 Conn. 22, 36, 818 A.2d 37 (2003). "The hallmark of a discretionary act is that it requires the exercise of judgment." Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623, 628, 749 A.2d 630 (2000). The question of whether an act is

---

[13] 28 U.S.C. § 1367 (a) provides: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

18

discretionary, as opposed to ministerial, is a question for the court when the nature of that act is apparent from the complaint. Id. at *629-30*.

Here, the Complaint alleges discretionary conduct. Specifically, the Plaintiff challenges the propriety of the individual police officers' conduct in investigating and filing the application for an arrest warrant. The Plaintiff alleges that the Defendants improperly relied on unreliable statements from a government informant in making the application for the arrest warrant and that the Defendants caused the Defendants great anxiety and distress. (Complaint Counts Five, Six, Eight and Nine).

It is beyond reproach that the operation of a police department is a discretionary, governmental function. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180, 544 A.2d 1185 (1988). The Connecticut Supreme Court has stated that the public interest is better served by not "allowing a jury of laymen with the benefit of 20/20 hindsight to second guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all." *Shore v. Town of Stonington,* 187 Conn. 147, 157, 444 A.2d 1379 (1982). The process by which a police officer investigates a crime or makes an arrest is a discretionary act. See Lipka v. Madoule, No. CV990428311S, 2001 WL 1712685, at *3 (Conn. Super. Ct. Dec. 17, 2001) (cases cited therein); Nunez v. VPSI, Inc., No. CV970347902, 2001 WL 236755, at *2 (Conn. Super. Ct. Feb. 20, 2001).

Because it is apparent from the Complaint that the alleged conduct of the Defendants was discretionary, the Individual Defendants are protected by governmental immunity. The Plaintiff's claims, as alleged in Counts Two through Six, cannot stand as a matter of law.

G.    **Summary Judgment Should Enter as to the Plaintiff's Claims for Negligent and Intentional Emotional Distress for Failure to State a Claim as a Matter of Law:**

The Plaintiff alleged that "as a direct result of the acts and omissions of [the Defendants] . . . the Plaintiff was caused to suffer great emotional distress, shame and humiliation, disgrace, embarrassment and anxiety." (Complaint Counts Six and Nine). The Plaintiff does not specify

19

whether the Defendants negligently or intentionally caused him emotional distress.

Connecticut courts have consistently held that, "in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Carrol v. Allstate Ins. Co., 262 Conn. 433, 815 A.2d 119 (2003). The Plaintiff has failed to allege that the Defendants owed any duty to the Plaintiff, the breach of which, resulted in an unreasonable risk of illness or bodily harm. Moreover, in conducting their investigation the Defendants were engaged in a discretionary act. As such, they are entitled to immunity. Furthermore, the Defendants acted reasonably in conducting the investigation and applying for the arrest warrant. Accordingly, the Plaintiff's claims based upon negligent infliction of emotional distress must fail.

"In order for the Plaintiff to prevail in a [claim] for liability . . . [for intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Petyan v. Ellis, 200 Conn. 243, 253 (1986). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.(Internal citations and quotation marks omitted.) DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . ." Mellaly v. Eastman Kodak Co., 42 Conn.Supp.

20

17, 19 n. 1 (1991).The Plaintiff has failed allege that the conduct of the defendants was so outrageous as to go beyond the bounds of common decency.  The Defendants were engaged in the investigation of a homicide and there is no indication that they intentionally withheld information in applying for an arrest warrant or knowingly submitted false statements.  Moreover, the Plaintiff has failed to allege that the distress he suffered was severe.  Accordingly, the Plaintiff's claims for intentional infliction of emotional distress must fail.

## IV.    CONCLUSION.

For all of the foregoing reasons, summary judgment as to Defendants Coppola and Rodriguez should be granted in its entirety.  The Plaintiff cannot overcome the presumption of probable cause and cannot establish that the underlying criminal matter terminated in his favor. Therefore the Plaintiff's claims for false arrest, false imprisonment and malicious prosecution must fail.  Similarly, The Plaintiff cannot establish claims for negligent infliction of emotional distress or intentional infliction of emotional distress because the Plaintiff has failed to allege conduct on the part of the Defendant to assert such claims.  Furthermore, the Defendants are entitled to immunity. Accordingly, the Defendants are entitled to immunity and summary judgment.

<div style="margin-left: 40%;">

THE DEFENDANTS,
STEPHEN COPPOLA AND EDWIN RODRIGUEZ

BY:_____/s/ Thomas E. Katon
     Thomas E. Katon
     Susman, Duffy & Segaloff, P.C.
     P. O. Box 1684
     New Haven, CT  06507-1684
     Phone: (203) 624-9830
     Fax: (203) 562-8430
     Federal Bar no:  ct01565
     Email: tkaton@susmanduffy.com

</div>

21

## CERTIFICATION

    I hereby certify that on August 15, 2006, a copy of the foregoing motion for summary judgment was filed electronically and swerved by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.

By:   /s/ Thomas E. Katon
    Thomas E. Katon (ct01565)
    Susman Duffy & Segaloff, P.C.
    55 Whitney Avenue
    P.O. Box 1684
    New Haven, CT 06507
    Telephone: (203) 624-9830
    Facsimile:  (203) 562-8430
    Email:    tkaton@susmanduffy.com

I:\Client N-O\NHCITY\Session\Pleadings\Memo in Support of Motion for Summary Judgment Final.doc