UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT
HARTFORD

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GARY SESSION | \* | CIVIL ACTION NO. |
| | \* | 8:03-CV-948 (AWT) |
| PLAINTIFF | | |
| | \* | |
| VS. | | |
| CITY OF NEW HAVEN; STEPHEN | \* | |
| COPPOLA; and EDWIN RODRIGUEZ | | |
| | \* | |
| DEFENDANTS | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AFFIDAVIT OF EDWIN RODRIGUEZ

STATE OF CONNECTICUT)
                    ) s.s.   New Haven                August 14, 2006
COUNTY OF NEW HAVEN)

I, Edwin Rodriguez, being duly sworn, hereby depose and say:

I am over the age of eighteen (18) years and understand the obligations of an oath.

1.   I make this affidavit based upon my personal knowledge.

2.   I was a Detective in the Homicide Department with the New Haven Police Department and served with the Department from January, 1992 to February, 2005.

3.   As a Homicide Detective, I was assigned to investigate the shooting death of Anthony Lucky, Jr. (hereinafter, "Lucky"). Our investigation revealed the following:

4. On July 25, 1999, at approximately 1:50 a.m., Lucky was a rear-seated passenger in a 1998 Suzuki Samurai being operated by his cousin, Albert McCann (hereinafter, "McCann").

5. Juan Scruggs (hereinafter, "Scruggs") was seated in the front passenger seat of that vehicle.

6. While in the vicinity of Columbus and Howard Avenues in New Haven, Connecticut, the Samurai came under gunfire from a passenger in a nearby Honda vehicle.

7. Scruggs identified the occupants of the Honda vehicle as Hispanic in appearance.

8. McCann had a pistol in the vehicle and Scruggs retrieved it and used it to return gunfire.

9. Scruggs stated that he saw blood on Lucky's shirt.

10. Lucky had been struck by a bullet during that ensuing gunfire battle and died thereafter at Yale-New Haven Hospital.

11. As part of the investigation, I conducted interviews of people who might have knowledge concerning Lucky's death and reviewed police incident reports prepared by other officers.

12. On July 25, 1999, the date of the murder, I took a statement from McCann.

13. On that same date, Detective Coppola and I also took a statement from Scruggs.

14. On July 26, 1999, the Chief Medical Examiner determined that Lucky had died from a gunshot wound.

15. The bullet entry wound was in Lucky's back.

16. The bullet was not recovered.

17. Ballistic tests performed by the City of New Haven Police Department concluded that a single bullet had penetrated a spare tire mounted on the tailgate of the Samurai and struck Lucky.

18. Sergeants Canning and Norwood, put me in touch with a registered confidential informant (hereinafter, "Mercado") that they used and found to be reliable in the past.

19. I interviewed this informant with Sergeants Canning and Norwood present on November 8, 1999.

20. Mercado stated that on July 20, 1999 she had been at Shabazz' (Gary Session) house in West Haven.

21. She further stated that Shabazz was counting drug money.

22. She stated that some "black kids" – she did not know their names – stole some of Shabazz' money.

23. She stated that she overheard Shabazz arguing with Jose Santiago ("Santiago").

24. She could hear Shabazz saying that they'd find him and hit him up, pistol whip him or whatever.

25. She stated that Shabazz wanted the kids who stole the money to work it off penny by penny or otherwise be killed.

26. She further stated that on July 24, 1999 [She originally said September 24, 1999, but later corrected the date], she was with Shabazz when he got a call from DeShawn Johnson ("Johnson") telling him that the three guys were on Kimberly Avenue, in the Hill Section of New Haven.

27. She stated that this call came into Shabazz' cell phone and he was using a hands free function so she heard the entire conversation.

28. She stated that she worked for Shabazz -- that she dropped off drugs and picked up cash for him.

29. She also stated that later that night, in the early morning hours of July 25, 1999, while she was at a payphone at the corners of Hallock Street, Columbus Avenue and Washington Street, Johnson came up to her saying that Shabazz should be there soon.

30. While waiting, a woman named Sharon called Johnson to say that the black kids who stole Shabazz' money were on the block.

31. She then stated that Johnson tried to call Shabazz to tell him that, and that Shabazz pulled up. She said that she saw Shabazz hand Santiago a gun and Santiago then got into a guy named Willie's Honda CRX.

32. She said Johnson was driving the Honda vehicle, and that Santiago was in the passenger seat.

33. She recognized Shabazz as Gary Session, as well as Johnson, on photoboards.

34. She also recognized McCann, "E," from a photoboard.

35. She said he is one of the three boys who stole money from Shabazz.

36. She further recognized Sharon [Sharon Adkins] on a photoboard as the one who called Johnson to say the three boys were in the neighborhood.

37. In a subsequent interview with Detective Coppola and me, Mercado stated that on

SUSMAN, DUFFY & SEGALOFF, P.C. · ATTORNEYS AT LAW
P.O.BOX 1684 · NEW HAVEN, CONNECTICUT 06507 · (203)624-9830 · JURIS NUMBER 62505

4

December 3, 1999, she ran into Santiago, who also goes by "BeBe," on Congress Avenue.

38. He indicated how he had "earned his respect" by killing a [Moreno] [black] on Howard Avenue.

39. She further stated that he showed her an automatic gun and stated how he earned a teardrop tattoo - used by gang members and drug traffickers to symbolize someone who is responsible for murder.

40. Mercado identified Santiago on a photoboard.

41. On November 7, 1999, Detective Coppola and I interviewed Sharon Adkins.

42. She stated that she sells crack for Johnson, E [McCann].

43. She said that E stole money and crack from Johnson.

44. She said that Johnson said that if E came to her house, to call him.

45. Through a corrected report, she states that she believes that happened in July of 1999.

46. She stated that E came to her house so she called Johnson.

47. She said she walked to a payphone to call Johnson, then to sell some drugs, and on her way back, she heard gunshots near her house.

48. She recognized Johnson on a photoboard.

49. She stated that she works for Johnson and Johnson works for Shabazz.

50. She stated that Shabazz knows E because E worked on Hallock Street at Shabazz' spot.

51. She stated that she has bought crack from E, Johnson and Buddha.

52. Adkins also recognized a boy on a photoboard who goes by Buddha or Buddha Man as

Scruggs, and E as McMann.

53. While investigating a different murder on December 4, 1999, I came upon Larkland Martin who gave a statement.

54. He stated that he had witnessed a shooting back on July 25, 1999.

55. He said he was at an address on Howard Avenue.

56. He saw a Honda vehicle with two hispanic males and a black male.

57. He heard four to six shots and looked and saw a hispanic male with an automatic gun.

58. He also saw a young hispanic male and the driver of the Honda was black.

59. He saw the hispanic male shoot about three or four more times.

60. He thought he had seen the shooter before.

61. On photoboards, he identified the shooter as Santiago and also the driver as Johnson.

62. In a subsequent statement given on March 5, 2000, he identified the hispanic male who was in the backseat as Efrain Mendez and said he had seen him before at a store on Howard Avenue.

63. I went to the window from where Larkland Martin stated that he witnessed the murder.

64. I found the lighting and visibility conditions to be adequate to support the account given by Larkland Martin.

65. Police incident reports were also generated on the night of the murder and subsequently during the investigation.

66. Some were from patrol officers in the vicinity of Columbus and Howard Avenues who

heard gunshots. Others were from police officers who removed bullets from a pharmacy (Biernie's) on the corner of Columbus and Howard Avenues.

67. There was also a police incident report from a police officer who located the Samurai, McCann, Scruggs and Lucky, and the gun that Scruggs had fired.

68. In addition, there was a police incident report and photographs from a reconstruction that was conducted.

69. Detective Coppola and I also reviewed the aforementioned records referred to in paragraphs 66-69.

70. Based on the foregoing accounts along with other witness statements, which all appeared to be consistent with each other, I prepared Applications for Arrest Warrants.

71. I included the written statements from the witnesses, containing the facts as aforementioned, as well as those from other witnesses.

72. As part of those arrest warrant applications, I included an affidavit regarding seized property, in particular, the red Suzuki Samurai which had a bullet entrance hole in the tailgate.

73. The arrest warrant applications sought arrest warrants for Johnson, Santiago and Session, respectively.

74. The information charged all three with: (1) Murder; and (2) Conspiracy to commit murder.

75. In addition, Session and Santiago were both charged with Criminal use of firearm.

76. Santiago's information contained additional charges.

77. The Court granted the applications for arrest warrants on January 5, 2001.

78. Detective Coppola and I were not present on January 8, 2001 when Session was arrested.

79. Detective Coppola and I were not present when Santiago and Johnson were arrested.

80. The charges against the alleged shooter, Santiago, were dropped in July of 2002.

81. Thereafter, the charges against Session were nolled on November 15, 2001.

82. Subsequently the criminal charges were dismissed against Session on August 14, 2002.

_____
Edwin Rodriguez

Subscribed and sworn to before me this 14th day of August, 2006.

_____
Commissioner of the Superior Court

SUSMAN, DUFFY & SEGALOFF, P.C. · ATTORNEYS AT LAW
P.O. BOX 1684 · NEW HAVEN, CONNECTICUT 06507 · (203)624-9830 · JURIS NUMBER 62505

8