UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GARY SESSION | \* | CIVIL ACTION NO. |
| PLAINTIFF | \* | 303-CV-00943 (AWT) |
| | \* | |
| VS. | \* | |
| | | |
| CITY OF NEW HAVEN; STEPHEN COPPOLA; AND EDWIN RODRIGUEZ | \* \* \* \* \* \* | DECEMBER 22, 2006 |
| DEFENDANTS | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANTS' STEPHEN COPPOLA AND EDWIN RODRIGUEZ
LOCAL RULE 9(C)1 STATEMENT OF UNDISPUTED MATERIAL
FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56, the defendants, Stephen Coppola and Edwin Rodriguez submit the following statement of undisputed material facts:

1. On July 25, 1999, at approximately 1:50 a.m., Anthony Lucky, Jr. ("Lucky") was a rear passenger in a 1998 Suzuki Samurai being operated by his cousin, Albert McCann (hereinafter, "McCann"). (Complaint, ¶ 7).

2. Juan Scruggs (hereinafter, "Scruggs") was seated in the front passenger seat of that vehicle. (Complaint, ¶7).

3. While in the vicinity of Columbus and Howard Avenues in New Haven, Connecticut, the Samurai came under gunfire from a passenger in a nearby Honda vehicle. (Complaint, ¶8).

1

4. Scruggs identified the occupants of the Honda vehicle as Hispanic in appearance. (Complaint, ¶8).

5. McCann had a pistol in the vehicle and Scruggs retrieved and used it to return gunfire. (Complaint, ¶9).

6. Scruggs stated that he saw blood on Lucky's shirt. (Complaint, ¶10).

7. Lucky was struck in the back by a bullet and died thereafter at Yale-New Haven Hospital. (Complaint, ¶9).

8. Homicide detectives, Coppola and Rodriguez, who worked for the New Haven Police Department, were assigned to investigate the shooting death of Lucky. (Affidavit of Edwin Rodriguez dated August 14, 2006, attached hereto as Exhibit A, ¶ 2, 3, 13).

9. As part of their investigation, the Defendants conducted interviews of persons who may have knowledge concerning Lucky's death and reviewed police incident reports prepared by other officers. (Exhibit A, ¶ 3, 11, 12, 13, 18, 19, 37, 41, 53, 63-69)**.**

10. On July 25, 1999, the date of the murder, Rodriguez took a statement from McCann. Statement of Albert McCann dated July 25, 1999 (Exhibit B)**.**

11. On that same date, Rodriguez and Coppola also took a statement from Scruggs. Statement of Juan Scruggs dated July 25, 1999 (Exhibit C).

12. On July 26, 1999, the Chief Medical Examiner determined that Lucky had died from a gunshot wound. (Complaint, ¶11; Autopsy report, attached hereto as Exhibit D.

13. The bullet entry wound was in Lucky's back. Id.

14. The bullet was not recovered. (Complaint, ¶11).

15. Ballistic tests performed by the City of New Haven Police Department concluded that a single bullet had penetrated a spare tire mounted on the tailgate of the Samurai and struck Lucky. (Complaint, ¶11).

2

16. Defendants' superiors, Sergeants Canning and Norwood, put Rodriguez in touch with a registered confidential informant (hereinafter, "Mercado") that they used and found to be reliable in the past. (Exhibit A, ¶ 18).

17. Rodriguez interviewed this informant with Sergeants Canning and Norwood present on November 8, 1999. (Exhibit A, ¶ 19); Mercado Statement dated November 8, 1999 (Exhibit E).

18. Mercado stated that on July 20, 1999 she had been at Plaintiff's ("Shabazz") house in West Haven. (Exhibit E, p. 3-4). Deposition Transcript of Gary Session dated December 30, 2005. (Exhibit L, p. 7).

19. She further stated that Shabazz was counting drug money. Id. at p. 3-4.

20. She stated that some "black kids" – she did not know their names – stole some of Shabazz' money. Id. at p. 4-6.

21. She stated that she overheard Shabazz arguing with Jose Santiago ("Santiago"). Id. at p. 7.

22. She could hear Shabazz saying that they'd find him and hit him up, pistol whip him or whatever. Id. at p. 7.

23. She stated that Shabazz wanted the kids who stole the money to work it off penny by penny or otherwise be killed. Id. at p. 8.

24. She further stated that on July 24, 1999 [She originally said September 24, 1999, but later corrected the date], she was with Shabazz when he got a call from DeShawn Johnson ("Johnson") telling him that the three guys were on Kimberly Avenue, in the Hill Section of New Haven. Id. at p. 8-10.

25. She stated that this call came into Shabazz' cell phone and she heard the entire conversation. Id. at p. 10-11.

SUSMAN, DUFFY & SEGALOFF, P.C.  ·  ATTORNEYS AT LAW
P.O.BOX 1684 · NEW HAVEN,CONNECTICUT 06507 · (203)624-9830 · JURIS NUMBER 62505

26. She stated that she worked for Shabazz -- that she dropped off drugs and picked up cash for him. Id. at p. 12-13.

27. She also stated that later that night, in the early morning hours of July 25, 1999, while she was at a payphone at the corners of Hallock Street, Columbus Avenue and Washington Street, Johnson came up to her saying that Shabazz should be there soon. Id. at p. 13-14.

28. While waiting, a woman named Sharon called Johnson to say that the black kids who stole Shabazz' money were on the block. Id. at p. 14-15.

29. She then stated that Johnson tried to call Shabazz to tell him that, and that Shabazz pulled up. She said that she saw Shabazz hand Santiago a gun and Santiago then got into a guy named Willie's Honda CRX. Id. at p. 16-20.

30. She said Johnson was driving the Honda vehicle, and that Santiago was in the passenger seat. Id. at p. 28 and 18-20.

31. She recognized Plaintiff Gary Session as Shabazz , as well as Johnson, on photoboards. Id. at p. 26-27 and 23.

32. She also recognized McCann, "E," from a photoboard. Id. at p. 25.

33. She said he is one of the three boys who stole money from Shabazz. Id. at p. 25.

34. She further recognized Sharon [Sharon Adkins] on a photoboard as the one the one who called Johnson to say the three boys were in the neighborhood. Id. at p. 27.

35. In a subsequent interview with Defendants, Mercado stated that on December 3, 1999, she ran into Santiago, who also goes by "BeBe," on Congress Avenue. Mercado Statement dated December 5, 1999 (Exhibit F).

36. He indicated how he had "earned his respect" by killing a [Moreno] [black] on Howard Avenue. Id. at p. 2-6.

SUSMAN, DUFFY & SEGALOFF, P.C.  ·  ATTORNEYS AT LAW
P.O.BOX 1684 · NEW HAVEN,CONNECTICUT 06507 · (203)624-9830 · JURIS NUMBER 62505

37. She further stated that he showed her an automatic gun and stated how he earned a teardrop tattoo. Id. at pp. 7, 10-11.

38. Mercado identified Santiago on a photoboard. Id. at p. 8-9.

39. The teardrop tattoo is used by gang members and drug traffickers to symbolize someone who is responsible for murder. (Exhibit A, ¶ 39).

40. On November 7, 1999, Defendants also interviewed Sharon Adkins. Statement of Sharon Adkins dated November 7, 1999 (Exhibit G).

41. She stated that she sells crack for Johnson, E [McCann]. Id. at p. 5-6.

42. She said that E stole money and crack from Johnson. Id. at p. 8.

43. She said that Johnson said that if E came to her house to call him. Id. at p. 12.

44. Through a corrected report, she states that she believes that happened in July of 1999. Id. at p. 12-14 and 20.

45. She stated that E came to her house so she called Johnson. Id. at p. 14-15.

46. She said she walked to a payphone to call Johnson, then to sell some drugs, and on her way back, she heard gunshots near her house. Id. at p. 15-17.

47. She recognized Johnson on a photoboard. Id. at p. 19-20.

48. She stated that she works for Johnson and Johnson works for Shabazz. Id. at p. 21.

49. She stated that Shabazz knows E because E worked on Hallock Street at Shabazz' spot. Id. at p. 22-23.

50. She stated that she has bought crack from E, Johnson and Buddha. Id. at p. 27.

51. Adkins also recognized a boy on a photoboard who goes by Buddha or Buddha Man as Scruggs, and E as McMann. Id. at 25-26.

52. While investigating a different murder on December 4, 1999, Rodriguez obtained a statement from a Larkland Martin. (Exhibit A, ¶ 53; Statement of Larkland Martin dated December

5

4, 1999 (Exhibit H).

    53. He stated that he had witnessed a shooting back on July 25, 1999. Id. at p. 2.

    54. He said he was at an address on Howard Avenue. Id. at p. 2.

    55. He saw a Honda vehicle with two hispanic males and a black male. Id. at p. 3-4.

    56. He heard four to six shots and looked and saw a hispanic male with an automatic gun. Id. at p. 3.

    57. He also saw a young hispanic male and the driver of the Honda was black. Id. at p. 4.

    58. He saw the hispanic male shoot about three or four more times. Id. at p. 5.

    59. He thought he had seen the shooter before. Id. at p. 6-7.

    60. On photoboards, he identified the shooter as Santiago and also the driver as Johnson. Id. at p. 8-10.

    61. In a subsequent statement given on March 5, 2000, he identified the hispanic male who was in the backseat as Efrain Mendez and said he had seen him before at a store on Howard Avenue. (Statement of Larkland Martin dated March 5, 2000 (Exhibit I).

    62. Rodriguez went to the window from where Larkland Martin stated that he witnessed the murder. (Exhibit A, ¶ 63).

    63. He found the lighting and visibility conditions to be adequate to support the account given by Larkland Martin. Id. ¶ 64.

    64. Police incident reports were also generated on the night of the murder and subsequently during the investigation. Certified copies of police incident reports (Exhibit J).

    65. Some were from patrol officers in the vicinity of Columbus and Howard Avenues who heard gunshots. Id. Others were from police officers who removed bullets from a pharmacy (Biernie's) on the corner of Columbus and Howard Avenues. Id.

SUSMAN, DUFFY & SEGALOFF, P.C. · ATTORNEYS AT LAW
P.O.BOX 1684 · NEW HAVEN,CONNECTICUT 06507 · (203)624-9830 · JURIS NUMBER 62505

66. There was also a police incident report from a police officer who located the Samurai, McCann, Scruggs and Lucky, and the gun that Scruggs had fired.  Id.

67. Defendants reviewed all other reports from the investigation. (Exhibit A, ¶ 69).

68. Based on the foregoing accounts along with other witness statements, which all appeared to be consistent with each other, Rodriguez prepared Applications for Arrest Warrants. (Exhibit A, ¶ 70; Applications for Arrest Warrants for Santiago, Session and Johnson (Exhibit K).

69. Rodriguez included the written statements from the witnesses, containing the facts as aforementioned, as well as those from other witnesses. Exhibit K, ¶¶6-20.

70. As part of the arrest warrant applications, Rodriguez included an affidavit regarding seized property, in particular, the red Suzuki Samurai which had a bullet entrance hole in the tailgate (Exhibit A, ¶ 72; Exhibit K).

71. The information charged all three with: (1) Murder; and (2) Conspiracy to commit murder.  (Exhibit K).

72. In addition, Session and Santiago were both charged with Criminal use of firearm. (Exhibit K).

73. Santiago's information contained additional charges.  (Exhibit K).

74. The Court granted the applications for arrest warrants on January 5, 2001.  (Exhibit K).

75. Defendants were not present on January 8, 2001 when Session was arrested.  (Exhibit A, ¶ 78).

76. Defendants were not present when Santiago and Johnson were arrested.  (Exhibit A, ¶ 79).

77. The charges against the alleged shooter, Santiago, were dropped in July of 2002. (Complaint, ¶16).

SUSMAN, DUFFY & SEGALOFF, P.C.  ·  ATTORNEYS AT LAW
P.O.BOX 1684 · NEW HAVEN,CONNECTICUT 06507 · (203)624-9830 · JURIS NUMBER 62505

78. Thereafter, the charges against Session were nolled on November 15, 2001; Report of Parties' Planning Meeting dated June 29, 2005, (Plaintiff's Claims and Undisputed Fact sections). (Exhibit M).

79. Subsequently, the criminal charges were dismissed on August 14, 2002. (Complaint, ¶17).

          THE DEFENDANTS,
          STEPHEN COPPOLA AND EDWIN RODRIGUEZ

BY:      /s/ Thomas E. Katon
          Thomas E. Katon
          Susman, Duffy & Segaloff, P.C.
          P. O. Box 1684
          New Haven, CT 06507-1684
          Phone: (203) 624-9830
          Fax: (203) 562-8430
          Federal Bar no: ct01565

## **CERTIFICATION**

     I hereby certify that on December 22, 2006, a copy of the foregoing Local Rule 9(C)(1) Statement was filed electronically and swerved by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

          By:    /s/ Thomas E. Katon
              Thomas E. Katon (ct01565)
              Susman Duffy & Segaloff, P.C.
              55 Whitney Avenue
              P.O. Box 1684
              New Haven, CT 06507
              Telephone: (203) 624-9830
              Facsimile: (203) 562-8430
              Email:    Tkaton@susmanduffy.com

I:\Client N-O\NHCITY\Session\Pleadings\Local Rule Statement-December.doc

8

SUSMAN, DUFFY & SEGALOFF, P.C. · ATTORNEYS AT LAW
P.O.BOX 1684 · NEW HAVEN,CONNECTICUT 06507 · (203)624-9830 · JURIS NUMBER 62505