**Sharon Adkins**

Adkins provided the motive for the shooting and certain details of the events leading up to it. She was supposed to have been a reliable confidential informant (hereinafter "CI") but the Defendants provided no facts in the warrant application to establish her bona fides as a CI. Her circumstances, criminal background, mental illness, drug addiction and the wild inaccuracies in her account should have alerted the Defendants to her lack of veracity, reliability and even her ability to accurately observe and relate details.

The police may not rely upon a confidential informant when it is or should be clear that informant is unreliable. Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). The Defendants failed to corroborate the dates provided by Adkins, further undermining the reasonableness of their reliance upon the statements. Ortega, 81 F.3d at 1525-26.

The Defendants further withheld all of the unfavorable information about Adkins from the reviewing judge including the facts that she was a crack addicted manic depressive who was not taking her medication, continued to insist that the events she was recounting occurred some three (3) weeks after the shooting and that she had a pending criminal case. The pendency of criminal charges made Adkins more vulnerable to pressure and manipulation and made her far more likely to tell the police whatever they wanted to hear. Adkins's ongoing crack cocaine use and its well known effect on the mental status of manic depressives would have sounded alarm bells concerning her basic ability to observe and relate information accurately to any judge informed of those facts.

Adkins's obvious deficits in this area were clearly demonstrated by her continued insistence that the events she was relating occurred on August 16, 1999. Instead of telling the court about Adkins's shortcomings, the Defendants attempted to bolster her credibility by claiming Adkins "corrected" her statement to change the obviously incorrect dates. However, as noted, Adkins did not provide a supplemental statement affirming that she was in fact correcting her statement. When the missing information about Adkins is added to warrant application and the apparently false statement about Adkins correcting the dates is removed, her statement does not establish probable cause.

Adkins did not provide any information remotely tying Plaintiff to the Lucky shooting. She did not know or name the Plaintiff or tie him to any conspiracy. She did not see him hand anyone a gun nor did she have any such information. She did not state that she had any information concerning any threats made by Plaintiff against McCann or Scruggs. The statement of Sharon Adkins standing alone would certainly have been insufficient to establish probable cause to arrest the Plaintiff. All Adkins said was that Plaintiff was involved in selling drugs and that McCann may have stolen money belonging to him. While her statement may have provided motive for action against McCann, it did not contain anything to tie Plaintiff to the shooting.

### Larkland Martin

Likewise, the statements of Larkland Martin standing alone would not have sufficed to establish probable cause for Plaintiff's arrest. Mr. Martin was a witness to the shooting itself but had no information about the Plaintiff or anything that may have led up to the shooting. In addition, Martin's statement itself is inconsistent on the critical question of shots being fired from the jeep. More significantly, even a cursory

19

examination of the photographs of the Martin's residence and the immediate vicinity shows that Martin could not possibly have observed what he claimed to have seen and that Rodriguez misled the court when he stated that his inspection of Martin's residence showed no impairments to Martin's alleged observations.

As noted a series of tall, leaf covered trees grew directly in front of and to the side of Martin's house in the direction of the Howard Avenue/Columbus Avenue intersection on July 25, 1999, blocking his view of the area and events he claimed to have seen. The lighting was equally problematic. The front porch light mentioned by Martin was a small bulb near the front door, which was nearly forty (40) feet from the curb of Howard Avenue. The light from that bulb would not have carried to the street where Martin claimed to have seen the three men, being blocked by the tree that grew there in 1999. The closest streetlight was over 100 feet away, across and up the street from Martin's vantage point at the third floor window. The only other streetlight anywhere close to Martin's house was an almost equal distance away, down the street from his house. Rodriguez not only failed to tell the court about these facts, he affirmatively misrepresented the situation.

Rodriguez further failed to appraise the court of the conflicting accounts given by Martin concerning the question of shots having been fired from the jeep containing McCann, Scruggs and Lucky. Martin alternatively stated that he did not see or hear shots fired from the jeep and that he saw the jeep drive off "firing'. If in fact shots were fired from the Jeep, that fact would tend to support the account given by McCann and Scruggs, that the Samurai was fired upon by a moving vehicle and not by persons standing on Howard Avenue as related by Martin. This in turn raises a genuine issue about which

version of the shooting is actually correct. When the missing information is included in the warrant and Rodriguez's falsehoods removed, Martin's statement becomes worthless to establish probable cause for Plaintiff's arrest.

**Mercado**

Based upon the foregoing, it is clear that Myra Mercado was the one indispensable witness in any case against the Plaintiff. She was the only person who could directly tie the Plaintiff to any conspiracy to murder Albert McCann. Without her statements, there would not have been probable cause for the arrest of the Plaintiff.

Plaintiff has produced information showing that Mercado was an unwilling witness who under extreme duress, was browbeaten, coerced and threatened into providing a "statement" in which she repeated falsehoods fed to her by Rodriguez. Rodriguez did not inform the court of Mercado's pending criminal case, her unwillingness to cooperate, her lack of knowledge, her crack addiction, her withdrawal symptoms, his actions in extracting a statement from her or the real source of the "information" provided by her. Mercado has now repudiated her prior statements as "all lies." Under these circumstances, the issuance of an arrest warrant will not shield the Defendants from liability for false arrest or the other claims. These new developments create numerous, genuine factual disputes that may only be resolved at trial.

The remaining reports, concerning the shooting reconstruction, the recovery of shell casings, the autopsy report and the reports of officers having heard shots fired did not, in themselves, establish probable cause to arrest the Plaintiff for murder. All those reports established was that a shooting occurred and that Anthony Lucky, Jr. died, but not that the Plaintiff was involved in any fashion.

21

2.    <u>Disposition in Favor of Accused</u>

The defendants claim that the Plaintiff cannot prevail on his false arrest, false imprisonment and malicious prosecution claims because the criminal case was not resolved in his favor. That argument is misplaced. The law upon which the Defendants rely is inapplicable in this case. The Defendants principally rely upon <u>Birdsall v. City of Hartford</u>, 249 F. Supp. 2d 163, 171 (D. Conn. 2003), in support of their argument. That reliance is misplaced as <u>Birdsall</u> does not represent the majority view under Connecticut law respecting the effect to be given certain types of criminal case dispositions and appears to have incorrectly applied the applicable law.

In <u>Birdsall</u>, summary judgment was granted in favor of the defendants on the Plaintiff's §1983 claim because the state had previously entered a nolle to the underlying criminal charges. Relying upon <u>Roesch v. Otarola</u>, 984 F.2d 850, 952 (2d Cir. 1992) and <u>Singleton v. City of New York</u>, 632 F.2d 185, 193 (2d Cir. 1980), the <u>Birdsall</u> court concluded that "A criminal proceeding terminates in favor of the plaintiff only when its "final disposition is such as to indicate the accused is not guilty" . . . "A nolle, like 'an adjournment in contemplation of dismissal . . . involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt." <u>Birdsall</u>, 249 F. Supp. 3d at 171 (citations omitted). Since Birdsall's case did not terminate in a fashion to indicate he was not guilty, the court granted summary judgment on his false arrest claim. <u>Id</u>. However, the hard line position taken by the <u>Birdsall</u> court is but one of three (3) different approaches taken by Connecticut courts in deciding what effect to give to a nolle or dismissal in the context of false arrest claims and the <u>Birdsall</u> view is not in the majority.

22

A recent Connecticut Superior Court decision, St. Paul v. Griffin, et al., Docket No. CV 04-4001817, J.D. of New Haven, September 12, 2006 (Levin, J.), is instructive. (A copy of the case is annexed hereto as Exhibit Q). In St. Paul, the Plaintiff had been arrested for stalking. In exchange for St. Paul's agreement to make no further attempts to contact the victim for thirteen months, the state agreed to nolle the charge. St. Paul then filed a malicious prosecution and the Defendants moved for summary judgment arguing that the nolle was not a "favorable disposition" for the accused/Plaintiff. In granting the Motion, the court exhaustively canvassed the law in this area, distinguishing three (3) different approaches taken in Connecticut to the effect of nolles and dismissals on subsequent civil actions.

The first and most rigid approach, followed in Birdsall, requires that the action have gone to judgment resulting in a verdict of acquittal, in the criminal context, or no liability, in the civil context. See also Simpson v. Denardo, [United States District Court, Docket No. CV 1471] (D.Conn., July 29, 2004) ('A nolle prosequi does not qualify as a favorable termination for purposes of a malicious prosecution claim'); Walsh v. Souza, [United States District Court, Docket No. CV 1872] (D). Conn. May 25, 2004) ('A nolle prosequi is not a favorable termination of the type required to support a malicious prosecution claim').

The second permits suit even if the underlying action was merely withdrawn so long as the plaintiff can demonstrate that the withdrawal took place under circumstances creating an inference that the plaintiff was innocent, in the criminal context, or not liable,

23

in the civil context. See <u>DeLaurentis v. New Haven</u>, 220 Conn. 225, 250-51, 597 A.2d 807 (1991). [1]

The third approach, while nominally adhering to the 'favorable termination' requirement, in the sense that any outcome other than a finding of guilt or liability is favorable to the accused party, permits a malicious prosecution or vexatious suit action whenever the underlying proceeding was abandoned or withdrawn without consideration, that is, withdrawn without either a plea bargain or a settlement favoring the party originating the action. <u>See v. Gosselin</u>, 133 Conn. 158, 159, 48 A.2d 560 (1946).

In <u>See</u>, the Plaintiff had received a nolle in the criminal case. In its discussion as to what constitutes a "favorable termination," the court stated:

> It is not necessary that the accused should have been acquitted. It is sufficient if he was discharged without a trial under circumstances amounting to an abandonment of the *without request from or by arrangement with him*. . . Such a termination of the prosecution is sufficient ground for the institution of the action, but it does not, of itself, establish want of probable cause or malice, which are to be determined at the trial upon all the facts . . .'It has frequently been held that there is a sufficient termination to meet the requirements in this respect in an action for malicious prosecution where the prosecution is abandoned either by the prosecuting attorney or the complaining witness.' " (Citations omitted; emphasis added.)

<u>See</u>, 133 Conn. at 160.

As Judge Levin made clear in <u>St. Paul</u>,

"the majority of decisions applying Connecticut law, however, hold that a nolle of the criminal charge may still permit the plaintiff to satisfy that element if the circumstances of the nolle satisfy the <u>See v.</u>

_____

[1] The DeLaurentis Court stated: "Notwithstanding our recitation of the term '*favorable* termination' . . . we have never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding has terminated without consideration . . . Instead, we have always viewed the issue of whether the prior outcome was 'favorable' to the plaintiff as relevant to the issue of probable cause." <u>DeLaurentis</u>, 220 Conn. at 250-51.

Gosselin test of 'an abandonment of the prosecution without request from or by an arrangement with [the defendant].' More specifically, the decisions hold that a nolle will preclude a subsequent case for malicious prosecution when it was made as part of a plea bargain or under other circumstances that indicate that the defendant *received the nolle in exchange for providing something of benefit to the state or victim.* For example, if some charges were nolled in exchange for a guilty plea to another offense, those nolle charges could not be the basis for a subsequent malicious prosecution claim. If, however, a charge was nolled by the prosecutor without the request of the defendant, that could satisfy the element if the circumstances of the nolle indicated an 'abandonment of the prosecution.' The factual circumstances surrounding the nolle are material and when disputed, must be resolved by the trier of fact.

See, e.g., Jackson v. Smith, Superior Court, judicial district of Hartford, Docket No. CV 02 815282 (July 14, 2003, Wagner, J.T.R.) (35 Conn. L. Rptr. 72)] (nolle, which was conditioned on future noncontact between the defendant and the victim, was not sufficient to constitute a 'favorable' termination under See v. Gosselin);  Cislo v. Pitman, Superior Court, judicial district of Ansonia-Milford, Docket No. CV 91 10036193 (May 15, 1997. Corradino, J.] (denying motion to set aside a malicious prosecution verdict in favor of the plaintiff on the ground that the underlying criminal case was not resolved in the plaintiff's favor: 'Here the charges were nolled. They were not [n]olled at the instigation of the plaintiff, they were apparently nolle because the complainant did not appear in court. The latter fact alone suggests that the failure to proceed implies a lack of reasonable grounds for the prosecution' [quotations omitted]); Sabir v. Jewett, 214 F. Supp. 2d 226, 240-41 (D. Conn. 2002)(nolles in separate criminal case could satisfy the 'favorable termination' element if unconnected to case in which plea bargain occurred); Russo v. Hartford, 184 F. Supp. 2d 169, 186 (D. Conn. 2002) (motion to dismiss malicious prosecution claim denied when underlying criminal case 'terminated based on a suppression issue with no indication of [the plaintiff's] guilt'); see also Haynes v. New

25

London, [United States District Court, Docket No. CV 2551 (D. Conn., May 17, 2002 (summary judgment as to false arrest claim denied where facts disputed as to the circumstances surrounding the nolles)." Holman v. Cascio, United States District Court, Docket No. CV 1523 (D. Conn., August 29, 2005).

Furthermore, Restatement (Second), Torts § 660 states that [a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if (a) the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused." In discussing that rule, comment "c" states that "[a]lthough the accused by his acceptance of a compromise does not admit his guilt, the fact of compromise indicates that the question of his guilt or innocence is left open. Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor."

In St. Paul, the Plaintiff had received a nolle in exchange for his agreement to refrain from contacting the stalking complainant. Applying the See v. Gosselin test, the court granted the Motion for Summary Judgment. However, application of that rule in this case requires a different result.  The Plaintiff did not give any consideration for the nolle and subsequent dismissal of the criminal charges against him. The entry of the nolle and the dismissal was the exclusive decision of the prosecutor, unaided by any offers or actions by Mr. Session.

The Birdsall decision is clearly contrary to the great weight of authority in Connecticut concerning the "termination" requirement. It appears that the Birdsall court failed to consider both the underlying facts of and the rationale behind the rule enunciated

in <u>Singleton</u> and <u>Roesch</u>. In both cases, the accused had invoked the protections of a statutorily created means of obtaining a dismissal of the charges. In <u>Singleton</u>, the Defendant utilized an Adjournment in Contemplation of Dismissal (hereinafter "ACD") pursuant to N.Y. Crim. Proc. Law §170.55, while in Roesch, the accused applied for and was granted entry into Accelerated Rehabilitation (hereinafter "AR") pursuant to <u>C.G.S.</u> §54-56f.

In both cases, the criminal defendants affirmatively invoked the protections of a statutory scheme in order to avoid a trial, a conviction and a permanent criminal record. The AR statute mandates dismissal of the charges upon the successful completion of the accused of the conditions of AR probation. <u>Conn</u>. <u>Gen</u>. <u>Stat</u>. 54-56e(f). Under an ACD, the accused is kept under observation for a period of time and in exchange for his good behavior, the case may then be dismissed. In <u>Birdsall</u>, the defendant obtained a nolle after making a charitable contribution. Under Connecticut law, the court or a prosecutor may consider charitable contributions by the accused in deciding how to dispose of a case. <u>C.G.S.</u> §54-56h.

The circumstances of the Plaintiff's case were very different from those in <u>St. Paul,</u> <u>Singleton</u>, <u>Roesch</u> or <u>Birdsall</u>. The Plaintiff did not invoke any statutory provision in order to obtain a nolle or dismissal, nor was the nolle the result of any agreement or *quid pro quo* with the state. Unlike the Plaintiffs in the above cited cases, Mr. Session did not receive the nolle in exchange for something. Under the majority view in Connecticut, the nolle in Plaintiff's case was a favorable termination that preserved his right to maintain claims for false arrest, false imprisonment and malicious prosecution and summary judgment is therefore inappropriate.

27

Moreover, the failure of the Plaintiff to object to the nolle was immaterial in light of the applicable law and the subsequent dismissal. The court must accept the entry of the nolle prosequi for the record unless it is persuaded that the prosecutor's exercise of discretion is clearly contrary to manifest public interest. State v. Lloyd, 185 Conn. 199, 204 440 A.2d 867 (1981)(additional citations omitted).

Conn. Gen. Stat. §54-142a(c) provides in part that:

"Whenever any charge in a criminal case has been continued at the request of the prosecuting attorney, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution **or other disposition of the matter**, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period and such erasure may thereafter be effected or a petition filed therefore, as the case may be, as provided in this subsection for nolled cases. (emphasis supplied.)

A nolle remains open for a period of thirteen months, during which time the state may further prosecute or dismiss the charges. While a criminal defendant may object to a nolle, Conn. Gen. Stat. §54-56b; Practice Book §39-30, he has no such right with respect to a dismissal and ultimately, the charges in this case were dismissed.

It would be manifestly unfair and inequitable to deny the Plaintiff his day in court based upon a prosecutorial decision to dismiss charges over which he had no control whatsoever. It is one thing to tell a §1983 Plaintiff that he cannot maintain a false arrest claim after he invoked a statutory remedy to avoid a trial and a criminal record entirely, or has bargained for a dismissal or nolle. It quite another matter to say the same thing to a man who was incarcerated for over three hundred (300) days on the basis of a fraudulent arrest warrant and who was only freed from the threat of prosecution when the state exercised its unreviewable discretion to dismiss the charges.

28

3.    <u>Qualified Immunity</u>

The Defendants argue that summary judgment should be granted because they are entitled to qualified immunity. Based upon the supporting documentation to this objection, there exists a significant and genuine dispute as to whether or not the Defendants engaged in fraud and deception in order to obtain the arrest warrant, precluding summary judgment at this juncture.

Government actors performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. <u>Anderson v. Creighton</u>, 483 U.S. 635, 638, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1986). <u>Malley v. Briggs</u>, 475 U.S. 335, 340-41, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).

The Second Circuit has articulated a specific summary judgment standard to be used in cases in which the moving party asserts qualified immunity as a defense. [A] defendant is entitled to summary judgment on qualified immunity grounds when 'no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[] to believe that he was acting in a fashion that did not clearly violate an established federally protected right.'" <u>Lennon v. Miller</u>, 66 F.3d 416,

423 (2d Cir. 1995) quoting <u>Robison v. Via</u>, 821 F.2d 913, 921 (2d Cir. 1987). "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Id. When "the factual record is not in serious dispute . . . . the ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide." <u>Warren v. Dwyer</u>, 906 F.2d 70, 76 (2d Cir.) (2d Cir.) cert. denied, 498 U.S. 967, 112 L. Ed. 2d 414, 111 S. Ct. 431 (1990).

The Defendants first claim that since probable cause existed for Plaintiff's arrest, no federally protected right was violated entitling them to qualified immunity. In support thereof, the Defendants rely upon the arguments set forth in the discussion of false arrest. The Plaintiff does likewise. Probable cause did not exist because of the Defendant's actions in submitting a false and incomplete arrest warrant affidavit. The Plaintiff clearly had a well established right to be free from an arrest based upon a fraudulent and incomplete affidavit. <u>Smith v. Edwards</u>, 175 F.3d 99, 105 (2d Cir. 1999)

Relying on <u>Shattuck v. Town of</u> Stratford, 233 F. Supp. 301, 307 (D. Conn. 2002), the Defendant next argue that even if probable cause did not exist for the arrest, they are still entitled to qualified immunity so long as their actions were still objectively reasonable or that reasonably competent police officers could disagree are to whether there was probable cause to arrest. Police officers may be entitled to qualified immunity for arrest based on a warrant issued by a judge; " the issue is whether a reasonably trained officer in the [defendants'] position would have known that the affidavit failed to establish probable cause and that he should not have applied for the warrant . . . the officer will not be immune if, on an objective basis, it is obvious that no reasonably

competent officer could have concluded that the warrant should issue but if officers of reasonable competence could disagree on this issue, immunity should be recognized . . . The court's inquiry into reasonableness is limited to determining whether a reasonably trained officer would have known that the warrants were illegal despite the magistrate's authorization". <u>Shattuck</u>, 223 F. Supp. 2d at 309-309.

It is not objectively reasonable for any reasonably competent or well trained officer could have believed that an arrest warrant should have issued on the actual facts of this case. A reasonably well-trained officer would have known that withholding critical information undermining the credibility, veracity and competence of crucial witness from the issuing judge or including a false statement coerced from the key witness was illegal. A reasonably well-trained officer would know that confidential informants may not be relied upon for arrest warrant affidavits without support for assertions of reliability and some attempt at corroboration of their claims. A reasonably well trained officer would know that knowingly false statements obtained under duress and by threats are improper. A reasonably well trained officer would know not to misrepresent the ability of a key witness to actually observe the events described. A reasonably well trained officer would know not to claim an clearly erroneous witness statement had been "corrected". The Defendants are not entitled to qualified immunity under the facts of this case.

**State Law Claims**

The Defendants' arguments in support of summary judgment on Plaintiff's state law claims are derivative of their arguments on the federal claims; the issuance of a facially valid arrest warrant insulates them from liability. The foregoing clearly

establishes that the Plaintiff may attack the validity of the warrant upon a proper factual showing. The Plaintiff has done so for the reasons previously set forth and relies upon those arguments in response to this claim.

## Supplemental Jurisdiction

The Defendants ask this court to decline to exercise its supplemental jurisdiction over Plaintiff's state law claims in the event it grants summary judgment on the federal claims. Because the Defendants are not entitled to summary judgment, the court should continue to exercise its supplemental jurisdiction. However, in the event this court does grant summary judgment on the federal claims, this court should exercise its jurisdiction on the state claims. The very factors cited by the Defendants in support of this court declining to exercise supplemental jurisdiction, judicial economy, convenience, fairness and comity, all demand the exercise of that jurisdiction. This case is nearly ready for trial and it makes little sense, and would be manifestly unfair at this juncture, to require the Plaintiff to go elsewhere.

## Governmental Immunity

The Defendants assert they are entitled to governmental immunity on the Plaintiff' state law claims claiming that their actions in investigating the criminal case were discretionary, thus entitling them to immunity. While the Defendants have not cited any specific source for the immunity claim, it would appear to derive from Conn. Gen. Stat. 52-557n(a)(1).

Pursuant to that statute, a municipality is liable for the negligent acts of its employees of ministerial functions but immune for discretionary functions. Proprietary

and ministerial actions by public officials are not considered governmental and, therefore, are not subject to a governmental immunity defense. Roman v. Stamford, 16 Conn. App. 213, 221, 547 A.2d 97 (1988), aff'd, 211 Conn. 396, 559 A.2d 710 (1989). "Ministerial" refers to a duty that is to be performed in a prescribed manner without the existence of judgment or discretion. Wright v. Brown, 167 Conn. 464, 471 (1975). Under §52-557n(a)(1)(C)(2)(A), a municipality is not liable for "Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct".

Based upon the foregoing, governmental immunity is inapplicable in this case. First, the facts set forth above pertaining to the Adkins, Martin and Mercado statements raise substantial question as to whether or not the Defendants actions constitutes fraud, criminal conduct, actual malice or willful misconduct. If so, then New Haven cannot be held liable for their actions and immunity is inapplicable.

Second, the wrongdoing by the Defendants with respect to the witness statements did not involve any discretion whatsoever. The Defendants were under affirmative legal obligations to submit a truthful and complete arrest warrant application. The act of signing and swearing to an arrest warrant affidavit is not discretionary; it is ministerial. The Defendants did not have the discretion to make false statements under oath. Under Connecticut law, that is a crime. See Conn. Gen. Stat. 53a-157b false statement in the second degree. [2] While the Defendants may have been free to investigate the Lucky case

---

[2]  §53a-157b states: That statute provides that: A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function.

33

in any manner they desired, they were not free to defraud the court in the warrant application. Governmental immunity is inapplicable.

## Negligent and Intentional Infliction of Emotional Distress

The Defendants seek summary judgment on these claims arguing that Plaintiff has failed to allege a duty, that his damages, if any, arose from their discretionary acts and that he has failed to demonstrate that their actions were "so outrageous as to go beyond the bounds of common decency." These claims are easily refuted. First, the pleadings clearly place the Defendants on notice of the claims and no more is required. Fed. R. Civ. P. Rule 8(a). The discretion/immunity claim has been previously addressed <u>supra</u>. Finally, the Mercado affidavit and the other information pertaining to the Adkins and Martin statements combined with the Plaintiff's 300 plus days of incarceration as a result, more than adequately establishes egregious misconduct.

## <u>CONCLUSION</u>

Based upon the foregoing, the Plaintiff has established the existence of genuine disputes about material facts requiring a trial in this matter. The Motions for Summary Judgment should be denied.

THE PLAINTIFF
GARY SESSION

By_____
    Roy S. Ward, Esq.
    3695 Post Road, Suite 203
    Southport, CT  06890
    Tel: (203) 255-9829
    Fax: (203) 255-9839
    attyrward@yahoo.com
    Fed. Bar No, CT 11618

34