## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GARY SESSION,                              CIVIL ACTION NO.

            Plaintiff                       3:03-cv- 00943  (AWT)

       V.

EDWIN RODRIGUEZ, ET AL.            JUNE 7, 2007

           Defendants

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT CITY OF NEW HAVEN'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56, Fed. R. Civ. P. and Rule 7 of the Local Rules of Civil

Procedure, the Plaintiff Gary Session objects to the Defendant City of New Haven's

(hereinafter "the City") Motion for Summary Judgment on Counts One, Two and Three

of the Revised Complaint dated June 29, 2005.  There are genuine disputes as to the

material facts of this case precluding the grant of summary judgment to the City.


## I.       BACKGROUND

The Plaintiff incorporates the Background section of his Memorandum of Law

dated January 12, 2007 in Objection to the individual Defendants' Motion for Summary

Judgment into this memorandum of Law.

## II.      STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(b).

A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 91 L.Ed. 2d 202, 106 S. Ct. 2502 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, 91 L.Ed. 2d 265, 106 S. Ct. 2548 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of the plaintiffs. See Anderson,  477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## III.    THE CITY IS NOT ENTITLED TO SUMMARY JUDGMENT

Adopting and incorporating the individual Defendants' arguments in favor of Summary Judgment as its own, the City first argues that since the individual Defendants are entitled to Summary Judgment, so is the City.

The Plaintiff adopts and incorporates the arguments set forth in his Memorandum of Law in Opposition to the individual defendants' Motion for Summary judgment into this Memorandum of Law. For the reasons set forth therein, the individual Defendants are

not entitled to Summary Judgment, thus precluding a grant of Summary Judgment to the City on that basis.

### A.    A LONG STANDING CITY POLICY CAUSED MULTIPLE VIOLATIONS OF THE PLAINTIFF'S FEDERAL RIGHTS

The City argues that even if the individual Defendant's must face trial, it need not because "No City Policy Caused a Violation of Plaintiff's Federal Rights" The City's Memorandum of Law, p.2.  However, the City has failed to carry its burden, as it must, of establishing facts to support this assertion. Other than citing the law applicable to municipal immunity, with which the Plaintiff agrees, the City has failed to demonstrate that there is no genuine dispute as to any material fact. While the City's Motion and attachments do not meet its burden, the Plaintiff's response below alleges sufficient facts to demonstrate that the it has been a long-standing policy of the City to violate the civil rights of suspects in criminal matters.

It is well established that a municipality may not be held liable under 42 U.S.C. § 1983 for the alleged constitutional violations of its employees below the policy-making level solely on the basis of the doctrine of respondeat superior. See Monell v. Department of Social Servs., 436 U.S. 658, 694, 56 L.Ed. 2d 611, 98 S. Ct. 2018 (1978); DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998). Instead, to hold a municipality liable for the actions of employees below the policy-making level, a plaintiff must establish that the moving force behind the constitutional violation was an official policy or custom of the municipality. See Monell, 436 U.S. at 690-94; Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1985); see also Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 917, 107 S. Ct. 1369, 94 L.Ed. 2d (1987)(holding that in

order to establish municipal liability, a plaintiff "must first prove the existence of a municipal policy or custom").

The plaintiff in a Section 1983 claim bears the burden of establishing municipal liability. See Vippolis, supra 768 F.2d at 44. To satisfy this burden, a plaintiff cannot rely on a conclusory assertion that the municipality has such a custom or policy, Dwares, supra, 985 F.2d at 100. A plaintiff must proffer direct or circumstantial evidence that suggests a pattern of misconduct from which it may be inferred that decision makers approved of or acquiesced in the unconstitutional acts. Walker v. City of New York, 974 F.2d 293, 300 (2d Cir. 1992), cert. denied, 507 U.S. 961, 113 S. Ct. 1387, 122 L. Ed. 2d 762 (1993). See also Morales v. New York City Police Dep't, 2000 U.S. Dist. LEXIS 93, 97 Civ. 7151, 2000 WL 10436, at 2 (S.D.N.Y. Jan. 6, 2000) (the plaintiff must allege "some facts that make possible the inference of a policy giving rise to municipal liability"). See Exhibit B.

Constructive knowledge of constitutional violations may be imputed to the municipality. Pineda v. City of Houston, 291 F.3d 325,328 (5th Cir. 2002); McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989). A pattern may exist without actual or constructive knowledge because the facts of the events are concealed from policymakers. However, the sheer numerosity of incidents *can* provide evidence of constructive knowledge. Pineda, 325 F.3d at 330, n.13. ("Sufficiently numerous prior incidents of police misconduct, for example, may tend to prove a custom *and* accession to that custom by the municipality's policymakers. Isolated instances, on the other hand, are inadequate to prove knowledge and acquiescence by policymakers.") (emphasis added);

Id. at 331, n. 15;  Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987) ("Constructive

knowledge may be inferred from the widespread extent of the practices, general

knowledge of their existence, manifest opportunities and official duty of responsible

policymakers to be informed, or combinations of these.")

The Second Circuit has articulated four situations in which a municipality can be

held liable under Section 1983. See Moray v. City of Yonkers, 924 F. Supp. 8, 12

(S.D.N.Y. 1996) The plaintiff may allege the existence of: (1) a formal policy officially

endorsed by the municipality; See Monell v. Department of Social Servs., supra 436 U.S.

at 690; (2) actions taken by government officials responsible for establishing the

municipal policies that caused the particular deprivation in question; See Pembaur v. City

of Cincinnatti, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (plurality

opinion); Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992); (3) a practice

so consistent and widespread that it constitutes a custom or usage sufficient to impute

constructive knowledge of the practice to policymaking officials, See Monell, 436 U.S. at

690-91; or (4) a failure by policymakers to train or supervise subordinates to such an

extent that it amounts to deliberate indifference to the rights of those who come into

contact with the municipal employees. See City of Canton v. Harris, 489 U.S. 378, 388,

109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). There must also be a causal link between the

policy, custom, or practice and the alleged injury in order to find liability against a

municipality. See Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).

The parties do not disagree about the applicable law but do part company on the

application of the facts to that law. In further support of its application, the City offers the

affidavit of Francisco Ortiz, the Chief of the New Haven Police Department. Chief Ortiz

avers that there is no policy to violate individuals' civil rights and that the City does not

condone violations of individuals' civil rights.

Those allegations are scarcely surprising or unexpected. Under the circumstances,

it would be astonishing if Chief Ortiz swore that there was an explicit policy or practice

of violating individuals' civil rights or approval of such violations. What is surprising,

however, given the fact that the City bears the initial burden of proof with respect to this

Motion, is the absence of either any factual representations in Chief Ortiz's affidavit

concerning what policies, procedures, directives, guidelines or practices are in place to

detect, investigate and punish civil rights violations by New Haven Police officers or any

acknowledgement of the history of serious civil rights abuses by the New Haven Police

Department, several of which are nearly identical to the facts of this case.

The City of New Haven and its police department and individual officers have

been sued numerous times for alleged civil rights violations and many of those suits,

including claims of municipal liability, have survived summary judgment motions. See

Pappas v. New Haven Police Dep't, 175 F. Supp. 2d 288  (D. Conn. 2001)(improper

training leading to false arrest);  Smith v. City of New Haven, 166 F. Supp. 2d 636 (D.

Conn. 2001)(excessive force, battery claims by individual police officers); Hamilton v.

City of New Haven, 213 F. Supp. 2d 125 (D. Conn. 2002)(excessive force and fourth

amendment violations). [1]

---

[1] Pursuant to F.R.E. 201 (b), the Plaintiff  asks that the Court take judicial notice of the adjudicative facts of
the above cited cases and the cases set forth infra. See also McBride v. Routh, 51 F. Supp. 2d 153, 155 (D.
Conn. 1999).

The individual defendants herein, former Detectives Coppola and Rodriguez have previously been named defendants in a law suit alleging misconduct similar to some of this misconduct alleged herein. In <u>Cusick v. City of New Haven</u>, 145 Fed. Appx. 701 (2d Cir. 2005), the Plaintiffs, relatives of a murder victim, alleged intentional infliction of emotional distress arising from the failure of the Defendants, including Coppola and Rodriguez to provide the North Haven Police Department with inculpatory information regarding the killer of their relative. <u>Cusick</u>, 145 Fed. Appx. At 702-703.  The case was ultimately dismissed, not because the alleged suppression of evidence did not occur, but because in the Court's opinion, that conduct did "rise to the level of conscience shocking such that it violates plaintiff's substantive due process rights." <u>Id.</u> at 703, n.1.  The conduct alleged in Cusick occurred prior to the events alleged by the Plaintiff herein.

On May 25, 2004 in the matter of <u>State v. Larry Davis</u>, Superior Court, Judicial District of New Haven at New Haven, Docket Nos. CR 6-490576, CR 23-24537 and CR 23-24538 (Licari, J.), the Defendant Rodriguez admitted under oath that in 2001, he had been formally reprimanded for misconduct that occurred in 1997 or 1998 including his having prompted a witness during a photo array identification procedure about which he had stated that said identification had been made without hesitation and that he had further stated that if he had known that the witness prompting was going to cause him problems, he would have gotten rid of the tape. <u>See</u> Exhibit C, pp. 12-13, 15.

On January 26, 1999, the Defendant Rodriguez testified under oath in the matter of <u>State of Connecticut v. Angel Garcia</u>, Superior Court, Judicial District of New Haven at New Haven, Docket No. CR-464888 (Fracasse, J). Garcia was charged with being a

7

participant in an armed robbery. Both Rodriguez and Coppola were assigned to investigate the matter. Rodriguez interviewed the victim in Spanish at the New Haven Police Department. See Exhibit D, pp. 2-3.  The Defendant Coppola was present during the interview. See Exhibit D, p. 7. Police Department and the interview was tape recorded. See  Exhibit D, p. 6. Rodriguez then provided a translation from Spanish into English to be typed up.

On cross-examination, when confronted with an accurate, live translation of the actual interview tape, Rodriguez admitted that he had failed to include exculpatory information in the translation from the Spanish or information that contradicted representations in the arrest warrant including that the victim could not see the second man) very well, that he didn't really know the second man, that he could not describe the color of the man's coat because it was dark and that he could not observe the second man well because he was looking at the gun being held by the first man See Exhibit D, pp. 25-36..  Rodriguez further admitted to having excluded the same information from both his police report and from an arrest warrant application he submitted based upon the interview. Id. There is no indication in the documents received to date in discovery that either Rodriguez or Coppola were ever disciplined in connection with this matter.

Rodriguez's own admissions from the Davis and Garcia cases are disturbingly similar to aspects of the present case including the deliberate use of misstatements and the intentional omissions of critical information from arrest warrant applications and the City was clearly aware of these matters pre-dating the Session case. However, the foregoing pales in comparison to two prior cases that establish beyond any doubt that the

City of New Haven has long been aware of and has condoned continues to condone a policy of civil rights violations of innocent persons ensnared in homicide investigations by its Police Department.

The first case is Golino v. City of New Haven, 950 F.2d 864 (2d Cir. 1991). While the names of the Plaintiff and the Defendant police officers may be different, there is a frightening similarity between the facts of Golino and the present case. In 1984, Golino was arrested on a warrant that was determined to have contained "false statements and made numerous material omissions." Golino, 950 F.2d 864, 867 (2d Cir. 1991). In 1991, the Second Circuit upheld the judgment against the City and the individual officers for violations of Golino's federal civil rights.

In this case, the affidavits of the Plaintiff and Mayra Mercado submitted with Plaintiff's Objection to the individual defendants' Motion for Summary Judgment establish that the individual defendants submitted false statements in the arrest warrant application. The memorandum of law established that the individual defendants omitted large amounts of material information from the warrant application including critical information about the mental health and veracity of  the second key witness, Sharon Adkins and the ability of the third witness, Larkland Martin to have actually observed the shooting. In other words, fifteen years after Golino, the same police department was doing the same thing to a new victim.

The descriptions of the District Court in Golino of the actions of the New Haven police in that case, in failing to disclose contradictory or inconsistent information from Joyce Carasone Lupone are nearly identical to the actions of the individual defendants

herein regarding the statements of Sharon Adkins and Larkland Martin. See Plaintiff's

Memorandum of Law in Opposition to Summary Judgment, pp. 2-4 (Adkins); 8-

10(Martin). The deliberate misrepresentations of the statements of the informant Neil

Russo found by the District Court in Golino are a mirror image of the actions of Coppola

and Rodriguez towards Mayra Mercado in this case. In Golino, Russo testified in a

deposition that he never made a certain statement to the police contrary to their claims

and that "when they interviewed him, he would 'say one thing and they put down another

thing.'" Golino, 950 F.2d 864, 867 (2d Cir. 1991). One could substitute the name Mayra

Mercado for Neil Russo and have an identical situation. See Affidavit of Mayra Mercado,

Exhibit E to Plaintiff's January 12, 2007 Objection to Individual Defendants' Motion for

Summary Judgment.

Seven years after Golino, a different set of New Haven police officers engaged in

conduct remarkably similar to that found in Golino, including the submission of false,

misleading or incomplete arrest warrant applications in reckless disregard for their

accuracy or the rights of the accused, providing additional proof of the ongoing policy of

civil rights violations by the Police Department condoned by the City of New Haven.

In Ham v. Greene, 248 Conn. 508, 729 A.2d 740 (1999), the Connecticut

Supreme Court upheld a civil rights judgment against the City of New Haven and several

New Haven police officers based upon conduct remarkably similar to that alleged in this

case. Like Golino and this case, Ham involved a police investigation into a shooting. In

its recitation of the facts, the Connecticut Supreme Court concluded that the jury could

have found that the Defendants in Ham deliberately omitted relevant exculpatory

information from an arrest warrant application, included obviously false information therein, failed to disclose contradictory statements from its principal witness and obtained an incriminating statement from one witness through threats and intimidation. See Ham v. Greene, 248 Conn. at 510-517. The full text of the recitation of the facts by the Connecticut Supreme Court is set forth in Exhibit G hereto. The police misconduct conduct in Ham occurred seven (7) years after Golino and eight (8) years before the Session matter. It involved different police officers and a new victim, Eric Ham, but the parallels again are striking.

The foregoing speaks volumes about the knowledge of the City of New Haven concerning the unlawful activities of its Police Department and its absolute disregard for the rights of its own inhabitants. In a fifteen (15) year period, at least three (3) separate innocent men were arrested and incarcerated for long periods of time on the basis of fraudulent and incomplete arrest warrant affidavits. The fact that these types of cases occur with regularity shows that despite having paid out large sums in damages, despite the harm done to innocent men, the City of New Haven has still failed to take any meaningful steps to stop the culture of deception, dishonesty and disregard for civil rights rampant within the ranks of the New Haven Police Department. The fact that these three cases, spread fifteen (15) years apart involved completely different police officers only strengthens the claim that New Haven was aware of and condoned the practice of falsely arresting murder suspects on the basis of false and misleading warrant applications and did nothing to stop the practice. Put another way, had the City of New Haven learned anything from Golino or Ham, or taken any meaningful actions to prevent a recurrence of

11

the outrageous behavior of the police in either case, Gary Session would not have spent nearly a year in prison before the case against him was dropped.

These are precisely the types of circumstances that fall precisely with both the third and fourth means by which municipal liability may be established as set forth in Moray v. City of Yonkers, supra. As noted, a municipality may be held liable where; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials, See Monell, 436 U.S. at 690-91; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. See City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

Either of those factors could apply here. Clearly, there has been a recurrence of virtually identical incidents *currently known* to the Plaintiff over a significant period of time. [2] Moreover, the City has offered no evidence in its Motion for Summary Judgment to support the conclusory allegations of Chief Ortiz that the Hew Haven Police department does not have a policy to violate individuals' civil rights nor does it condone civil rights violations.

In paragraph 7 of his Affidavit, Chief Ortiz stated: "The Department does not condone the deprivation of individual' civil and constitutional rights by its police officers. *Nor did the Department condone such conduct in, prior to, or after January 2001, the date of the arrest warrant and the arrest itself, alleged in the complaint.*"

---

[2] Please see the comments regarding the status of discovery and the Plaintiff's ability to respond to both summary judgment motions in Section IV, infra.

(Emphasis Supplied). In light of the foregoing, it is exceptionally difficult to accept that representation at face value.  It simply strains credulity to the breaking point to suggest that there is not a policy or practice of violating individuals' civil rights and that such practices are condoned, given the vast amount of serious misconduct occurring over a significant period of time together with a complete lack of evidence of any actions by the City or the Police Department to curb or prevent such abuses.

Based upon the foregoing, the Plaintiff respectfully submits that while the City has not met its burden of showing the absence of any genuine dispute as to the material facts of this case, he has, to the best of his *present ability* presented more than sufficient evidence showing that there is a genuine dispute over the material facts as they relate to municipal immunity and that the City's Motion for Summary Judgment should be denied.

**IV.    THE PLAINTIFF HAS NOT BEEN AFFORDED A SUFFICIENT OPPORTUNITY THROUGH DISCOVERY TO OPPOSE THE SUMMARY  JUDGMENT MOTIONS**

Rather than repeat all of the arguments set forth in Plaintiff's Motion for Enlargement of Time to Complete Discovery dated March 21, 2007 and the Memorandum of Law in support thereof, the Plaintiff incorporates the facts and arguments set forth therein in this Memorandum of Law. As a result of the Court's Ruling of May 19, 2007, the Plaintiff is in the awkward of position of having to attempt to prevail on the Motions for Summary Judgment *before* he may be afforded the opportunity to discover additional evidence that would easily defeat the Motion. This situation has only exacerbated an already difficult discovery history in this case.

It would appear that going as far back as February 15, 2002, evidence relating to the Anthony Lucky murder, including the original tape recorded statement of Mayra Mercado and numerous items of physical evidence, was ordered discarded. **See Exhibit F,** Affidavit of Karen Mayer, Esq. and attachments including property inventories and discard orders. This order occurred some three (3) months after a nolle prosequi was entered to the murder charge against Gary Session, and well within the time frame when the State could have restored the charges to the docket. It also occurred at a time when others were still accused of the murder of Anthony Lucky.

In his deposition on August 23, 2006, Sgt. Young of the New Haven Police Department was unable to state if the Mercado tape was still in existence and Plaintiff still does not know if it has survived. See Exhibit G, p. 10.The significance of the absence of the Mercado tape cannot be understated.

Exhibit C has established that Defendant Rodriguez has previously admitted under oath to having excluded information from a witness interview in the transcription he provided and from his police report and warrant application. The original "statement" of Mayra Mercado, dated November 1999 is quite obviously incomplete, with numerous responses left out of the transcription. The existence of the original Mercado interview tape could go a long way toward filling in those gaps and supporting the claims made by Mercado in her recent sworn statement that her original statement was coerced and inaccurate. If those allegations prove correct, it would be yet another example of an ongoing pattern of conduct, a part of the culture of the New Haven Police Department in

which witnesses are routinely threatened and browbeaten and false, incomplete and misleading statements are obtained and proffered as the truth against innocent people.

Finally, this Court should understand the context within which these summary judgment motions and discovery issues have occurred. The individual defendants filed their Motion for Summary Judgment in the summer of 2006, at a time when they had still failed to provide full compliance with discovery, despite prior orders of the court. The Plaintiff did not receive full compliance, including the personnel files and other information pertaining to the Defendants until December 2006. Yet, at the same time, the Defendants have been pushing aggressively for a ruling on the summary judgment motions while opposing Plaintiff's efforts to obtain the necessary discovery. There is something fundamentally wrong about this situation and it is certainly deserving of the Court's consideration in reviewing the various Summary Judgment motions, the responses thereto and the need for additional discovery to provide Plaintiff with the full opportunity to present his claims to the Court.

## **CONCLUSION**

The Defendant City of New Haven has failed to demonstrate that there is no genuine dispute as to any material fact entitling it to summary judgment. Nevertheless, the Plaintiff, to the best of his presently limited ability, has produced facts showing that the City of New Haven may be held liable for the various violations of his rights. The Motion for Summary Judgment should be denied.

THE PLAINTIFF
GARY SESSION


By_____
        /Roy S. Ward, Esq./
        3695 Post Road, Suite 203
        Southport, CT  06890
        Tel: (203) 255-9829
        Fax: (203) 255-9839
        Fed. Bar No. CT 11618


## **CERTIFICATION**

I hereby certify that on June 7, 2007 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


_____
/Roy S. Ward/