UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY SESSION : | |
|     Plaintiff : | |
| : | |
| V. : | CIV. NO. 3:03CV00943 (AWT) |
| : | |
| CITY OF NEW HAVEN; STEPHEN : | |
| COPPOLA; AND EDWIN RODRIGUEZ, : | |
|     Defendants : | JUNE 15, 2007 |

**REPLY MEMORANDUM OF THE CITY OF NEW HAVEN
IN SUPPORT OF THE CITY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56, Fed. R. Civ. Proc., and Rule 7 of the Local Rules of Civil Procedure, the defendant City of New Haven (the "City') submits this memorandum in reply to the plaintiffs' memorandum in opposition to the City's motion for the entry of summary judgment in its favor on Counts One, Two and Three of the Revised Complaint dated June 29, 2005. Although the plaintiff asserts that some vague, unspecified municipal custom or practice tantamount to a policy caused his civil rights to be violated, neither the allegations in the complaint nor any evidence in the record would support an inference that there was any such policy.

**I. JUDGMENT MUST ENTER FOR THE CITY ON COUNTS TWO AND THREE**

The plaintiff's memorandum is bereft of any discussion of, much less support for, the plaintiff's claims against the City under Connecticut law in Counts Two and Three. The plaintiff has thereby waived or abandoned those claims. Ansell v. D'Alesio, __ F.Supp.2d ___, 2007 WL 1229088 (D.Conn.) Therefore, judgment must enter for the City on the claims in those counts.

**II. JUDGMENT MUST ENTER FOR THE CITY ON COUNT ONE**

Count One sets forth the plaintiff's only federal claim against the City of New Haven. He alleges that New Haven, through Coppola and Rodriguez, "deprived the plaintiff of property without due process of law and otherwise deprived him of due process and equal protection of the laws." Revised Complaint, ¶21.

The plaintiff's opposition fails to meet his burden to identify any evidence to support his claims in Count One, and are insufficient to defeat the City's motion for summary judgment. The plaintiff misrepresents the holdings of the cases he cites, and distorts the limited evidence submitted with his memorandum. The plaintiff also fails to include the specific citations in support of his Local Rule 56(a)2 Statement, as required by Local Rule 56(a)3. The Court, therefore, is entitled to deem all of the facts in the City's Statement to be admitted and grant the City's motion. Local Rule 56(a)3.

**A. The Undisputed Evidence Established Probable Cause**

Rather than repeat the arguments on probable cause in the Reply Memorandum filed by defendants Rodriguez and Coppola, the City adopts and incorporates those arguments into this Reply Memorandum.

**B. Plaintiff Neither Alleges Nor Identifies Evidence of Any Municipal Policy**

*1. Plaintiff failed to identify evidence to support his claim*

The plaintiff's memorandum reflects a fundamental misunderstanding of his obligations when opposing summary judgment, which is to identify sufficient evidence to show a factual dispute that requires a trial. As the U.S. Supreme Court has said:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

> existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552 (1986).

The plaintiff has failed to make a showing on an essential element of his case, with respect to which he has the burden of proof: the existence of a municipal policy, or a custom or practice that amounts to a policy, that caused Session's civil rights to be violated as alleged in the complaint.

On page 3, and again on pages 12 to 13 of his memorandum, the plaintiff fails to identify (1) who the policymaker is; (2) what the alleged municipal policy or custom is; or (3) how the alleged policy was the cause of the alleged violation of Session's civil rights. In fact, the Morales case cited by the plaintiff (and attached as Exhibit B to his memorandum) compels judgment for the City. In Morales, the court held "two allegations of dissimilar police conduct separated by more than a year are not sufficient to state a §1983 claim against a municipality without some other facts from which a policy or custom of the Police Department can be inferred". Morales v. New York City Police Department, et all, 2000 U.S.Dist. Lexis 93 (S.D.N.Y. 2003) (Exhibit B to Plaintiff's Mem.). Here, the plaintiff alleges only one, not two, incidents of misconduct. While the complaint goes into detail describing allegations underlying the plaintiff's claims against Coppola and Rodriguez, those are the only alleged actions that the plaintiff attributes to the City.

3

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But . . . we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

Celotex Corp., 477 U.S. at 323-324, 106 S.Ct. at 2553 (footnote omitted).

> "In cases . . . where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Celotex Corp., 477 U.S. at 324, 106 S.Ct. at 2553.

The plaintiff claims, on pages 6 through 12, to have shown a pattern. However, the law requires more to support such claims. As the Supreme Court has held:

> Respondents stress that the District Court not only found an "unacceptably high" number of incidents but held, as did the Court of Appeals, that "when a pattern of frequent police violations of rights is shown, the law is clear that injunctive relief may be granted." 357 F.Supp., at 1318 (emphasis added). However, there was no showing that the behavior of the Philadelphia police was different in kind or degree from that which exists elsewhere; indeed, the District Court found "that the problems disclosed by the record . . . are fairly typical of (those) afflicting police departments in major urban areas." Ibid. Thus, invocation of the word "pattern" in a case where, unlike *Hague* and *Medrano*, the defendants are not causally linked to it, is but a distant echo of the findings in those cases. The focus in *Hague* and *Medrano* was not simply on the number of violations which occurred but on the common thread running through them: a "pervasive pattern of intimidation" flowing from a deliberate plan by the named defendants to crush the nascent labor organizations. *Medrano*, supra, 416

4

> U.S., at 812, 94 S.Ct., at 2198. The District Court's unadorned finding of a statistical pattern is quite dissimilar to the factual settings of these two cases.
>
> The theory of liability underlying the District Court's opinion, and urged upon us by respondents, is that even without a showing of direct responsibility for the actions of a small percentage of the police force, petitioners' failure to act in the face of a statistical pattern is indistinguishable from the active conduct enjoined in *Hague* and *Medrano*. Respondents posit a constitutional "duty" on the part of petitioners (and a corresponding "right" of the citizens of Philadelphia) to "eliminate" future police misconduct; a "default" of that affirmative duty being shown by the statistical pattern, the District Court is empowered to act in petitioners' stead and take whatever preventive measures are necessary, within its discretion, to secure the "right" at issue. Such reasoning, however, blurs accepted usages and meanings in the English language in a way which would be quite inconsistent with the words Congress chose in §1983. We have never subscribed to these amorphous propositions, and we decline to do so now.

Rizzo v. Goode, 423 U.S. 362, 375-376, 96 S.Ct. 598, 606 (1976).

> What *Rizzo* requires when a supervisor is held liable for failure to prevent continuation of a pattern of prior unconstitutional episodes is that the supervisor be "causally linked" to the pattern. 423 U.S. at 375, 96 S.Ct. 598. There are surely intimations in Rizzo that this causal link cannot be inferred from inaction alone. If such a case can be stated after Rizzo, it must present such extreme facts that inaction by a supervisor with knowledge of a pattern of unconstitutional actions by his subordinates is the equivalent of approval of the pattern as a policy of the supervisor and hence tacit encouragement that the pattern continue. Plainly that will not be an easy standard to meet.

Smith v. Ambrogio, 456 F.Supp. 1130, 1136 (D.Conn. 1978).

### 2. The City did not condone Rodriguez's single prior incident

On pages 7 and 8, the plaintiff falsely suggests that there were two incidents of misconduct by defendant Rodriguez. However, the testimony in each of the two transcripts refers to a single incident – an incident for which Rodriguez was disciplined. In that incident, which occurred in 1998, Rodriguez was recorded during a witness's

statement and photo array identification. On the tape, Rodriguez was recorded as saying the words "numero dos" prior to the witness orally in Spanish identifying photo number two or "numero dos".[1] Rodriguez was disciplined for that incident, completely discrediting the plaintiff's assertion that the City endorsed that conduct. Secondly, that single incident was remote in time from the plaintiff's arrest three years later.

### 3. The cases listed fail to establish any municipal policy or custom

The decisions to which the plaintiff refers on pages 6 through 12 do not support the plaintiff's claims in this case. In fact, *none* of the decisions referenced on page 6 found the existence of a municipal policy, practice or custom. The fact that some claims survived summary judgment falls far short of interpreting them as judgments of civil rights violations. In fact, several of those decisions explicitly rejected claims that there was a municipal policy or custom that would have affected the plaintiff's civil rights. In Smith v. New Haven, for example, the court expressly held:

> [T]he sworn affidavit of Chief of the Department of Police Service Wearing, unchallenged by Plaintiff, makes it clear that New Haven (the "City") does not have custom or policy of racial profiling. Nor does the City have a practice or policy of using excessive force, or condone same. The City does not have a policy or practice of having its officers arrest individuals, or have them prosecuted without probable cause. The City does not have a policy or practice of having its police officers detain individuals without reasonable suspicion that the individual has violated the law. Finally, the City does not have a policy or practice of having its officers violate the constitutional rights of its citizens, nor would it condone same.
> The Court believes that it would be an insurmountable barrier for Smith to produce admissible evidence on his claims against the City. Accordingly, he can produce no evidence on which he would bear the burden at trial. Accordingly, summary judgment is granted in favor the City on the municipality claims.

---

[1] Compare Pl. Ex. C pp. 15-17 (incident in 1998, discipline in 2001, p. 16 ("numero dos") with Pl. Ex. D, at cover sheet (dated 1/26/99), p. 2-3 (testimony concerned incident of approximately 1 year earlier), and p. 21, lines 22-23 ("numero dos").

6

Smith v. City of New Haven, 166 F.Supp.2d 636, 644 (D.Conn. 2001). Of note, the court had also already found that the defendants had probable cause to arrest the plaintiff and entered summary judgment for the individual defendants. Id.

Similarly, in Hamilton v. City of New Haven, 213 F.Supp. 2d 125 (D.Conn. 2002), also cited on page 6, the court similarly rejected the plaintiff's claim of a municipal policy or custom and entered summary judgment for the City on those claims. "Hamilton's pleadings do not set forth a basis for municipal liability, nor does she proffer any evidence at this stage to create an issue of fact that a municipal policy or custom led to the alleged violation of her constitutional rights." 213 F.Supp.2d at 132. Further, the claim at issue in Hamilton was the officers' entry without knocking first, and their use of force. Id. Neither of those practices – even if widespread enough to be a custom or policy – are relevant to any alleged misconduct of which the plaintiff Session complains.

Nor does Pappas v. City of New Haven support a finding of any custom that could have caused a violation of Session's civil rights. The issue there concerned a narrow issue: training officers to address situations where they believed probable cause existed but a judge had denied an arrest warrant.  See 175 F. Supp. 2df 288 (D.Conn. 2001).  Furthermore, that was a denial of a summary judgment motion – not a finding.

On page 7, the plaintiff misrepresents the Second Circuit's decision in Cusick. That decision affirmed the granting of a motion to dismiss – there were no factual findings.  Therefore, that case provides no substantive support for the claims in this case.  Cusick v. City of New Haven, 145 Fed.Appx. 701 (2d Cir. 2005). Further, the

allegation there was that *incriminating* evidence was withheld – not, as is claimed by Sessions here, the withholding of *exculpatory* evidence.

On page 9, the plaintiff falsely describes the holding of the Second Circuit's decision in Golino v. City of New Haven, 950 F.2d 824 (2d Cir. 2001), cert. denied Lillis v. Golino, 505 U.S. 1221, 112 S.Ct. 3032 (1992). The Second Circuit did *not* affirm a judgment against the City. In fact, the Second Circuit had no occasion to do so because while summary judgment had, in fact, entered *in the City's favor*, Golino's attorneys in that case did not appeal that decision. See Golino v. City of New Haven, 761 F.Supp. 962, 973 (D.Conn. 1991) (summary judgment for the City of New Haven). In fact, the Second Circuit did not affirm any finding as to liability – that interlocutory appeal affirmed the denial of summary judgment on the individual defendants' qualified immunity claims, and the case was remanded for trial. Golino, 950 F.2d at 829. At trial, the jury returned its verdict, and judgment entered, in favor of the individual defendants. See Golino v. City of New Haven, et al.., D.Conn. No. 3:88-cv-00002-JAC, Docket Sheet Entry No. 271 - Jury Verdict for defendants; and Entry No. 272 - Judgment for all defendants (July 20, 1993).

On pages 10 and 11, the plaintiff falsely claims that judgment entered against the City in Ham v. Greene, 248 Conn. 508, 729 A.2d 740 (1999). The City was not a defendant in that case, so judgment could not have entered against the City. The defendants in the case were New Haven detectives, but there was no claim of a municipal policy or custom. 248 Conn. 508, 509 (1999). Further, the events at issue in that case are very remote in time from the plaintiff's arrest in 2001.

8

Contrary to the assertion on pages 11 and 12 of plaintiff's memorandum, the plaintiff has not established three incidents over a fifteen-year period, or any evidence of a pattern. The plaintiff's claim is even weaker than the claims rejected in <u>Moray v. City of Yonkers</u>, 924 F.Supp. 8 (S.D.N.Y. 1996), described as follows:

> First, Moray has not alleged a formal policy which is officially endorsed by the municipality. Rather, Moray relies on the alleged civil rights violations by the individual co-defendants Smith, Whitton, Lombardi, Bonito, and Cava as evidence that the actions of policy-making officials triggered municipal liability. This argument, however, is erroneous. *Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723-24, 105 L.Ed.2d 598 (1989), held that whether an official has policy-making authority is determined by state and local law. Under the City of Yonkers Charter, only the mayor and the city council are endowed with general policy-making authority. *See* Yonkers City Charter §§ C3-2 and C4-1. Consequently, at the time of the alleged civil rights violations, the individual co-defendants did not qualify as policy-making officials. Thus, allegations of their misconduct does not suggest an officially endorsed policy which would implicate the City of Yonkers.
> Next, Moray's amended complaint does not allege that the co-defendants' misconduct was either widespread or persistent. Nor is there any allegation that policy-making officials had constructive knowledge of any "practice" of misconduct.
> Finally, Moray's amended complaint does not allege any failure by official policy-makers to properly train or supervise the co-defendants. Here, again, without such an allegation, the city is not implicated.
> Consequently, because the amended complaint fails to allege the first prong of the municipal liability test, the defendants' motion to dismiss the §1983 claim against the City of Yonkers for failure to state a claim is granted.

<u>Moray</u>, 924 F.Supp. at 12-13.

### *4. Plaintiff had ample time to conduct discovery*

On pages 13 through 15, plaintiff complains that he did not have sufficient time to conduct discovery. However, that is false. This case was filed in 2003. In the Joint Report of Parties' Planning Meeting filed by the plaintiff's counsel in June 2005, the plaintiff's statement of the case summarized his claims, which described his allegations

9

about his arrest – and made no mention of any municipal policy or custom. Discovery in this case was to have been completed by March 31, 2006. After discovery ended, the City moved for summary judgment – a motion that the court denied without prejudice so that the plaintiff could conduct additional discovery. See Docket Text of Electronic Order No. 87. However, none of the plaintiff's discovery requests related to any alleged municipal policy, custom or practice.    Therefore, the plaintiff's request for even more time to conduct discovery that he previously chose not to conduct must be rejected.

### III. CONCLUSION

The plaintiff has failed to produce evidence sufficient to establish any disputed material fact demonstrating the existence of a municipal policy, custom or practice that caused the plaintiff to be deprived of property, denied due process, or denied equal protection.  The City of New Haven is entitled to judgment as a matter of law, and the Court should grant New Haven's motion for summary judgment.

                                    THE DEFENDANT,
                                    THE CITY OF NEW HAVEN


                                BY:/s/:Thomas W. Ude, Jr.
                                    Thomas W. Ude, Jr.
                                    Corporation Counsel
                                    City of New Haven
                                    165 Church Street, 4th Floor
                                    New Haven, CT  06510
                                    Federal Bar No. ct06567
                                    Phone: (203) 946-7958
                                    Fax: (203) 946-7942
                                    E-mail: tude@newhavenct.net

**C E R T I F I C A T I O N**

I hereby certify that on June 15, 2007, a copy of foregoing Reply Memorandum of the City of New Haven in support of its Renewed Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this through the court's CM/ECF System.

Karen Mayer, Esq.
Philip Russell, P.C.
66 Field Point Road
P.O. Box 1437
Greenwich, CT  06836

Roy S. Ward, Esq.
3695 Post Road, Suite 203
Southport, CT  06890

Meghan Gallagher, Esq.
Susman, Duffy & Segaloff, P.C.
P.O. Box 1684
New Haven, CT 06507-1684

/s/:  Thomas W. Ude, Jr.
Thomas W. Ude, Jr.

J:\CYCOM32\WPDOCS\D014\P004\00026482.DOC