UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

| | |
|---|---|
| GARY SESSION, | CIVIL ACTION NO. |
| Plaintiff | 3:03-cv- 00943  (AWT) |
| V. | |
| EDWIN RODRIGUEZ, ET AL. | JANUARY 21, 2008 |
| Defendants | |

**MEMORANDUM OF LAW IN SUPPORT OF
OBJECTION TO MOTION FOR PROTECTIVE ORDER
AND CROSS MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

Pursuant to Local Rule of Civil Procedure 7, the plaintiff respectfully submits the following Memorandum of Law in support of his objection to the defendant's Motion for Protective Order dated January 9, 2008 and his cross motion to compel production of the disputed documents. The defendant has failed to comply with the rules governing claims of privilege, has waived any claim of privilege with respect to the disputed documents and the documents are relevant and essential to plaintiff's claim.

**FACTUAL BACKGROUND**

This is an action for damages brought pursuant to 42 U.S.C. §1983. The plaintiff alleges that his civil rights were violated in that he was falsely arrested by the defendant Edwin Rodriguez, a former detective in New Haven Police Department hereinafter "NHPD"). Plaintiff claims that Rodriguez submitted a false, misleading and incomplete arrest warrant affidavit in connection with an application for a warrant for his arrest on charges of murder, conspiracy to commit murder, criminal use of a firearm and carrying

a pistol without a permit.[1] Plaintiff was arrested on January 5, 2001 and remained continuously incarcerated until November 15, 2001 when the state entered a nolle prosequi to all charges against him.

### Discovery History Re: Internal Affairs Files

Plaintiff has long sought information about Rodriguez's disciplinary history with the NHPD. Plaintiff previously served a subpoena upon the Department demanding the defendant's Internal Affairs ("IA") file. The City moved to quash the subpoena. On October 20, 2006, the City produced portions of the defendant's IA file. At this juncture, Plaintiff is only aware of one disciplinary incident involving the defendant. Under Personnel Memorandum 01-03 and 01-09 Rodriguez was issued a formal reprimand. Rodriguez then sued New Haven alleging the reprimand was improper. On December 30, 2004, the reprimand was rescinded. The defendant now claims the rescission was part of the resolution of the suit and that the agreement was covered by a non-disclosure provision. Plaintiff has no idea what additional documents are contained in the defendant's IA file due to his failure to provide a privilege log or a memorandum of law as required by the Rules.

### LAW AND ARGUMENT

    1.    **Protective Orders and Motions to Compel**

Fed. R. Civ. P. 26(b)(5) states that a party seeking to withhold materials sought in discovery may privilege as grounds therefore. <u>See</u> also Local Rule of Civil Procedure 37. Fed. R. Civ. P. 26(c) authorizes a party from whom discovery is sought to seek a protective order. Fed. R. Civ. P. Rule 37 permits a party seeking documents in discovery

---

[1] The complaint initially named Rodriguez, Stephen Coppola, another New Haven Police Department detective and the City of New Haven as defendants. Summary judgment was granted in favor of Coppola and the City of New Haven in August 2007.

2

to move to compel their production as does Local Rule 37. The party moving to compel production must submit a memorandum in support of the Motion to Compel. Local Rule 37(a)(3). The applicable rules also require the party seeking to withhold discovery to certify that good faith efforts have been made to resolve the dispute before seeking court intervention. Fed. R. Civ. P. 26(c); Local Rule of Civil Procedure 37(a)(2). [2]

The procedural rules and the case law on privilege claims are crystal clear. Pursuant to Fed. R. Civ. P. Rule 26(b)(5)(A), Information Withheld:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications or things not produced in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Local Rule 37(a)(1) governing discovery disputes states:

> In accordance with F.R. Civ. P. 26(b), when a claim or privilege or work product protection is asserted in response to a discovery request for documents, the party asserting the privilege shall provide the following information in the form of a privilege log: (1) The type of document; (2)The general subject matter of the document; (3) the date of the document; (the author of the document; and (5) Each recipient of the document. Local Rule 37(2)(3) requires each party to a discovery dispute to file a memorandum in accordance with Local Rule 7(a)(1) before the dispute is heard by the Court.

The defendant has failed to comply with either of these rules.

The Motion for Protective Order does not specify the types of documents, the general subject matter, the dates, the authors or the names of each recipient. [3] Rather, for the most part, the Motion contains sweeping generalities alleging that the defendant will

---

[2] Defense counsel has submitted an affidavit certifying good faith efforts to resolve this matter. Plaintiff disputes that and has submitted an Affidavit of Counsel with this Memorandum respecting the history of the disagreement.

[3] The defendant has cited one specific privilege claiming that pursuant to Conn. Gen. Stat. §31-128f, the contents of the settlement agreement with the City are protected from disclosure.

3

be irreparably harmed if the unnamed documents are disclosed and that they are irrelevant to the case.

The applicable rules and their purposes were summarized by Magistrate Martinez last year in Horace Mann Insurance Co. v. Nationwide Mutual Insurance Co., 240 F.R.D. 44, 46-47 (D. Conn. 2007).

> the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." Horace Mann, supra at 46-47 quoting Von Bulow v. Von Bulow, 811 F.2d 136, 144 (2d Cir. 1987)(additional citations omitted).
>
> That burden cannot be met by mere conclusory or ipse dixit assertions in unsworn motion papers authored by attorneys." Id. At 47 citing One Beacon Ins. Co. v. Forman Int'l. Ltd., No. 04 Civ. 2271 (RWS), 2006 U.S. Dist. LEXIS 90970 (additional citation omitted). An essential step in meeting the burden of establishing the existence of a privilege or an immunity from discovery is the production of an adequately detailed **privilege log** "sufficient to enable the demanding party to contest the claim." Horace Mann, supra at 47 citing Fed. R. Civ. P. 45(d)(2)(A); In Re Application for Subpoena to Michael I. Kroll, 224 F.E.D. 326, 328 (E.D.N.Y.Oct.27,2004).
>
> The purpose of preparing the **privilege log** is to assist the court and the parties in performing the careful analysis that a privilege or immunities evaluation demands. An invocation of a claim of privilege without producing an accompanying **privilege log** can be an unfair discovery tactic that increases delay in the resolution of lawsuits, fosters excessive motion practice, increases the costs of litigation, and greatly increases the work of the court. In addition, the very act of preparing a **privilege log** has a salutary effect on the discovery process by requiring the attorney claiming a privilege to actually think about the merits of assertion before it is made, and to decide whether such a claim is truly appropriate. Moreover, the requirement of a **privilege log** is intended to underscore the gravity, if not the solemnity, of an assertion that otherwise presumptively discoverable documents are exempt from discovery. The requirement that detail be provided operates to discourage pro forma, half-baked, dilatory, and even jocular assertions of privilege.

The failure of a party seeking to withhold discovery of documents to comply with the privilege log requirements is clear. As Magistrate Martinez noted in Horace Mann:


> There is a considerable body of law on what **privilege logs** should contain. The privilege log should: identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. *Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.*(emphasis supplied)

Horace Mann, supra, at 47 citing United States v. Constr. Prod. Research, 73 F. 3d 464, 473 (2d Cir. 1996) (additional citations omitted).

In addition to the obvious defects in the defendant's Motion, there is also a timing problem. The Second Circuit has held that a party objecting to a subpoena for production and inspection must set forth all of its grounds for objection, including privilege grounds, within fourteen days of service of the subpoena. D.G. Creditor Corp. v. Dabah, 151 F.3d 75, 81 (2d Cir. 1998), Fed. R. Civ. P. 45(c)(2)(B) (person commanded to produce and permit inspection may object to subpoena within 14 days). If a party is claiming privilege, a full **privilege log** must be supplied along with the objection within a reasonable time thereafter. Id. A party failing to produce a **privilege log** fails to perfect its claim of privilege and, therefore, may not rely upon it to forestall discovery. Ruran v. Beth El Temple of West Hartford, Inc., 226 F.R.D. 165-168-69 (D. Conn. 2005).

While the documents subject to the Protective Order were not sought by subpoena, they were previously sought in discovery from the defendants long before the granting of summary judgment. Counsel for the defendant Rodriguez undertook to take possession of the documents for a review on December 20, 2007. The Motion for Protective Order was not filed until January 9, 2008, nineteen (19) days later. Under the applicable rules, the defendant's Motion for Protective Order is arguably untimely.

5

Since the defendant has failed to provide either a memorandum or a privilege log as required by the rules, and the Motion is untimely, it should be denied and the defendant should be ordered to produce the entire subject file. However, even if the Court is inclined to consider the substance of the defendant's claims, the Motion should still be denied because the defendant has failed to establish that any of the alleged grounds for non-disclosure have merit.

The defendant's lone claim of statutory privilege is C.G.S. §31-128f, an employment law requiring the consent of an employee before the release of employment records. This claim is without merit. First, as noted below, while state law may be relevant to a claim of privilege in federal court, federal law is ultimately controlling. Second, a municipal corporation (such as the City of New Haven) is not an employer within the meaning of the statute and a police department may not properly assert the statute as grounds for non-disclosure. See Hartford v. Freedom of Information Com., 201 Conn. 421, 429, 518 A.2d 49 (1986). [4] Internal affairs records have been interpreted to be separate from employment records and their disclosure is governed by the Freedom of Information Act, C.G.S. §1-9; Hartford v. Freedom of Information Com., supra, 201 Conn. at 431.  Disclosure of internal affairs records is normally required under the Freedom of Information Act unless the party opposing disclosure can establish an invasion of personal privacy resulting from their disclosure. Id. at 433.  Finally, C.G.S. §31-128f(2) specifically provides that the records must be disclosed upon court order. Based upon the foregoing, the claim of statutory privilege is unavailing.

In paragraph 12 of his Motion, the defendant alleges three separate grounds supporting his argument that non-disclosure is warranted. Each claim is unsubstantiated

---

[4] It should be noted that the City of New Haven has not sought to intervene in this matter.

6

and unsupported by the facts of this case and the applicable law. However, before addressing each separate claim, some general principles regarding discovery must be set forth. Questions of privilege in federal civil rights cases are governed by federal law. See Fed. R. Evid. 501, Von Bulow v. Von Bulow, 811 F.2d 136, 141 (2d Cir. 1987). "Federal law disfavors privileges barring disclosure of relevant evidence and limits even those rooted in the federal constitution". Herbert v. Lando, 441 U.S. 153, 175, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979). Personnel files, including disciplinary records of police officers are discoverable in civil rights cases. King v. Conde, 121 F.R.D. 180 (S.D.N.Y. 1988) Bearing these principles in mind, it is clear that the grounds asserted for non-disclosure are without merit.

      The defendant first alleges that the plaintiff's request is overly broad and will not lead to the discovery of admissible evidence. This claim is contradicted by both the limited nature of the request and the prior history of this issue. First, the plaintiff's request is limited in both time and scope. Plaintiff seeks only a specific item, the defendant's internal affairs records, from the commencement of his employment with the NHPD until January 5, 2001, the date the defendant submitted the arrest warrant affidavit for the plaintiff. Second, the defendant is obviously referring to a limited number or class of documents contained within the internal affairs file. The defendant has already produced some documents relating to his disciplinary history. Because the defendant has failed to provide a privilege log or memorandum, the plaintiff cannot know if the disputed documents will lead to the discovery of admissible evidence. However, based upon the defendant's determination to keep portions of the file secret, it might be inferred

they contain relevant information. Finally, since the number and type of documents are clearly limited, the defendant's claim of over breadth is severely undermined.

The defendant next alleges that disclosure of the documents would cause him "substantial harm" in that it would violate the terms of his prior settlement agreement with the City of New Haven. It is difficult to see the relevance or utility of this claim given the prior history of disclosure of the related documents and the defendant's failure to support this claim with any specific facts.

Plaintiff again is hobbled in his efforts to respond hereto by the defendant's failure to comply with the applicable rules. Absent a listing and description of the disputed documents, plaintiff cannot effectively contest the allegation of "substantial harm". However, to the extent that the documents relate to the one known instance of discipline, non-disclosure seems pointless given the defendant's prior disclosure of the reprimand and the rescission thereof.

In addition, the defendant has failed to specify how he will be harmed by the piercing of the confidentiality agreement. It is unknown if the defendant may be subject to some monetary penalty or other sanction. However, any possible sanction relating to his employment as New Haven police officer is no longer applicable since the defendant is no longer a New Haven police officer.

Finally, the defendant alleges that the information being withheld is irrelevant to the plaintiff's claims. Again, the paucity of information from the defendant prevents plaintiff from meaningfully replying to this assertion. However, claims of irrelevance of a disciplinary history pre-dating the allegations of wrongdoing are patently meritless. "[r]elevant information need not be admissible at the trial if the discovery appears

8

reasonably calculated to lead to the discovery of admissible evidence." *Id.* The term "relevant" should be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. "<u>Maresco v. Evens Chemetics, Div. Of W.R. Grace & Co.</u>, 964 F.2d 106, 114 (2d Cir. 1992) quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 98 S. Ct. 2380, 57 L.Ed 2d 253 (1978). The relevance of a pre-existing disciplinary history is relevant to the defendant's knowledge and state of mind at the time of the alleged civil rights violations, which the defendant has put at issue by claiming qualified immunity.

The defendant bears the burden of proving his entitlement to qualified immunity. In order to prevail, he must establish either that the right claimed to have been violated was not clearly established at the time of the alleged violation, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) or that it was objectively reasonable for him to *believe* that his actions were not unlawful at the time of the challenged act. <u>Anderson v. Creighton</u>, 483 U.S. 635, 638, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1986). Since the right to be free from false arrest based upon a warrant was clearly established on January 5, 2001, <u>Soares v. State of Connecticut</u>, 8 F.3d 917, 920 (2d Cir. 1993), the defendant must show that it was objectively reasonable for him to believe that his actions did not violate the law or established rules. To the extent the defendant had a disciplinary history pre-dating January 5, 2001, that information would be relevant to his knowledge and state of mind respecting his duties and obligations to follow the applicable rules and laws.

As will be shown, *infra*, the plaintiff can establish that the defendant violated at least one General Order of the New Haven Police Department in connection with his use

9

of confidential informants in preparation of the arrest warrant affidavit. To the extent there is evidence of other, prior violations, it would tend to be relevant to the defendant's knowledge and the reasonableness of his actions in this case.

### Request for *In Camera* Inspection

For the same reasons plaintiff cannot effectively reply to the Motion for Protective Order, plaintiff cannot meaningfully evaluate or reply to the request for *in camera* inspection of the disputed documents. Lacking any information about most of the documents being withheld, the plaintiff cannot determine if *in camera* review is even appropriate. In plaintiff's view, *in camera* inspection is undesirable because the person reviewing the documents will not know all of the relevant or important details of the particular case, the discovery history or the plaintiff's trial strategy. Under these circumstances, the person reviewing the documents may erroneously conclude that certain documents are irrelevant or unimportant to the case. A far more preferable approach, if even necessary, would be to require the parties to execute a non-disclosure agreement respecting the disputed documents.

The above stated concerns are greatly magnified by the discovery history herein. Within the past five weeks, plaintiff has uncovered documents and information that compel the conclusion that all of the defendants in this case, at various times, have willfully withheld relevant material subject to disclosure. Under these circumstances, plaintiff can simply no longer trust any representations made by the defendants respecting discovery.

In his first deposition in August 2007, Roger Young, the Keeper of the Records for the NHPD testified that there were rejected arrest warrant applications for the plaintiff

from the underlying criminal case in the Records Department. However, he refused to produce them citing the Connecticut Criminal Records Erasure statute, C.G.S. §54-142a despite the fact that the statute specifically permits the subject of the record to obtain copies of them. At the continuation of his deposition on December 2007, Young was given an authorization signed by plaintiff directing him to provide the undersigned with copies of all arrest warrant applications for him. Young again refused to do so, arguing that the authorization did not direct the records be provided directly to plaintiff. After a spirited off-the-record discussion, Young produced a single arrest warrant application, the one signed by the Court.

That same day, Lt. Denise Blanchard, the property Clerk of the NHPD was deposed. She produced a series of original Connecticut Judicial Department property inventory forms indicating that significant amounts of physical evidence in the prosecution of the plaintiff and his co-defendants had been ordered destroyed in February, 2002. The destruction orders were entered only three months after a nolle prosequi had been entered to the charges against Mr. Session [5] and nearly six months before the trial of the co-defendants. Among the items ordered destroyed were ballistics evidence including spent shell casings and bullets and the tape recording of the statement of Mayra Mercado of November 8, 1999. The original form pertaining to the destruction of Mercado tape was not signed by the Court. Lt. Blanchard testified that the tape had been destroyed.

Several weeks ago, the undersigned spoke with a former New Haven police officer who stated that the NHPD never destroys evidence. As an example, the officer

---

[5] A *nolle prosequi* simply means that the state declines to further prosecute a matter at that time. Pursuant to C.G.S. §54-142a, a *nolle* remains open for 13 months, during which time the state may seek to reopen the case.

told the undersigned about a recent news segment that aired on a local news program. In the segment, a New Haven police officer was seen standing by a table covered with guns that had purportedly been obtained through a buy back program. The former officer recognized that a number of the guns had previously been seized by the New Haven police and been ordered destroyed. When the former officer asked the officer appearing in the segment what was going on, he replied "I was told to fill a table with guns so that is what I did."

Former Assistant State's Attorney Christopher Alexy, Esq. prosecuted Mr. Session in the underlying murder case. At this deposition on December 19, 2007, he described Mayra Mercado as the lynchpin of his case against Mr. Session. The information allegedly provided by Mercado, in Attorney Alexy's opinion was essential to prove the charges against Mr. Session. However, in an affidavit submitted in connection with the plaintiff's objection to the individual defendants' Motion for Summary Judgment, Ms. Mercado recanted her November 8, 1999 statement, stating that it had been obtained through threats and coercion. The court found her affidavit established the existence of a genuine factual dispute precluding the granting of summary judgment in favor of the defendant Rodriguez. Now, the New Haven police claim the tape is gone.

In a sworn police report dated December 5, 1999 and the arrest warrant affidavit for Mr. Session dated January 5, 2001, the defendant Rodriguez stated that Mercado was a registered informant for the NHPD. On January 9, 2008, both Sgt. Canning and Capt. Redding of the New Haven P.D. testified under oath that Mercado was never a registered informant. General Order 76-3 of the NHPD requires that all persons providing information on which an arrest is based to be registered as an informant. Despite the

critical nature of her information, Mercado was never registered as an informant. Neither was Sharon Adkins, whose alleged statement appeared in the arrest warrant affidavit and provided the link between the plan allegedly described by Mercado and the statement of an alleged witness to the shooting, Larkland Martin.

During Capt. Redding's deposition on January 9, 2008, plaintiff learned for the first time that Larkland Martin was a registered informant. This information was never disclosed in any police report or the arrest warrant affidavit. Instead, the defendant Rodriguez stated under oath that during the course of an investigation into an unrelated homicide in December 1999, he was approached by a person (Martin) claiming to have information about the shooting for which the plaintiff was prosecuted.

Captain Redding further testified to procedures that had to be followed in order for an informant to become registered. He stated that once an informant is registered, a separate file is created about the informant, including the date of their registration and that the files are never destroyed. However, Captain Redding was unable to produce Martin's informant file. He stated that all of the informant files had been transferred from the detective bureau to the IA division as part of an audit into "irregularities" involving payments to registered informants. The informant files went back to the early 1980's. *The only informant file that allegedly could not be located was the Larkland Martin file.* Redding testified that more limited records on registered informants were maintained on an Excel database to which only he had access. He agreed to provide a printout on Martin on January 9. As of this writing, the document has not been produced. [6]

---

[6] On January 18, 2008, the undersigned learned that shortly after January 8, Redding was transferred from ISU to the Patrol division, eliminating his access to the informant database. Redding never informed the undersigned of the transfer.

13

At his deposition of January 2, 2008, Attorney Alexy produced a number of pages of handwritten notes pertaining to the underlying homicide investigation that originated with the NHPD. They were obviously written by a least one New Haven police officer as one entry refers to a person attending the autopsy of the shooting victim. A police report prepared by an officer lists 3 police officers being present at the autopsy and no other persons. *Those handwritten notes were the first such notes ever provided to the plaintiff despite the fact that he has been seeking them for over three years.* At the same deposition, Michael O'Hare, Esq., Attorney Alexy's lawyer and the head of the Habeas Unit of the Chief State's Attorney's Office (where Mr. Alexy is currently employed) stated that he was told by Michael Dearington, the State's Attorney in New Haven that the entire investigative file had been returned to the NHPD.

During their depositions on January 9, 2008, both Sgt. Canning ( a supervisor in the detective bureau from 1999-2001) and Capt. Redding, who ran internal affairs for seven years and until recently ran the Investigative Services Unit (including the detective bureau) testified that detectives investigating crimes routinely kept separate notebooks on each crime being investigated. According to Canning and Redding, the notes and/or notebooks were supposed to be placed in the investigative case file and that those notes would be part of the "package" sent to the State's Attorney's office along with an homicide arrest warrant application. The entire investigative case file on the underlying homicide, produced by Captain Redding on January 9, 2008 did not contain a single handwritten note.

On the basis of the foregoing, the plaintiff can no longer trust any representation made by the defendants respecting discovery. The undersigned **is not** accusing defense

14

counsel of any improprieties. Rather, it would appear that the past and present defendants and non-party members of the NHPD have acted to withhold and/or destroy relevant evidence despite repeated demands for its production. This court should bear these facts in mind when considering the present Motion, particularly the request for *in camera review*.

However, at this juncture, the foregoing is mere speculation because the defendant has failed to comply with the relevant rules. The position plaintiff now occupies, having to guess at what is actually claimed and being prevented by the defendant from knowing how to respond is precisely what the rules seek to avoid.

**CONCLUSION**

The defendant has failed to comply with the procedures regarding Motions for Protective Orders justifying the denial of the Motion. In the event the Court elects to rule upon the substantive claims therein, the Court should decline the invitation to conduct an *in camera* review and should deny the Motion as unsupported by the facts of this case and the applicable law.

                          THE PLAINTIFF
                          GARY SESSION

By:   /Roy S. Ward/
       Roy S. Ward, Esq.
       3695 Post Road, Suite 203
       Southport, CT  06890
       Tel: (203) 255-9829
       Fax: (203) 255-9839
       Email: attyrward@yahoo.com
       Fed. Bar. No. ct11618

## CERTIFICATION

      I hereby certify that on January 21, 2008 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /Roy S. Ward/
      Roy S. Ward