

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

**H**
Hoatson v. New York Archdiocese
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Fr. Robert HOATSON, Plaintiff,
v.
NEW YORK ARCHDIOCESE, et al., Defendant.
No. 05 Civ. 10467(PAC).

Dec. 1, 2006.

*MEMORANDUM OPINION AND ORDER*

CROTTY, J.

*1 Plaintiff Robert Hoatson ("Plaintiff" or "Father Hoatson") instituted this action on December 13, 2005 against Defendants the Archdiocese of New York, Cardinal Edward Egan and other entities and individuals associated with the Roman Catholic Church ("Defendants"), asserting various federal and state claims, including federal RICO charges. Plaintiff alleges that for years he witnessed and experienced sexual abuse at the hands of the clergy, and that he was suspended from his position as a priest of the Archdiocese of Newark because he publicly exposed the abuse and the cover ups.

Almost nine months later, on September 7, 2006, Plaintiff filed a recusal motion, pursuant to 28 U.S.C. §§ 144 and 455. Plaintiff contends that the Court and his family have strong ties to the Catholic Church, and these ties create an appearance of impropriety and likelihood that the Court will be biased in favor of Defendants in this action. Among Plaintiff's allegations are:

1) "It appears that Mrs. Jane Crotty [the Court's wife] is on the same side as the New York Archdiocese in the St. Brigid's litigation case, but even if she is adversarial or not directly supportive of the New York Archdiocese and Cardinal Egan, the past and present relationships have or may appear to have an appearance of impropriety."(Hoatson Aff. 3, Sept. 8, 2006.)

2) Robert Crotty, the Court's brother, is President of the Guild of Catholic Lawyers of the Archdiocese of New York, which is "closely aligned with and affiliated with named defendants in this case."(Hoatson Aff. 5, Sept. 8, 2006.)

3) "Robert Crotty's law firm is representing the Archdiocese of New York in the St. Brigid's and/or such other cases."(Hoatson Aff. 6, Sept. 8, 2006.)

4) The Court is a member of the Guild of Catholic Lawyers. (Hoatson Aff. 6, Sept. 8, 2006.)

5) The Court is "at least an acquaintance of Msgr. Placa through his close relationship with former Mayor Giuliani."(Hoatson Aff. 8, Sept. 8, 2006.)

6) "My belief that the Court knows or has a relationship with Cardinal Egan and other Church officials that has not been disclosed ."(Hoatson Aff. 9, Sept. 8, 2006.)

Oral argument was heard on November 9, 2006. For the reasons set forth below, the Court denies Plaintiff's motion for recusal.

Recusal motions are committed to the discretion of the judge who is being asked to recuse himself. *SeeApple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir.1987). In making the recusal determination, the judge must carefully weigh the "policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case."*In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1312 (2d Cir.1988). Although litigants are entitled to an unbiased judge, they are not entitled to a judge of their choosing. *Seeid.* at 1312.Accordingly, a judge is as much obliged not to recuse himself when it is not called for as he is obliged to recuse when it is called for. *Seeid.*The two principal recusal statutes are 28 U.S.C. § 144 and 28 U.S.C.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00943-AWT    Document 192-3    Filed 07/15/2008    Page 2 of 9

Not Reported in F.Supp.2d                                                                                              Page 2
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

§ 455-each will be taken in turn, including the applicable subsections.

### SECTIONS 144 & 455(b)(1) BASES FOR RECUSAL

*2 28 U.S.C. § 144 provides for recusal where the "judge before whom the matter is pending has a personal bias or prejudice either against [a party] or in favor of any adverse party."The motion is to be based on an affidavit which "shall state the facts and the reasons for the belief that bias or prejudice exists."

28 U.S.C. § 455(b)(1) provides for recusal where the Court "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."Plaintiff conceded at oral argument that the Court has no personal knowledge of disputed evidentiary facts. (Tr. 14, ll 11-18.) Further, Plaintiff clarified that the recusal motion is not based on bias against Plaintiff, but rather on bias in favor of the Archdiocese of New York and Cardinal Egan-not any of the other defendants. (Tr. 8, ll 24-9, ll 21.)

The affidavits in support of the motions pursuant to §§ 144 and 455(b)(1) require a factual demonstration of bias, not simply the appearance of impropriety. *See United States v. El-Gabrowny,* 844 F.Supp. 955, 959 (S.D.N.Y.1994). Moreover, rulings made during the course of a case generally are not regarded as evidence of bias, even if they appear to disproportionately favor one side. *See In re Drexel,* 861 F.2d at 1314. In all but the "rarest circumstances," recusal will involve bias from extrajudicial sources. *See Liteky v. United States.,* 510 U.S. 540, 555 (1994).

Counsel's affidavit in support of the motion for recusal pursuant to 28 U.S.C. §§ 144 and 455(b)(1) does not contain any facts. It cites no times, places or circumstances in support of the claim of personal bias and prejudice. Instead, Counsel asserts he is "hesitant to set out a detailed and specific outline of what he believes" are "the specific reasons and/or cause for recusal."(Aretakis Aff. ¶ 2.) But he does aver that he learned "through confidential and reliable sources," (without any specification for either source or basis for claimed reliability) that somehow the Defendants were emboldened to move to dismiss and for sanctions because Defendants "felt or may have been secure in" having a judge who is a practicing Catholic preside over their motion to dismiss for sanctions. (Aretakis Aff. ¶ 3.)

Based on this surmise and speculation that Defendants' motives in making their motions to dismiss and for sanctions means the Court is somehow biased in their favor, he claims that the motion for recusal raises a "direct and personal concern" that "the appearance [of bias] alone has the effect of chilling my advocacy and denying my client a fair hearing and trial."(Aretakis Aff. ¶¶ 4, 5.) Counsel's apprehensions, however, are not facts and cannot serve as the basis for recusal under §§ 144 and 455(b)(1). If it were otherwise, Counsel's apprehensions would not only be self-authenticating, but self-enforcing, and parties would be encouraged to forum shop for the judge of their choice.

*3 Counsel asserts two additional arguments in further support of his claim for personal bias, each of which is fallacious. First, the Court had an obligation to make disclosures to Plaintiff and his Counsel, when Counsel obliquely asked at a conference in March 2006 whether the Court had anything that it ought to disclose.[FN1] Not having anything to disclose, either then or now, the Court responded in the negative and referred Counsel to the Internet where any person may, with reasonable diligence, ascertain the Court's background and history.

> FN1. Counsel has cited no authority to support his suggestion that he has a roving commission to examine the Court simply because he filed a complaint. The dissent in *In re Drexel,* 861 F.2d at 1318, which plaintiff relies on so heavily, makes it clear that "the duty to inform a judge of a potential conflict rests upon whichever party be-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00943-AWT   Document 192-3   Filed 07/15/2008   Page 3 of 9

Not Reported in F.Supp.2d										Page 3
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

comes aware of such a situation," and to do so "promptly."

While claiming to "not base the request for recusal based on my interaction with this Court," (Aretakis Aff ¶ 12), Counsel and Father Hoatson nonetheless press the second leg of the §§ 144 & 455(b)(1) argument. (Hoatson Aff., ¶ ¶ 4-6, Sept. 24, 2006.) Their arguments are based on several preliminary and non-consequential procedural rulings, dealing with page limitations, pre-motion conferences, attempting to make a decision by another judge in the Southern District of New York "part of the record" in this case (as opposed to simply citing the case in a brief) and similar matters. This argument is plainly futile, however, because prior judicial rulings cannot be the basis for recusal. *See In re Drexel,* 861 F.2d at 1314 ("A determination of bias under this section must be based on extrajudicial conduct ... legal disagreements with counsel are not sufficient for judicial disqualification.").

Father Hoatson's affidavits in support of the application are similarly insufficient and completely barren of any facts based on his personal knowledge. Instead, Father Hoatson makes non-factual allegations in the alternative. For example, Father Hoatson claims that given my (and my family's) "deep involvement" with Catholic institutions, I have given "the appearance" to [Father Hoatson] that I "cannot *or* may not be able" to be fair *"or* in the least [sic] ... appear to be compromised."(Hoatson Aff. ¶ 1, Sept. 8, 2006.) (emphasis added). With reference to Mrs. Crotty, Father Hoatson again launches allegations not of fact, but of conjecture, in the apparent hope that one of his missles may hit a fact.

Mrs. Jane Crotty is involved to *some extent* in the financial, real estate or litigation affairs

*or* transactions of the Archdiocese of New York

*or* involved in financial

*and/or* real estate matters that relate to

*or* are intertwined with the Archdiocese of New York

*or* may be affected by the St. Bridgid's litigation ... makes it appear that her husband would

*or* may have a conflict of interest

*or* at least an appearance of an impropriety....

(Hoatson Aff. ¶ 8.) (emphasis added). None of these statements is based on Father Hoatson's personal knowledge; instead, the assertions are based on what he read in the newspaper or what others told him. This guesswork, really a smokescreen, is clearly insufficient under the law. *See In re Drexel,* 861 F.2d at 1309. There are absolutely no facts demonstrating a personal bias.[FN2] Indeed, Father Hoatson's affidavit stresses an "appearance of impropriety" (Hoatson Aff. ¶¶ 1, 5, 8, 10-12 & 18) ("[It is] not so much that a conflict exists, but that an appearance of impropriety may exist." ¶ 10.)

> FN2. At oral argument, the Court pressed Counsel numerous times for the factual basis of the bias allegation. Counsel suggested the bias was based on the allegations concerning the Court's brother and wife. While these allegations may trigger other concerns under §§ 455(a) and 455(b)(2)-(5), they cannot serve as the basis for a claim of personal bias by the Court. Counsel also asserted his good faith belief in the claimed bias since the language of 28 U.S.C. §§ 144 has a reference to belief. (*See* Tr. 13-14.) Belief, however, even good faith belief, is not sufficient; and cannot substitute for the statutory requirement of "facts and the reasons" for the claim or assertion of bias.

*4 After numerous attempts to ascertain the basis for the claim of bias or prejudice in favor of two defendants under 28 U.S.C. §§ 144 and 455(b)(1) (*see* Tr. 8-10 & 17), Counsel finally set forth the argument in support of the claim of bias:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00943-AWT    Document 192-3    Filed 07/15/2008    Page 4 of 9

Not Reported in F.Supp.2d                                                                                                                 Page 4
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

It is Father Hoatson's belief that ... there are some people that are Catholic and attend weekly or monthly mass and there are some people that are Catholic that are very involved in the ongoings of the church and church-related activities and we cast no aspersions on any of those.

However, Father Hoatson's belief is that based on the fact that you have won an award from a guild FN3 that is associated with the New York Archdiocese, and that you may win future awards from that same guild or that Cardinal Egan, to his knowledge, is somehow affiliated with that group, or that Cardinal Egan might have some sort of power-I don't mean to use the word power-but I mean in terms of an adverse ruling in this case against Cardinal Egan's interest without knowing the canonical applications might result in on excommunication of someone or a party to this case.

> FN3. The Court placed on the record the fact that he received an award from the Catholic Lawyers Guild more than eight years ago, well before Cardinal Egan became head of the Archdiocese of New York. The suggestion of "future awards" is, of course, sheer speculation. The Court further stated that he attended meetings of the Catholic Lawyers Guild held on the first Friday of every month. At those meetings, various issues were discussed and the Court summarized those issues on the record. The Court states that he knows Cardinal Egan, but does not have a personal relationship with him.

(Tr. 19, ll 4-21.) Plaintiff contends that he is not forum shopping. But any judge who is Catholic and renders a decision that is adverse to Cardinal Egan or the Archdiocese of New York is subject to the threat of excommunication and "that threat of adverse action is something that needs to be dealt with."(Tr. 21, ll 2-8.) The only way to remove that threat, presumably, is recusal. Yet even if the Court were to do so, Counsel recognizes the "33 ... or 40 percent chance I'll go to another Catholic judge.FN4(Tr. 47, ll 11-13.) The threat of excommunication is not greater because the Court is "deeply involved" or has "deep Catholic roots." Therefore, the same argument concerning "excommunication" would be applicable to other Catholic judges as well; and they also would have to recuse themselves.

> FN4. The Court does not know how Counsel derived this figure, but quotes it here because Counsel apparently has categorized the Judges of the Court according to their faiths.

Notwithstanding Counsel's repeated assurances that he was not seeking the Court's recusal based on the fact that he is a Catholic (*see* Tr. 8, ll 8-19 & 18, ll 14-22), that is exactly what he is doing. Any doubt of this is removed by Counsel's suggestion of possible excommunication for an adverse decision, which can obviously be a threat only to Catholics. The suggestion of "excommunication" infers that Catholic judges may not be capable of independent thought on certain matters, involving the Catholic Church or faith, which may be pending before them. In other words, they may be unable to comply with their sworn duty to "administer justice without respect to persons, and do equal right to the poor and rich, and ... [to] faithfully and impartially discharge and perform all duties ... as United States District Judge under the Constitution and laws of the United States."28 U.S.C. § 453. The Court clearly cannot recuse itself because of its faith or beliefs, even if strongly held. Doing so would violate Article VI of the Constitution,FN5 the First Amendment, and the holding of every case that has considered the issue.

> FN5. The United States Constitution, Article VI, provides that "no religious test shall ever be required as a qualification to any office or public trust under the United States."

*5 In *Feminist Women's Health Ctr. v. Codispoti,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00943-AWT    Document 192-3    Filed 07/15/2008    Page 5 of 9

Not Reported in F.Supp.2d                                                                                     Page 5
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

69 F.3d 399 (9th Cir.1995), plaintiffs sought the removal of Judge John Noonan, who is a Catholic, in a case involving the regulation of abortion. Judge Noonan stated he was a member of the Catholic Church which teaches that "the deliberate termination of a normal pregnancy is a sin, that is, an offense against God and against neighbor."*Id.* at 400.The Judge acknowledged that his beliefs were fervently held. Nonetheless, he refused to recuse himself and held that "either religious belief disqualifies or it does not. Under Article VI, it does not."*SeeId.*Many other judges have declined recusal in similar circumstances. *See e.g.,Idaho v. Freeman,* 478 F.Supp. 33 (D.Id.1979) (refusing to recuse a judge, a regional representative in the Mormon Church, in a case involving a challenge to the Equal Rights Amendment, even though the Mormon Church was vigorously opposing the proposed Amendment). In this District, former Chief Judge Mukasey declined to recuse where a Muslim defendant sought his removal on the grounds that the Judge was Jewish and so was biased against him. *United States v. El-Gabrowny,* 844 F.Supp. 955 (S.D.N.Y.1994). Religious devotion or affiliation cannot constitute a general bias or prejudice under §§ 144 or 455(b)(1).[FN6] Other than the Court's faith, neither Plaintiff nor his Counsel have come forward with a single fact demonstrating that the Court was biased or prejudiced in favor of the Archdiocese of New York or Cardinal Egan. The Court's faith, its observance of the faith, its participation in regular meetings of a lay organization, the fact of his receiving an award several years ago, and routine rulings during this case do not raise any questions of personal bias or prejudice.

> FN6. For a thoughtful discussion on this issue, see Teresa S. Collett, *The King's Good Servants, But God's First: The Role of Religion in Judicial Decision Making,* 41 S. Tex. L.Rev. 1277 (2000).

OTHER SECTION 455(b) BASES FOR RECUSAL

Counsel conceded that neither 28 U.S.C. § 455(b)(2) (prior representation of a party) nor (b)(3) (governmental employment) are applicable. As to § (b)(4) and § (b)(5)(iii), Counsel argues that the Court's brother or wife may have a financial or other interest that could be substantially affected by the outcome of the proceeding in this matter. It is clear, however, that neither has an interest in the proceeding pending before this Court. At best, Plaintiff asserts they have an interest in another, non-related proceeding.

The Court's brother is President of the Catholic Lawyers Guild and a partner at the law firm of Kelley, Drye & Warren. The fact that he is also a member of the Catholic faith, and the head of the Catholic Lawyers Guild, cannot serve as the basis for the Court's recusal. If the Court does not recuse itself because of its faith and membership in a lay organization, it certainly cannot be that his brother's faith and participation in the same lay organization means the Court must recuse itself.

As to Kelley, Drye & Warren, it is suggested that the firm represents the Archdiocese and perhaps Cardinal Egan in litigation involving St. Brigid's Church, said to be owned by the Archdiocese of New York. The exact nature of the litigation now pending in New York Supreme Court is unknown because Plaintiff has failed to submit any factual information whatsoever.[FN7]For example, Plaintiff states that he has "personal knowledge" that the Court's brother's law firm is representing the Archdiocese of New York in "the St. Brigid's *and/or* such other cases."(Hoatson Aff. ¶ 11, Sept. 8, 2006) (emphasis added). It is unclear how Plaintiff can have personal knowledge of this yet still have to use an "and/or" disjunctive.[FN8]

> FN7. For example, Plaintiff has not disclosed when the litigation was filed, the parties to the litigation, the precise nature of the claim, the relief sought, or its present status. It is uncontested that St. Bridgid's is located at East 7th Street and Avenue B. The Church has been closed for some time and the Archdiocese apparently

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

Page 6

wants to demolish the Church, as it is said to be structurally unsound, and then sell the property.

FN8. As Father Hoatson also claims, the Court's brother's firm's involvement with defendants in this unrelated matter is problematic because Plaintiff "has a good faith belief" that the Court has a "close relationship with his brother ... because both attended and graduated from the University of Notre Dame ... and Cornell Law School ."(Hoatson Aff. ¶ 12, Sept. 24, 2006.) The Court admitted to having an excellent relationship with his brother, but pointed out that while they attended the same schools, they were years apart in attendance at those institutions because of their age difference. The Court also advised Father Hoatson that while he and his brother both served in the Navy, they sailed on different ships, on different oceans, and for different tours of duty. Father Hoatson is not entitled to any of this information (*see* FN 1, *supra* ), but there it is.

*6 If Kelley, Drye & Warren were to appear before the Court in this action, of course, the Court would have to disclose that his brother is a partner in the firm. And depending on whether a substantial interest of his might be affected, the Court might have to recuse itself. *SeePashaian v. Eccelston Props., Ltd.,* 88 F.3d 77 (2d Cir.1996).[FN9] Plaintiff claims that the Court should have disclosed Kelley Drye & Warren's representation of the Defendants. (Hoatson Aff. ¶ 6, Sept. 24, 2006.) The Court, however, had no such knowledge at the time. Furthermore, there is no mechanism known to the Court as to how it would acquire knowledge of whom Kelley, Drye & Warren was or is representing.[FN10]Counsel certainly never called any such mechanism to the Court's attention.

FN9. In *Pashaian,* one of the litigants in the case pending before Judge Martin was represented by a law firm, a partner of which was married to Judge Martin's sister. The Court held it was unrealistic to assume that "partners, in today's law firms invariably 'have an interest that could be substantially affected by the outcome of' any case in which a partner was involved."88 F.3d 77, 83 (quoting 28 U.S.C. § 455(b)(5)(iii)). The law firm involved there has gross revenues in the nine figure range and the partner's share of that was nominal. Further, the matter was not of any real significance or precedential value. Keep in mind that in *Pashaian,* the Judge's wife's brother-in-law's firm was appearing before the Judge. It still did not result in recusal.

FN10. The Court is unaware of any authority requiring the Court to ascertain what entities Kelley, Drye & Warren is representing so that the Court could check that client listing against parties appearing before it in separate, unrelated litigation. In fact, Counsel appeared to recognize that there was no legal basis for following such a procedure. (Tr. 11-12.) Further, there would be no feasible way to gather that information.

In any event, assuming Kelley, Drye & Warren is in fact counsel to the Archdiocese in litigation over St. Bridgid's Church, there is still no basis to recuse under either §§ 455(b)(4) or (b)(5)(iii). Both provisions talk about an "interest" that could be "substantially affected" by the outcome of "the proceeding." The "proceeding" is the matter before this Court, not the land use matter pending in New York State Supreme Court. Clearly, Kelley, Drye & Warren has no interests in the matter before this Court. Further, the matter before the State Supreme Court is totally unrelated to the Plaintiff's litigation here. The suggestion that a good result in this case may redound to the benefit of Kelley, Drye & Warren is baseless, and there is no factual basis for Father Hoatson's claim that Kelley, Drye & Warren

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00943-AWT  Document 192-3  Filed 07/15/2008  Page 7 of 9

Not Reported in F.Supp.2d                                                                                                      Page 7
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

is earning "substantial legal fees" (Hoatson Aff. ¶ 11, Sept. 8, 2006) from its representation in the St. Bridgid's case. Even if it were, these fees would have to be weighed against Kelley, Drye & Warren's total gross revenues, which run to the nine figure range. *SeePashaian,* 88 F.3d at 83, 84.

With regard to the Court's wife, Jane Crotty, the only fact that the affidavits have correct is that she is employed by George Arzt Communication. That firm has been engaged by a community group which is opposed to the Archdiocese's attempts to demolish and sell St. Bridgid's Church. Like many groups in New York, this group questions development where there has not been a full disclosure of the developer's plans and a complete opportunity to review the development and assess its community impact. Even a casual reader of the local papers would readily agree that there is nothing special about this run-of-the-mill land use litigation. From what can be gleaned from the papers filed here, when the Archdiocese commenced demolition of the Church, the community group and other interested parties sought an injunction. One member apparently offered to buy the property, but so far as is known, the offer was rejected.

Not surprisingly, Plaintiff recites no facts to back up the claim that Jane Crotty has a substantial interest in the unrelated case pending in New York State Supreme Court; nor does he have personal knowledge. He recites hearsay information imparted to him by a certain Joseph O'Connor-otherwise unidentified. He then concludes: "It appears that Mrs. Jane Crotty is on the same side as the New York Archdiocese in the St. Bridgid's litigation case...." (Hoatson Aff. ¶ 5, Sept. 8, 2006.) Of course, that assertion is completely inaccurate. Without putting a fine point to it, Mrs. Crotty represents a community group, which is in opposition to the Archdiocese in the St. Bridgid's matter.

*7 Regardless of the facts, Father Hoatson continues that "even if she is adversarial or not directly supportive [of the Defendants] .... the past and present relationship have or may appear to have an appearance of impropriety on my pending cases."(Hoatson Aff. ¶ 5, Sept. 8, 2006.) While Father Hoatson may be entitled to his good faith beliefs, he cannot continuously assert facts in the alternative with the hopes that at least one of them is accurate. This is not the reasoned analysis that is called for by the statute and the cases interpreting it.

Plaintiff then tosses another assertion that Mrs. Crotty "has *or* may have a present financial, real estate or other type of interest in the sale, marketing or use of the New York Archdiocese or Church Property."(Hoatson Aff. ¶ 6, Sept. 8, 2006.) (emphasis added). In his reply affidavit, Father Hoatson eliminates the alternative and asserts that Mrs. Crotty has "financial benefits or remuneration" tied to the Defendant. (Hoatson Aff. ¶ 15, Sept. 24, 2006.) Neither the possibility nor the actuality of a financial interest is a fact. Rather, it is Father Hoatson's continuing speculation based on a conversation he had with the still unidentified "Mr. Joseph O'Connor." If Mrs. Crotty has any financial interest, it would be disclosable on the Court's Annual Financial Disclosure Statement. There is no such disclosure, because there is no such interest. Furthermore, even if there was such an interest, it could not possibly be "substantially affected" by anything that would happen in this proceeding.

There is no basis for recusal under 455(b)(4) or (b)(5)(iii).

SECTION 455(a) BASES FOR RECUSAL

All of the allegations of personal bias under §§ 144 and 455(b)(1) and the allegations of interest by the Court's brother and wife under §§ 455(b)(4) and (b)(5)(iii) are again enlisted in support of Father Hoatson's final argument that even if his assertions fail to provide a basis for recusal under those provisions, they must at least create the appearance of impropriety under 28 U.S.C. § 455(a): "It is not so much that a conflict exists, but that an appearance of an impropriety may exist."(Hoatson Aff. ¶ 10)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00943-AWT   Document 192-3   Filed 07/15/2008   Page 8 of 9

Not Reported in F.Supp.2d                                                                                                  Page 8
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

*see also* Hoatson Aff. ¶ 18(a) & (h), Sept. 8, 2006.)

Section 455(a) requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Second Circuit has interpreted this to be an inquiry of whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal," or alternatively, whether "a reasonable person, knowing all the facts," would question the judge's impartiality. *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992) (citations omitted). Furthermore, disqualification is not required on the basis of "remote, contingent, indirect or speculative interests." *Id.* It concerns the appearances of impropriety, not "mirages." *United States v. El-Gabrowny,* 844 F.Supp. at 961.

*8 The problem with Plaintiff's arguments here concerning the Court's personal bias and the activities of his brother and wife is that a reasonable person, knowing all the facts, would not question the Court's impartiality. The test cannot be based on Plaintiff's conjectures and speculation nor on his own view of how things appear to him. The statute mandates an objective rather than subjective inquiry. *Litekig v. United States,* 510 U.S. 540, 548 (1994).

Both in his briefs and in oral argument, Counsel heavily relies on the dissent in the *In re Drexel* litigation, 861 F.2d 1307 (2d Cir.1988),[FN11] for the proposition that recusal is necessary here. It is a mystery why Plaintiff relies on a dissent which Counsel concedes has not been followed. (Tr. 5.) In *In re Drexel,* the claimed appearance of impropriety was that the Judge's wife stood to benefit from work to be performed by the firm of Drexel Burnham Lambert, a party defendant in a pending matter. The Court confirmed that a motion under § 455(a) was addressed to the discretion of the Court, and that recusal was not warranted because the judge's impartiality could not reasonably be questioned. While the firm of Drexel Burnham Lambert was to use its best efforts to raise money or to act as a placement agent for money that a buyer was to use to acquire a business owned by the Judge's wife, the Judge's wife had no direct dealings or contractual relationship with Drexel Burnham Lambert. Since there was no direct interest, there could was no appearance problem.

> FN11. In the Plaintiff's opening brief, when quoting from the *In re Drexel* opinion, Counsel does not disclose that he is quoting from the dissent.

Similarly here, Mrs. Crotty does not represent the Archdiocese, but rather a community group which pays a fee to her employer, George Arzt Communication; the community group's litigation over a certain parcel of real property in Manhattan is not related in any way to the subject matter of this litigation; and in any event, the litigation is adversarial to the Archdiocese. Mrs. Crotty is not a party to the litigation. It is claimed that someone made an offer to buy the Church property; but it was not Mrs. Crotty's offer; nor will she participate in the offer. She has no interest in it. Further, in any event, the offer was apparently rejected, so there is no transaction. Thus, the Archdiocese has no obligation-direct or indirect-to Mrs. Crotty; and similarly she has no obligation whatsoever to either the Archdiocese or Cardinal Egan. The Court placed on the record that he has met Cardinal Egan on several occasions, but does not know him well. Given the Court's public life before taking the bench, he knows many New Yorkers from all walks of life. Simply knowing people, litigants and lawyers alike, does not create an appearance of impropriety.

After a thorough review, the Court finds that neither the Court's brother nor wife has a personal interest in the outcome of this litigation, and there is no appearance of impropriety. Their interests, if any, in a non-related proceeding could not be substantially affected by the outcome in this proceeding. Whatever their interests in a non-related litigation, they are "remote, contingent or speculative;" and so they are "not the kind of interests which reasonably brings into question a judge's impartial-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00943-AWT   Document 192-3   Filed 07/15/2008   Page 9 of 9

Not Reported in F.Supp.2d                                                                                                Page 9
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.))

ity" and cannot form the basis of a § 455(a) recusal. *In re Drexel,* 861 F.2d at 1313.

*9 In addition to the blunderbluss allegations concerning the Court's wife and brother, Father Hoatson adds one final "appearance of impropriety" charge. Father Hoatson strings together a remote connection that is supposed to somehow implicate the Court's impartiality by reciting the Court's relationship with former Mayor Giuliani,[FN12] Mayor Giuliani's friendship with Msgr. Alan Planca, and Father Hoatson's criticism of Msgr. Planca. (Hoatson Aff. ¶¶ 15-16, Sept. 8, 2006.) Apparently, this creates an appearance of impropriety because the Court must know Msgr. Planca, who by the way is not connected to this litigation in any way. This final series of allegations purportedly create a hostility to Father Hoatson, or at least there may be an appearance of impropriety. This is absolute nonsense. In logic, Father Hoatson has an undistributed middle in his syllogism, if that is what it is. His assertions are also contrary to his Counsel's concession that the Court's supposed bias or appearance of a bias is not against Father Hoatson, but rather in favor of the Archdiocese and Cardinal Egan. Finally, if these factoids create an appearance problem, then anything can.

> FN12. The Court served as New York City's Corporation Counsel during Mayor Giuliani's first term as Mayor.

In the penultimate paragraph of his moving affidavit, Father Hoatson swears that the still unidentified "Mr. Joseph O'Connor and other persons .... recently expressed astonishment that Judge Crotty has not recused himself from my case." (Hoatson Aff. ¶ 17, Sept. 8, 2006.) What is astonishing to the Court is that such a motion would be made and pursued with no factual support from anyone with personal knowledge; with a complete absence of facts, and a mountain of surmise, conjecture, speculation and innuendo.

There is no appearance of impropriety here. The "appearances" Plaintiff dredges up are based on a make-believe speculation. Adopting Plaintiff's theory would mean that whenever the fertile mind of a party or a counsel can create a fictional connection, then recusal must follow. The applicable standard is not what Father Hoatson believes, even if in good faith; nor how things appear to Father Hoatson; nor is it what the "astonished" Mr. O'Connor believes; nor is it "what appears in the press," or "what a straw poll of the only partly informed man-on-the-street would show."*In re Drexel,* 861 F.2d at 1313. Instead, the standard is whether a reasonable person knowing and understanding all the relevant facts (of which Plaintiff presents none) and the law (rather than the dissent in the controlling case) would recuse the judge. *See id.* To adopt Plaintiff's line of reasoning would require recusal for any remote connection, and "the price of avoiding any hint of impropriety, no matter how evanescent, would grant litigants the power to veto the assignment of judges."*Id.* at 1315.

The motion is DENIED in all respects.

SO ORDERED

S.D.N.Y.,2006.
Hoatson v. New York Archdiocese
Not Reported in F.Supp.2d, 2006 WL 3500633 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.