UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
***************************************
GARY SESSION                       *    CIVIL ACTION NO.
                    PLAINTIFF      *    3:03-CV-00943 (AWT)
                                   *
VS.                                *
                                   *
CITY OF NEW HAVEN; STEPHEN         *    AUGUST 1, 2008
COPPOLA; AND EDWIN RODRIGUEZ       *
                                   *
                    DEFENDANTS     *
***************************************
```

## JOINT TRIAL MEMORANDUM

1. Trial Counsel:
   Plaintiff: John A. Pinheiro, Esq., 167 Cherry Street, PMB 314, Milford, CT 06460
   Defendant: Thomas E, Katon, Esq., Susman, Duffy & Segaloff, P.C., 59 Elm Street, New Haven, CT; Karen Baldwin Kravetz, Esq., Susman, Duffy & Segaloff, P.C., 59 Elm Street, New Haven, CT; Meghan K. Gallagher, Esq., Susman, Duffy & Segaloff, P.C., 59 Elm Street, New Haven, CT

2. Basis for Federal Jurisdiction:

   **Plaintiff:** The basis for the Court's subject matter jurisdiction is Section 1331, 1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code. Defendant denies subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.

   **Defendant:** Federal question.

3. Jury/Non-jury: This s a jury case.

4. Nature of Case:

**Plaintiff:** The plaintiff claims false arrest and malicious prosecution pursuant to 28 U.S.C. Section 1983 in addition to common law causes of action for false imprisonment and malicious prosecution. The plaintiff claims that defendant Edwin Rodriguez, a former detective with the New Haven Police Department, submitted a false or misleading arrest warrant affidavit, based on witness statements that he knew were to be false or the product of threats or coercion. Furthermore, the defendant withheld exculpatory information from the Arrest Warrant and the Hearing in Probable Cause. The plaintiff further alleges that as a result of this misconduct, the plaintiff was arrested for murder and was incarcerated for 11 months before the charges against him were nollied, for reason being that the State of Connecticut was missing certain witnesses, during jury selection on the foregoing charges. Once the trial for the missing witnesses was over, (the missing witness's cases were dismissed during the trial), the plaintiff obtained a dismissal of all charges.

**Defendant:** At this time, there are two remaining counts to the Plaintiff's Complaint. As set forth in Counts Four and Five of the Plaintiff's Revised Complaint, the Plaintiff alleges claims for false arrest and false imprisonment under both federal and state law. The remainder of the Plaintiff's claims against the Defendant were dismissed after summary judgment. Accordingly the only remaining claim against the Defendant is that he specifically and with wanton disregard submitted false statements in support of his application for an arrest warrant, seeking the arrest of the Plaintiff. A finding by this Court that there existed probable cause to arrest, imprison and prosecute the Plaintiff is a complete defense to the Plaintiff's action. Because the Defendants maintain that there existed probable cause in the warrant, which was signed by a neutral magistrate, and after a finding by the court after a hearing in probable cause, the claims against the Defendant should be dismissed in their entirety.

5. Stipulations of Fact and Law.

**Plaintiff:** At all relevant times the defendant was a officer in the New Haven Police Department acting in his official capacities and under color of law.

**Defendant:**

1.) The Defendant, Edwin Rodriguez, was at the time of the events that form the basis of the Plaintiff's Complaint, a detective for the police department of the City of New Haven.

2.) At all times relevant to the allegations set forth in the Plaintiff's Complaint, the Plaintiff was acting within the scope of his employment as a detective.

3.) On July 25, 1999, Anthony Lucky, then sixteen, had been struck and killed by a bullet during an exchange of gunfire between the occupants of the vehicle in which Lucky was seated and several men standing outside the vehicle.

4.) At the time of his murder, Lucky was a rear seated passenger in a 1998 Suzuki Samurai that was being operated by his cousin, Albert MCann.

5.) Also seated in the vehicle was Juan Scruggs. Scruggs was seated in the front passenger seat.

6.) The medical examiner determined that Lucky had been killed by a single shot, entering through Lucky's back.

7.) State police testing confirmed that a single bullet has penetrated a spare tire mounted on the tailgate of the Samurai and struck Lucky.

8.) In connection with the investigation of the Lucky homicide, Juan Scruggs and Albert McCann gave statements to police on July 25, 1999.

9.) In connection with the investigation of the Lucky homicide, Mayra Mercado gave statements to police on November 8, 1999 and December 3, 1999.

10.) In connection with the investigation of the Lucky homicide, Sharon Adkins gave a statement on November 7, 1999.

11.) In connection with the investigation of the Lucky homicide, Larkland Martin gave a statement on December 4, 1999 and March 5, 2000.

12.) A number of officers submitted reports in connection with their own investigation and response to the Lucky Homicide.

13.) On January 4, 2001, Rodriguez applied for an arrest warrant for the arrest of Gary Session.

14.) On January 5, 2001, a judge signed the arrest warrant.

15.) On January 10, 2001, the Plaintiff was charged with murder, conspiracy to commit murder, and criminal use of firearm.

16.) Commencing on March 1, 2001, the Plaintiff had a hearing in probable cause.

17.) The hearing in probable cause consisted of two days of testimony.

18.) On March 8, 2001, the second day of the probable cause hearing, the Court made a finding that there was probable cause to continue with the prosecution of the Plaintiff for the crimes contained within the information against him.

19.) On November 15, 2001, the charges against the Plaintiff were nolled as a result of missing witnesses.

20.) The charges against the Plaintiff were dismissed on August 14, 2002.

6. Plaintiff's Contentions:

a. Myra Mercado's affidavit and statements were obtained by threats or coercion by the defendant and were false;

b. Sharon Adkins affidavit and statements were obtained by threats or coercion by the defendant and were false;

c. In the Arrest Warrant, Mercado was listed as a confidential informant, when in fact she was not;

d. Adkin's statement referred to an event that happened subsequent to the date of the Anthony Lucky murder.

e. Larkland Martin's statement was false, the product of the defendant's coercion over Martin;

f. Martin's statement does not corroborate with the physical evidence gather at the scene of the murder;

g. On the date of the defendants trial (the two individuals also charged with the murder of Lucky) Martin informed the State's Attorney that his statement was not correct;

h. Defendant failed to include exculpatory information in the Arrest Warrant;

i. Defendant submitted the Application for Arrest Warrant knowing that it contained false or misleading information based on witness statements that he knew were to be false or the product of threats or coercion;

j. All physical evidence and certain documentary evidence was destroyed prior to the criminal trials of the individuals charged with the murder of Lucky;

7. Defendant's Contentions:

False Arrest:

1.) On or before November 8, 1999, Rodriguez was introduced to Mercado by Sergeants Canning and Norwood. They had represented to Rodriguez that Mercado was a reliable informant. Rodriguez interviewed Mercado on November 8, 1999.

2.) Mercado indicated that she worked for the Plaintiff selling drugs.

3.) Mercado indicated that she had a romantic relationship with the Plaintiff and that he had fathered one of her children.

4.) The Plaintiff is a convicted felon with several drug convictions.

5.) The New Haven and West Haven Police Departments had conducted significant surveillance on the Plaintiff for a number of years because of his reputed connections with drug dealers.

6.) Mercado indicated that on or about July 20, 1999, she had been to the Plaintiff's home and that the Plaintiff was counting drug money.

7.) Mercado indicated that the Plaintiff learned that some kids had stolen money from him and that the Plaintiff indicated that he wanted the kids to work off the money or to be killed.

8.) Mercado stated that on July 24, 1999, the Plaintiff received a call from Deshawn Johnson telling him that the "kids" who has stolen the Plaintiff's drug money, were in the Hill Section of New Haven.

9.) She indicated that later that night, in the early morning hours of July 25, 1999, she was with DeShawn Johnson when he received a call from a woman named Sharon, who indicated the location of the kids who had stolen money.

10.) Mercado picked out Sharon Adkins in a photo array and identified her as the woman who called Johnson regarding the location of the kids.

11.) Sharon Adkins, who was interviewed by the police on November 7, 1999, the day before Mercado gave her statement, told detectives that she contacted Johnson to inform him of the location of Scruggs and McCann

12.) Mercado, in her initial statement to police, indicated that shortly after Johnson received the phonecall from Adkins, the Plaintiff came to their location.

13.) Mercado said that she witnessed the Plaintiff give a gun to Santiago.

14.) Shortly thereafter, the shooting occurred.

15.) Larkland Martin contacted police on his own and gave them a statement on December 4, 1999.

16.) Martin told officers that he witnesses the shooting that there were two Hispanic men and one African American male shooting onto the samurai.

17.) Martin identified Jose Santiago and Deshawn Johnson on photo boards as the shooters.

18.) These were the same persons who were identified by the Mercado and by Adkins.

19.) On December 5, 1999, Mercado issued a second statement to detectives whereby she indicated that she had run into Santiago, who was boasting about the murder.

20.) The state police shooting reconstruction confirmed Martin's statement.

21.) With the reports and reconstruction, Rodriguez applied for an arrest warrant.

22) An arrest warrant was granted by a neutral magistrate.

23.) The Plaintiff was charged.

24.) The Plaintiff had a hearing on probable cause.

25.) At the hearing in probable cause, Mercado testified in a manner that was consistent with her original statements.

26.) At the hearing in probable cause, Martin testified in a manner that was consistent with his original statements.

27.) At the hearing in probable cause, the Court heard testimony from Officer Lisa D'Adadio, Officer Theodore Forbes and Detective Rodriguez.

28.) At the conclusion of the prosecution's case at the hearing in probable cause, the Plaintiff was given the opportunity to proffer evidence.

29.) The Plaintiff declined the opportunity to proffer evidence at the hearing in probable cause.

30.) After hearing the testimony of the various witnesses, the Court made a finding that there was probable cause to pursue the charges against the Plaintiff.

31.) Prior to trial, the witnesses who had offered statements against Session, specifically Mercado and Martin, were threatened.

32.) As a result of the threats and intimidation to Mercado, she refused to testify.

33.) Thereafter, the charges against the Plaintiff were nolled due to missing witnesses.

8. Legal Issues:

**Plaintiff**: Whether or not the defendant violated the plaintiff's civil rights by causing the false arrest, false imprisonment and malicious prosecution of the plaintiff;

**Defendant**:

1.) Whether there existed probable cause to arrest the Plaintiff.

2.) Whether the Rooker-Feldman Doctrine establishes that this Court does not have subject matter jurisdiction to hear the Plaintiff's claims.

3.) Whether plaintiff can prove causation in the face of a Connecticut Superior Court finding of probable cause.

4.) Whether a Connecticut Superior Court finding of probably cause perforce entitles defendant to qualified immunity.

9. Voir Dire Questions: See attached.

10. List of Witnesses:

**Plaintiff:**

1. Gary Session, Plaintiff, 89 Coleman Road, West Haven, Connecticut 06516. Mr. Session will testify to his whereabouts and actions on the evening of the death of Anthony Lucky, Jr., his lack of knowledge of the circumstances of said death, his interactions with various members of the New Haven Police Department, including but not limited to his then Federal Civil Rights action then pending against certain members of the New Haven Police Department, circumstances concerning his arrest, incarceration, injuries, damages and facts and circumstances concerning his Probable Cause Hearing and the results thereof, the subsequent nollie and then dismissal in the criminal charges brought against him.

**Defendant's objection**: Defendant anticipates a foundation objection to any claim for lost profits or business expectancies. Defendant will also object to any damages testimony or exhibits relating to plaintiff's claim for emotional distress injuries.

2. Mr. Lucky, Anthony Lucky, Jr.'s uncle, a/k/a Papa Luck. At the time of Anthony Lucky's death, Mr. Lucky was a Marshall with the Judicial Branch of the State of Connecticut. Fact witness regarding interaction with the plaintiff at the time of plaintiff's arrest as Mr. Lucky was working at the Union Avenue

Lock-Up facility where the arresting officers took the plaintiff. Mr. Lucky processed the plaintiff at the Union Avenue facility.

3. Robert F. Lawlor, Sr., Inspector with the Office of the State's Attorney, 235 Church Street, New Haven, Connecticut. He will be questioned concerning his membership, training and experience as an Inspector for the State's Attorney's Office, including his involvement in the investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr., and any subsequent action and/or statements concerning said investigation and arrest. Including interviews with witnesses in connection with the murder investigation of Anthony Lucky, Jr., witnesses in connection with the hearing in probable cause (HPC), both prior to and after the HPC, conversations with the State's Attorney Alexy, exculpatory information, attempts to verify alibi witnesees(es), contact with defendant Rodriguez, procedures and common practices within the State's Attorney's Office with respect to investigations, orders in connection with destruction of evidence in subject investigation.

4. Police Officer Patrick Redding, Head of the Detective Bureau, New Haven Police Department, One Union Avenue, New Haven, Connecticut. He will be questioned concerning his membership, training and experience as a New Haven Police Officer, including his position as Head of Internal Affairs Department. In addition to questions in connection with the written procedures used by the New Haven Police Department in becoming a Confidential Informant (CI), whether or not Mayra Mercado, Sharon Adkins or Larkland Martin is or were ever a CI with the New Haven Police Department.

5. Sharon Adkins, 79 East Main Street, Middletown, Connecticut 06357. She will be questioned concerning her location, at the time of Anthony Lucky, Jr.'s murder, her involvement in the investigation into the death of Anthony Lucky, Jr., and any subsequent action and/or statements/affidavits (including signatures and/or initializing) concerning said investigation and arrest of the plaintiff, whether she provided any tape recorded interviews and viewed any mug shots (photographs), coercion by the New Haven Police Department, her previous criminal record, her previous criminal activity, her history of substance abuse, whether she was ever an informant, CI, for the New Haven Police Department.

6. Mayra Mercado, 156 West Street, New Haven, Connecticut 06519. She will be questioned concerning her location, at the time of Anthony Lucky, Jr.'s murder, her involvement in the investigation into the death of Anthony Lucky, Jr., and any subsequent action and/or statements/affidavits (including signatures and/or initializing) concerning said investigation and arrest of the plaintiff, whether she provided any tape recorded interviews and viewed any mug shots (photographs), her testimony at the HPC, coercion by the New Haven Police Department, her previous criminal record, her previous criminal activity, her history of substance abuse, whether she was ever an informant, CI, for the New Haven Police Department.

7. Police Officer Lieutenant Roger Young, Head of Records Department, New Haven Police Department, One Union Avenue, New Haven, Connecticut. He will be questioned concerning his membership, training and experience as a New Haven Police Officer, including his position as Head of Records Department. In addition to questions in connection his responsibilities supervising the staff, civilian and sworn personnel, intake and maintenance of records/files/evidence, and destruction thereof, within the property room. In particular the evidence of any kind in connection with the investigation into the death of Anthony Lucky, Jr., including the plaintiff and any other then co-defendant charged with said murder, and any subsequent retention or destruction of any such evidence.

8. Police Officer Lieutenant Denise Blanchard, Supervisor of the Property Room, New Haven Police Department, One Union Avenue, New Haven, Connecticut. She will be questioned concerning her membership, training and experience as a New Haven Police Officer, including her position as Supervisor of the Property Room. In addition to questions in connection her responsibilities supervising the staff, civilian and sworn personnel, intake and maintenance of records/files/evidence, and destruction thereof, within the property room. In particular the evidence of any kind in connection with the investigation into the death of Anthony Lucky, Jr., including the plaintiff and any other then co-defendant charged with said murder, and any subsequent retention or destruction of any such evidence.

9. Detective O. Nieves, New Haven Police Department, One Union Avenue, New Haven, Connecticut. This officer will be questioned concerning membership, training and experience as a New Haven Police Officer, including information in connection with the New Haven Department of Police Services Property Room and in particular in connection with a certain document that Officer Nieves generated on September 13, 2006 in connection with Homicide Case 99-46990. In particular the evidence of any kind in connection with the investigation into the death of Anthony Lucky, Jr., including the plaintiff and any other then co-defendant charged with said murder, and any subsequent retention or destruction of any such evidence.

10. Police Officer Captain Joann Peterson, Officer in Charge of Internal Value and Ethics, New Haven Police Department, One Union Avenue, New Haven, Connecticut. This officer will be questioned concerning her membership, training and experience as a New Haven Police Officer, and the outcome of her search of the confidential registered informant files in the Office of Internal Values and Ethics office for Larkland Martin or Martin Larkland, and any other individual in connection with the investigation into the death of Anthony Lucky, Jr.

11. Police Officer Lieutenant Lisa Dadio, Operations Supervisor of the Investigative Services Division, New Haven Police Department, One Union Avenue, New Haven, Connecticut. This officer will be questioned concerning her

membership, training and experience as a New Haven Police Officer, and the outcome of her search of spreadsheet of assignments from ISU that show if more than one warrant application was rejected and/or accepted, and also the Table of Organization from 1999, in connection with the investigation into the death of Anthony Lucky, Jr.

12. Keith Perrin, Chief Operating Officer, FB Entertainment, Empire State Building, 350 Fifth Avenue, Suite 8817, New York, New York 10118. Testimony regarding the production agreement between FB Entertainment and the plaintiff as outlined in a certain letter dated January 18, 2006, which has been provided to the defendant.

**Defendant's objection**: Defendant anticipates a foundation objection to any claim for lost profits or business expectancies.

13. Former Detective Stephen Coppola, One Union Avenue, New Haven, CT 06519. Brief Summary: He will be questioned concerning his membership, training and experience as a New Haven Police officer including his disciplinary history, if any, and his involvement in the investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr. and any of his subsequent actions and/or statements concerning said investigation and arrest.

14. Defendant Former Detective Edwin Rodriquez, One Union Avenue, New Haven, CT 06519. Relationship: defendant Brief Summary: He will be questioned concerning his membership, training and experience as a New Haven Police officer including his disciplinary history, if any, and his involvement in the investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr. and any of his subsequent actions and/or statements concerning said investigation and arrest.

**Defendant's objection**: Defendant objects to questioning or exhibits regarding disciplinary matters per attached motion in limine.

15. Chief Norwood, Bridgeport Police Department. Relationship: Sergeant for the New Haven Police Department Brief Summary: He will be questioned concerning his membership, training and experience as a New Haven Police officer including his disciplinary history, if any, and his involvement in the investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr. and any of his subsequent actions and/or statements concerning said Investigation and arrest.

**Defendant's objection**: Defendant objects to questioning or exhibits regarding disciplinary matters per attached motion in limine.

16. Retired Sergeant Canning, One Union Avenue, New Haven, CT 06519. Relationship: Sergeant for the New Haven Police Department Brief Summary: He will be questioned concerning his membership, training and experience as a New Haven Police officer including his disciplinary history, if any, and his involvement in the investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr. and any of his subsequent actions and/or statements concerning said investigation and arrest.

**Defendant's objection**: Defendant objects to questioning or exhibits regarding disciplinary matters per attached motion in limine.

17. Detective John Velleca, One Union Avenue, New Haven, CT 06519Relationship: Detective for the New Haven Police Department Brief Summary: He will be questioned concerning his membership, training and experience as a New Haven Police officer including his disciplinary history, if any, and his involvement in the investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr. and any of his subsequent actions and/or statements concerning said investigation and arrest.

**Defendant's objection**: Defendant objects to questioning or exhibits regarding disciplinary matters per attached motion in limine.

18. Detective George Shelton, One Union Avenue, New Haven, CT 06519Relationship: Detective for the New Haven Police Department Brief Summary: He will be questioned concerning his membership, training and experience as a New Haven Police officer including his disciplinary history, if any, and his involvement in the Investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr. and any of his subsequent actions and/or statements concerning said investigation and arrest.

**Defendant's objection**: Defendant objects to questioning or exhibits regarding disciplinary matters per attached motion in limine.

19. Officer Lily DeJesus, One Union Avenue, New Haven, CT 06519Relationship: Officer for the New Haven Police Department Brief Summary: She will be questioned concerning her membership, training and experience as a New Haven Police officer including her disciplinary history, if any, and her involvement in the Investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr. and any of her subsequent actions and/or statements concerning said investigation and arrest.

**Defendant's objection**: Defendant objects to questioning or exhibits regarding disciplinary matters per attached motion in limine.

20. Retired Officer Quincey Freeman, One Union Avenue, New Haven, CT 06519. Relationship: Officer for the New Haven Police Department. Defendant named in civil lawsuit, Gary Session v. Quincy Freeman, et al, 3:00CV0046 (JCH). Brief Summary: He will be questioned concerning his membership, training and experience as a New Haven Police officer including his disciplinary history, if any, and his involvement in the investigation into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr. and any of his subsequent actions and/or statements concerning said investigation and arrest.

**Defendant's objection**: Defendant objects to questioning or exhibits regarding disciplinary matters per attached motion in limine.

21. Malka B. Shah, M.D., Expert Witness: Associated Medical Examiner, State of Connecticut, Office of the Chief Medical Examiner, 11 Shuttie Road, Farmington, CT 06032. Relationship: Medical Examiner of Anthony Lucky, Jr. Brief Summary: Basis of opinion: As an associated medical examiner, Ms. Shah is expected to testify to her qualifications, training and experience as a medical examiner and will testify as to the cause of death of Anthony Lucky, Jr. Opinion: Gunshot wound that the caused the death of Lucky was fired from a distance approximately 10 to 15 inches, and that and that the bullet from the weapon traveled directly from the gun to the deceased without any hitting any other object.

**Defendant's objection**: Malka B. Shah has not been disclosed as an expert by plaintiff.

22. Michael O'Donnell, G.J. O'Donnell Private Investigations, P.O. Box 786. Cheshire, CT. Relationship: Private investigator Brief Summary: Mr. O'Donnell is a private investigator retained by the Plaintiff to investigate the circumstances surrounding his arrest and incarceration. Mr. O'Donnell is expected to testify that his investigation uncovered several alibis of Mr. Session's were never interviewed by the New Haven Police.

23. Janine Wilson, 6 Cedar Street, New Haven, CT 06519. Relationship: Girlfriend Brief Summary: Ms. Wilson is expected to testify concerning, alibi, including, but not limited to what he saw, heard, and observed as to Mr. Session's activity and whereabouts July 24-25, 1999. Her observations of Gary Session prior to and after his incarceration. She is further expected to deny having been a police informant, having provided statements to any police agency or officer concerning the murder of Anthony Lucky, Jr. or having conversed with various police witnesses in the Lucky investigation.

**Defendant's objection**: Defendant objects to any evidence by this witness concerning plaintiff's emotional distress injuries.

24. Tanisha Stewart, 30 Tampa Street, West Haven, CT 06511. Relationship: Friend. Brief Summary: Ms. Stewart is a fact witness who is expected to testify that during the time period of the murder of Anthony Lucky, Jr. that the plaintiff was at his home with several people producing music.

25. Mary Deleon, 295 Norton Street, Apt. C8, New Haven, CT 06511. Relationship: acquaintance Brief Summary: Ms. Deleon is a fact witness who is expected to testify that during the time period of the investigation of the murder of Anthony Lucky, Jr. the New Haven Police served her with a subpoena, questioning by the police, inspector(s) and Alexy regarding the Lucky murder, that she told the police statements by Mayra Mercado were a lie, yet no police officer took her statement.

26. Laura Lucky, 132 Center Street, West Haven, Connecticut: Owner of the Suzuki Samuri. Fact witness will testify as to the physical condition of the subject vehicle at the time of the shooting.

27. Pamela E. Brown, 170 Diamond Street, New Haven, Connecticut 06515. Relationship: Anthony Lucky's mother. Ms. Brown is a fact witness who is expected to testify regarding conversations she had with the defendant, police officers and Mr. Alexy and his inspectors/investigators during the time period of the investigation of the murder of Anthony Lucky, Jr. and the trial of the individuals charged with said crime.

28. Christopher Alexy: State's Attorney, State's Attorney's Office, 235 Church Street, New Haven, Connecticut 06510: He will be questioned concerning his membership, training and experience as a State's Attorney, including his involvement in the investigation and prosecution, into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of Anthony Lucky, Jr., and any subsequent action and/or statements concerning said investigation and arrest. Including interviews with witnesses in connection with the murder investigation of Anthony Lucky, Jr., witnesses in connection with the hearing in probable cause (HPC), both prior to and after the HPC, conversations with the State's Attorney's Inspectors, exculpatory information, attempts to verify alibi witnesees(es), contact with defendant Rodriguez, procedures and common practices within the State's Attorney's Office with respect to investigations, orders in connection with destruction of evidence in subject investigation.

29. Eugene R. Calistro, Jr.: State's Attorney, State's Attorney's Office, 235 Church Street, New Haven, Connecticut 06510: He will be questioned concerning his membership, training and experience as a State's Attorney, including his involvement in the investigation and prosecution, into the death of Anthony Lucky, Jr., the law of arrest, and the arrest of Gary Session for the murder of

Anthony Lucky, Jr., and any subsequent action and/or statements concerning said investigation and arrest. Including interviews with witnesses in connection with the murder investigation of Anthony Lucky, Jr., witnesses in connection with the hearing in probable cause (HPC), both prior to and after the HPC, conversations with the State's Attorney's Inspectors, exculpatory information, attempts to verify alibi witnesees(es), contact with defendant Rodriguez, procedures and common practices within the State's Attorney's Office with respect to investigations, orders in connection with destruction of evidence in subject investigation, and his instructions to preserve evidence..

**Defendant:**

1. Edwin Rodriquez will testify regarding his investigation into the homicide of Anthony Lucky

2. Steven Coppola will testify regarding his investigation into the homicide of Anthony Lucky

3. Brian Norwood will testify regarding his supervision of and participation in the investigation into the homicide of Anthony Lucky.

4. Patrick Redding will testify as Keeper of the Records for New Haven Police Department Homicide Investigation Reports for Anthony Lucky

5. Ofc. John Wolchieski will testify regarding the subject matter of his report and investigation dated 7/25/99 concerning bullets found at scene of incident as detailed in his report

6. Ofc. Quincy Freeman will testify regarding the subject matter of his report and investigation dated 7/25/99 concerning investigation at scene of homicide as detailed in his report and apprehension of McCann and Scruggs. Ofc. Freeman will also testify regarding his involvement in a prior § 1983 action brought by Gary Session.

7. Ofc. Robert Losty will testify regarding the subject matter of his report and investigation dated 7/25/99 concerning investigation of homicide as detailed in his report and apprehension of McCann and Scruggs.

8. Ofc. Theodore Forbes will testify regarding the subject matter of his report and investigation dated 7/25/99 concerning investigation of homicide as detailed in his report and questioning of Anthony Lucky while being transported to Yale New Haven Hospital and securing of his clothing as evidence.

9. Ofc. M. Strickland will testify regarding the subject matter of his report and investigation dated 7/25/99 concerning investigation of homicide as detailed in his

report including escorting and impounding the Red Suzuki Samarai involved in the incident.

10. Detective Lisa Dadio will testify regarding actions taken to secure evidence at the crime scene, including the results of ballistics testing on projectiles and casings recovered at the scene of the Anthony Lucky homicide.

11. Sgt. John Velecca will testify regarding the subject matter of his Case Incident Report (Narrative) dated 7/2/02, concerning Larkland Martin's statement regarding witnessing the Anthony Lucky homicide and his observations of the intersection where the homicide occurred.

12. Sgt. Brendan Canning will testify regarding his contacts with Mayra Mercado and statements made to him regarding knowledge of the facts surrounding the Anthony Lucky homicide.

13. Larkland Martin will testify regarding his participation in proffering voluntary statements to Edwin Rodriquez in connection with the investigation of the Anthony Lucky homicide including the subject matter of what he observed and reported to Det. Rodriquez.

14. Mayra Mercado will testify regarding her participation in proffering voluntary statements to Edwin Rodriquez in connection with the investigation of the Anthony Lucky homicide including the subject matter of what she observed and reported to Det. Rodriquez.

15. Sharon Adkins will testify regarding her participation in proffering voluntary statements to Edwin Rodriquez in connection with the investigation of the Anthony Lucky homicide including the subject matter of what she observed and reported to Det. Rodriquez.

16. Malka B. Shah, M.D., Associate Medical Examiner, Office of the Chief Medical Examiner, 14, Shuttle Road, Farmington Ct, 06032 will testify regarding the procedures employed and results and conclusions of an autopsy on Anthony Lucky per report dated September 1, 1999.

17. Sherwood C. Lewis, Ph.D., Director of Toxicology, Office of Chief Medical Examiner, 11 Shuttle Road, Farmington, CT 06032 will testify regarding the results of toxicology tests performed on Anthony Lucky, per report dated August 18, 1999.

18. Robert K. O'Brien, Supervising Criminalist, State Police Forensic Science Laboratory 278 Colony Street, Meriden, Ct. will testify regarding the results of certain ballistic tests performed on shell and casings recovered at the scene of the Anthony Lucky homicide as set forth in a report dated 1/03/00.

19. Deborah A. Messina, Supervising Criminalist, State Police Forensic Science Laboratory 278 Colony Street, Meriden, Ct. will testify regarding the results of certain tests performed on shell and casings recovered at the scene of the Anthony Lucky homicide as set forth in a report dated 1/03/00.

20. James S. Stephenson, Firearms Examiner, State Police Forensic Science Laboratory, 278 Colony Street, Meriden, Ct. will testify regarding the results of certain ballistics testing performed of casings and projectiles recovered in connection with the investigation of the Anthony Lucky homicide as set forth in a report dated 7/28/99.

21. Edward Jachimowicz, Firearms Examiner, State Police Forensic Science Laboratory, 278 Colony Street, Meriden, Ct. will testify regarding the results of certain ballistics testing performed of casings and projectiles recovered in connection with the investigation of the Anthony Lucky homicide as set forth in a report dated 7/28/99.

22. Detective George Shelton will testify regarding his attendance at the autopsy performed by Malka Shah on Anthony Lucky.

23. Detective Robert Benson, will testify regarding his efforts to retrieve projectiles from the scene of the Anthony Lucky Homicide.

24. Christopher Alexy, Assistant State's Attorney, will testify regarding his involvement in the prosecution of Gary Session, Deshawn Johnson and Jose Santiago including but not limited to his interactions with Mayra Mercado, Sharon Adkins and Larkland Martin.

25. Inspector Dennis Kelly will testify regarding an interview with Janine Wilson concerning her alibi testimony for Gary Session.

26. Inspector Robert Lawlor, Office of the State's Attorney will testify regarding his actions in assisting Christopher Alexy in the preparation of the prosecution of Gary Session and his involvement in assisting Mayra Mercado's participation in the witness protection program, his interview of Janine Wilson, and his investigation into noncharged misconduct committed by Gary Session while incarcerated.

27. Michael Dearington, Chief State's Attorney for the Judicial District of New Haven will testify regarding his interaction with Mayra Mercado and his role in assisting Mayra Mercado's participation in the witness protection program.

28. Inspector Timothy Reardon, Office of the State's Attorney, will testify regarding his actions in assisting Mayra Mercado's participation in the witness protection program.

29. James Douglas will testify regarding his knowledge of the plaintiff, plaintiff's efforts to manipulate and intimidate witnesses in the Lucky homicide investigation and his intentions to bring suit against the City of New Haven

30. Officer Hollie Miller will testify as to her conversations with James Douglas as related in a report to Sgt. Cotto dated 5/10/01.

31. Pamela Brown will testify regarding the life and background of her son, Anthony Lucky, as well as her participation in the investigation conducted by Detective Rodriguez into his homicide, as well as her understanding of why the prosecution of Gary Session was terminated by a nolle.

32. Lt. Roger Young will testify regarding his job responsibilities and procedures for the Records Department for the City of New Haven Police Department.

33. Ofc. Denise Blanchard will testify regarding her job responsibilities and procedures for the Property Room for the City of New Haven Police Department.

11.  Exhibits: See attached

12.  Deposition testimony: None. Although not deposition testimony, the plaintiff will introduce into evidence the following transcripts: Plaintiff Exhibit 60: Court transcript of in Court proceedings dated November 15, 2001, criminal charges against Gary Session are nollied. Plaintiff Exhibit 61: Court transcript of in Court proceedings dated August 14, 2002, criminal charges against Gary Session are dismissed. The defendant will offer the transcript of the hearing on probable cause held by Judge Devlin in State of Connecticut v. Gary Session on March 1, 2001 and March 8, 2001.

13.  Requests for Jury Instructions: See attached.

14.  Anticipated Evidentiary Problems: See attached memoranda of fact and law regarding anticipated evidentiary problems.

15.  Proposed Findings and Conclusions: Not applicable - for non-jury cases.

16.  Trial Time: Plaintiff estimates two weeks. Defendant estimates 15 days of trial.

17.  Further Proceedings:

   **Plaintiff:** Plaintiff is preparing a 60(b) Motion. Plaintiff's Motion to Compel and Sanctions Re: Internal Affairs files. Plaintiff's Motion to Transfer Motion to Disqualify to Presiding Judge. Plaintiff's Batson claim pursuant to Batson v. Kentucky.

   **Defendant:** Motion to Dismiss for Lack of Subject Matter Jurisdiction. Proceedings on motions in limine.

18. Election for Trial by Magistrate: The parties have not agreed to have the case tried by a U.S. Magistrate.

PLAINTIFF
Gary Session

s/ John A. Pinheiro

John A. Pinheiro, Esq.
167 Cherry Street, PMB 314
Milford, Connecticut 06460
(203) 874-4477
Fax: (203) 882-0354
Cell: (203) 209-2449
Email: japinheiro@optonline.net
Fed. Bar. No. CT02977

DEFENDANT
Edwin Rodriguez

Thomas E. Katon
Federal Bar No. ct 01565
Susman, Duffy & Segaloff, P.C.
59 Elm Street 5th Floor
New Haven, CT 06510
tel.: 203-624-9830
fax: 203-562-8430
tkaton@susmanduffy.com