UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY SESSION | : CIVIL ACTION NO: 3:03CV00943 (AWT) |
| | : |
| v. | : |
| | : |
| EDWIN RODRIGUEZ | : AUGUST 8, 2008 |

## MEMORANDUM IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**I.   INTRODUCTION:**

On March 8, 2001, after two days of testimony at a hearing in probable cause, the Honorable Superior Court Judge Robert J. Devlin found that probable cause existed for the arrest and prosecution of the Plaintiff. The Plaintiff's current lawsuit, predicated upon the notion that there was a lack of probable cause to arrest, imprison and prosecute the Plaintiff seeks to overturn Judge Devlin's previous finding of probable cause. An essential element to claims for false arrest, false imprisonment and malicious prosecution is the finding that the Plaintiff was arrested, imprisoned or prosecuted without probable cause. Accordingly, if the Plaintiff's claims are to be credited, this Court would have to find that the Plaintiff was arrested, imprisoned and prosecuted without probable cause, rendering the finding of the Superior Court a nullity. The Rooker-Feldman Doctrine prevents just such review. Specifically, the Rooker-Feldman Doctrine prevents a party who did not prevail in state court from seeking review of the state court's decision on matters which are intrinsically intertwined with the plaintiff's federal claims. The Plaintiff's Section 1983 claims in this matter constitute an attempt to seek federal review of the state's court's finding of probable case. Because the state court's determination as to probable cause is intrinsically intertwined with the plaintiff's federal claims, the Rooker-Feldman Doctrine provides that this Court lacks jurisdiction to review the

Plaintiff's claims. As a result of this Court's lack of subject matter jurisdiction over the Plaintiff's Section 1983 claims, the Defendant respectfully requests that the Plaintiff's claims be dismissed in their entirety.

## II. BACKGROUND:

### A. The Shooting of Anthony Lucky

On July 25, 1999, at approximately 1:50 a.m., Anthony Lucky, Jr. ("Lucky") was a rear passenger in a 1998 Suzuki Samurai being operated by his cousin, Albert McCann (hereinafter, "McCann"). (Complaint, ¶ 7). While in the vicinity of Columbus and Howard Avenues in New Haven, Connecticut, the Samurai came under gunfire from a passenger in a nearby Honda vehicle. (Complaint, ¶8). Lucky was struck by a bullet and died thereafter at Yale-New Haven Hospital. (Complaint, ¶9). On July 26, 1999, the Chief Medical Examiner determined that Lucky had died from a gunshot wound to the back. (Complaint, ¶11; Autopsy report, attached hereto as Exhibit C.) Ballistic tests performed by the City of New Haven Police Department concluded that a single bullet had penetrated a spare tire mounted on the tailgate of the Samurai and struck Lucky. (Complaint, ¶11).

Homicide detectives, Coppola and Rodriguez, who worked for the New Haven Police Department, were assigned to investigate the shooting death of Lucky. As part of their investigation, Rodriguez and Coppola conducted interviews of persons who may have had knowledge concerning Lucky's death and reviewed police incident reports prepared by other officers.

### B. Witness Interviews and Investigation

On November 7, 1999, Defendants interviewed Sharon Adkins. Statement of Sharon Adkins dated November 7, 1999 (Exhibit D). Adkins stated that she sold crack for DeShawn Johnson (hereinafter, "Johnson") and that Johnson worked for the Plaintiff (aka "Shabazz"). Id. at p. 5-6. Adkins indicated that McCann had stolen money and crack from Johnson. Id. at p. 8. As a result of McCann's alleged theft, Johnson told Adkins to call him if McCann came to her house. In July, 1999,[1] McCann came to her house so Adkins called Johnson from a payphone. Id. at p. 14-15. After calling Johnson, Adkins went to sell some drugs and, on her way back, she heard gunshots near her home. Id. at p. 15-17. Adkins identified Johnson, Scruggs and McCann on photoboards. Id. at p. 19-20.

Shortly after the Defendant interviewed Adkins, the Defendant's superiors, Sergeants Canning and Norwood, put Rodriguez in touch with a confidential informant (hereinafter, "Mercado"). Rodriguez interviewed this informant with Sergeants Canning and Norwood present on November 8, 1999. (Mercado Statement dated November 8, 1999 attached at Exhibit E). At the time that Mercado gave her statement, as set forth below, she claimed that she was fearful of the Plaintiff and she accepted a referral to the witness protection program. (See Witness Protection Documents attached hereto as Exhibit F).

Mercado stated that on July 20, 1999 she had been at Plaintiff's ("Shabazz") house in West Haven. (Exhibit E, at p. 3-4). Mercado indicated that she worked, selling drugs for Shabazz. While Shabazz was counting drug money, she overhead that there were some "black kids" who had stolen some of Shabazz' money. (Id. at p. 4-6). She stated that she overheard Shabazz arguing with Jose Santiago and that Shabazz said that they'd find "the kids" and hit them up or pistol whip them. (Id. at p. 7.)

On July 24, 1999,[2] Mercado was with Shabazz when he got a call from DeShawn Johnson ("Johnson") telling him that the three "kids" were on Kimberly Avenue, in the Hill Section of New

---

[1] Through a corrected report, she states that she believes that happened in July of 1999. Id. at p. 12-14 and 20.
[2] Mercado originally stated that the events occurred on September 24, 1999 but later corrected the date.

3

Haven. Id. at p. 8-10. She stated that this call came into Shabazz' cell phone and she heard the entire conversation. Id. at p. 10-11.

Later that night, in the early morning hours of July 25, 1999, while Mercado was at a payphone at the corners of Hallock Street, Columbus Avenue and Washington Street, Johnson came up to her saying that Shabazz should be there soon. Id. at p. 13-14. While waiting, a woman named Sharon called Johnson to say that the black kids who stole Shabazz' money were on the block. Id. at p. 14-15. She then stated that Johnson tried to call Shabazz to tell him that, and that Shabazz pulled up. She saw Shabazz hand Santiago a gun and Santiago then got into a guy named Willie's Honda CRX. Id. at p. 16-20. She said Johnson was driving the Honda vehicle, and that Santiago was in the passenger seat. Id. at p. 28 and 18-20.

Mercado identified the Plaintiff, Johnson, McCann and Adkins on photoboards. Id. at p. 25-27 and 23. Mercado indicated that McCann was one of the three boys who stole money from Shabazz. Id. at p. 25. She further recognized Adkins on a photoboard as the one the one who called Johnson to say the three boys were in the neighborhood. Id. at p. 27.

In a subsequent interview with Defendant, Mercado stated that on December 3, 1999, she ran into Santiago, who also goes by "BeBe," on Congress Avenue. (Mercado Statement dated December 5, 1999, attached hereto as Exhibit G). Be indicated how he had "earned his respect" by killing a [Moreno] [black] on Howard Avenue. Id. at p. 2-6. She further stated that he showed her an automatic gun and stated how he earned a teardrop tattoo.[3] Id. at p. 7, 10-11. Mercado identified Santiago on a photoboard. Id. at p. 8-9.

On or about December 4, 1999, while investigating a different murder, Rodriguez was approached by Larkland Martin ("Martin"). (See Statement of Larkland Martin dated December 4, 1999, attached hereto as Exhibit H). Martin, thereafter, provided a statement to Rodriguez. He stated that he had witnessed a shooting back on July 25, 1999. Id. at p. 2. He said he was at an

---

[3] The teardrop tattoo is generally used by gang members and drug traffickers to symbolize someone who is responsible for murder.

address on Howard Avenue when he saw a Honda vehicle with two Hispanic males and a black male. Id. at p. 2-4. He heard four to six shots and looked and saw a Hispanic male with an automatic gun shoot about three or four more times. Id. at p. 3 and 5. On photoboards, he identified Santiago as the shooter and Johnson as the driver of the Honda vehicle. Id. at p. 8-10. In a subsequent statement given on March 5, 2000, he identified the Hispanic male who was in the backseat as Efrain Mendez and said he had seen him before at a store on Howard Avenue. (See Statement of Larkland Martin dated March 5, 2000, attached hereto as Exhibit I). Rodriguez went to the window from where Larkland Martin stated that he witnessed the murder. He found the lighting and visibility conditions to be adequate to support the account given by Larkland Martin.

### C. Application for the Arrest Warrant

Based on the foregoing accounts along with other witness statements, which all appeared to be consistent with each other, Rodriguez prepared an Application for the Arrest Warrants for the Plaintiff. (See Arrest Warrant Application attached hereto as Exhibit J). The application was renewed and approved by the State's Attorney's Office and was forwarded to the court. Thereafter the warrant application was signed on January 5, 2007 by a neutral magistrate. The Plaintiff was arrested on January 8, 2007. Rodriguez was not present when the Plaintiff was arrested.

### D. Hearing in Probable Cause

The Plaintiff was charged with murder, conspiracy to commit murder and criminal use of a firearm. Because such charges can result in punishment by death or life imprisonment, the Plaintiff was given a preliminary hearing pursuant to Connecticut General Statutes § 54-46a to determine whether there is probable cause to believe that the offense charged has been committed and that there is probable cause to believe that the offense charged was committed by the Plaintiff. On or about March 1, 2001, the Plaintiff's probable cause hearing commenced. At the hearing in probable

cause, Mercado testified in a manner consistent with her earlier statements. Martin also testified in a manner consistent with his original statements. In addition to Mercado and Martin, the Court also heard testimony from Lisa Dadio, Theodore Forbes, and Edwin Rodriguez. At the hearing, the Plaintiff was represented by counsel and was given the opportunity to cross examine the prosecution's witness and offer objections to the prosecution's case and proffer evidence of his own. The opportunity to proffer was declined on the record by Plaintiff's counsel. The Court, thereafter, made a finding of probable cause.

The charges against the Plaintiff were nolled on November 15, 2001 pursuant to Connecticut General Statutes § 54-56b. (See transcript of dismissal proceedings attached hereto as Exhibit K). Subsequently, the criminal charges were dismissed on August 14, 2002. The Plaintiff commenced this action by complaint dated May 28, 2003 alleging, *inter alia*, various constitutional and state law claims against the City of New Haven, Edwin Rodriguez (hereinafter, "Rodriguez") and Stephen Coppola.[4] At the time of the events that form the basis of the Plaintiff's complaint, Rodriguez was a detective for the New Haven Police Department.

### III. LEGAL ARGUMENT:

**A. Standard of Review:** "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12 (b) (1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d. Cir. 2000), attached hereto as Appendix 1. "Motions under Rule 12 (b) (1) 'technically' should be raised before the filing of a

---

[4] On or about December 22, 2006, Edwin Rodriguez and Stephen Coppola filed a Motion for Summary Judgment, alleging that the Plaintiff failed to state a claim for relief because he could not demonstrate the absence of probable cause and that the Defendants were entitled to qualified immunity. The City of New Haven filed a similar Motion for Summary Judgment on January 22, 2007. On August 20, 2007, the Court granted the City of New Haven's Motion and Stephen Coppola's Motions for Summary Judgment and granted, in part Edwin Rodriguez's Motion for Summary Judgment. The Court granted Rodriguez's motion as to his emotional distress claims but denied Rodriguez's Motion as to the false arrest and false imprisonment claims.

responsive pleading." Wiacek Farms, LLC v. City of Shelton, 2005 WL 2850154 * 2 (D. Conn.). Notwithstanding, failure of subject matter jurisdiction is not waivable and may, therefore, be raised at any time. Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d. Cir. 2003). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. . . . In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. . . . Evidence concerning the court's jurisdiction may be presented by affidavit or otherwise." Wiacek Farms, LLC, supra, 2005 WL 2850154. The court must draw inferences in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, (1974). Dismissal is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim[s] which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir.1996).

The issue on a motion to dismiss "is not whether [the] plaintiff will prevail, but whether [it] is entitled to offer evidence to support [its] claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D.Conn.1990) (citing Scheuer, 416 U.S. at 236, 94 S.Ct. 1683). The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779, aff'd. 865 F.2d 492 (2nd Cir. 1989). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents

attached thereto as exhibits or incorporated therein by reference. See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991).

    **B.    Pursuant to the Rooker-Feldman Doctrine, this Court lacks subject matter jurisdiction over the Plaintiff's claims because a favorable ruling on his Section 1983 claims necessitates a finding that there was no probable cause, essentially vitiating the state court's findings of probable cause.**

A necessary element of all claims for false arrest, false imprisonment and malicious prosecution claims is the ability to establish that the Defendant acted without probable cause.[5] In fact, the existence of probable cause is a complete defense to claims for false arrest, false imprisonment and malicious prosecution. In this case, the Plaintiff was arrested pursuant to a warrant, which was constructed on the basis of lengthy investigation, reviewed by the prosecutor's office and then signed by a neutral magistrate. Thereafter, in light of the seriousness of the charges against the Plaintiff, the Plaintiff was afforded a hearing in probable cause. See Conn. Gen. Stat. § 54-46a. At the hearing, the court determined that there was probable cause to believe that the offense charged had been committed and that the Plaintiff has committed it. Id.. Although the Court afforded the Plaintiff the opportunity to make an offer of proof to rebut its finding of probable cause, the Plaintiff declined. (See Exhibit B, at p. 44.) The Plaintiff cannot seek to review the Court's finding of probable cause now through the federal courts.[6] Because lack of probable cause is a

---

    5 An equally important element of the Plaintiff's claims is that the underlying criminal proceeding terminated in the Plaintiff's favor. Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (2003). This is a requirement which is based upon the well-articulated policy against "parallel litigation over the issues of probable cause." Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 382 (1994). Not only can the Plaintiff fail to show a disposition in his favor, since his case was nolled as a result if missing witnesses, but the Plaintiff's pending false arrest, false imprisonment and malicious claims seek to violate this well-articulated policy against parallel repeated findings of probable cause. The Plaintiff is seeking to overturn the Superior Court's prior finding of probable cause.

    6 This Court lacks subject matter jurisdiction to entertain the Plaintiff's instant federal claims by virtue of the Rooker-Feldman doctrine and as a result of the Plaintiff's failure to exhaust the federal remedies available to him after the hearing in probable cause. Heck v. Humphrey, supra, 512 U.S. at 480-82. Specifically, the Plaintiff first failed to take the procedural opportunities available to him by failing to proffer testimony or evidence at the hearing in probable cause to dispute the Court's finding.

necessary element to the Plaintiff's claims in the instant action, the Plaintiff's current claims are intrinsically intertwined with the Superior Court's finding of probable cause. The Rooker-Feldman Doctrine prevents a plaintiff who received an unfavorable ruling in the superior state court from seeking review of the state court's decision by utilizing the federal courts and setting forth federal claims, which are intrinsically intertwined with the plaintiff's state court's ruling. Federal district courts lack subject matter jurisdiction over such claims. Because the Plaintiff's claims fit within the parameters of the Rooker-Feldman Doctrine, the Plaintiff's claims should be dismissed.

Section 1257 of Title 28 of the United States Code provides that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court." Id. Notwithstanding, there are limitations to the federal district courts' powers to review a state court judgment or ruling. One such exception is the Rooker Feldman doctrine, which represents a synthesis, of two Supreme Court decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The implication of the Rooker Feldman Doctrine is that the lower federal courts lack subject matter jurisdiction to review final decisions of lower state courts. Id. In other words, the doctrine precludes a loosing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 125 S.Ct. 151 (2005). The Rooker-Feldman bar applies when four elements exist. "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain[ ] of injuries caused by [a] state-court judgment [.]7 Third, the plaintiff must "invite[e] district court review and rejection of

---

7 The Rooker-Feldman Doctribe also applies to interlocutory decisions of state courts. See Campbell v.

[that] judgment [ ]. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced....." <u>Hoblock v. Albany County Bd of Elections</u>, 422 F.3d 77, 85 (2d. Cir. 2005).

The Rooker-Feldman Doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions, such as those current attempts by the Plaintiff to vitiate the state court's finding of probable cause. See <u>Newell v. Rolling Hills Apartments</u>, 134 F.Supp.2d 1026, 1033 (N.D.Iowa 2001). Specifically, federal district courts lack jurisdiction over any constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. <u>Feldman</u>, supra, 460 U.S. at 482 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206. An issue is regarded as inextricably intertwined if the result of analyzing the issue would have the practical effect of reversing or voiding the state court judgment. <u>Id</u>. Clearly, the Plaintiff's claims for false arrest. false imprisonment and malicious prosecution meet all four elements of Rooker-Feldman. The Plaintiff received an unfavorable ruling by the state court in that the court made a finding of probable cause, thereby subjecting the Plaintiff to incarceration and criminal trial. Moreover, the Plaintiff is inviting the district court to review and reject the state court's determination. The Plaintiff's claims, premised on false arrest, are contingent upon the Plaintiff's ability to establish that there was no probable cause to arrest him and, thus, are inextricably intertwined with the state court's finding of probable cause. Despite Judge Devlin's finding of probable cause after a hearing in probable cause, a finding which was reached after two days of testimony and argument,the Plaintiff seeks to overturn the state court's finding of probable cause , by attempting to re-litigate the issue of probable cause through the federal courts. Pursuant

---

<u>Greisberger</u>, 80 F.3d 703, 707 (2d Cir. 1996); See also <u>O'Rourke v. Krapf</u>, 2002 WL 32348933.

to the Rooker-Feldman Doctrine, the Plaintiff cannot seek review of the Superior Court's finding of probable cause because the Court lacks subject matter jurisdiction over such claims.

The Plaintiff was charged, in the underlying criminal case, with crimes punishable by death or life imprisonment. Accordingly, pursuant to Connecticut General Statutes § 54-46a the Plaintiff was afforded a hearing in probable cause, a preliminary hearing to determine whether there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. Hearings in probable cause are confined to the rules of evidence. Connecticut General Statutes § 54-46a(b). At such hearings the accused has the right to counsel and may present argument and cross examine witnesses. Id. The Court may allow the accused to make an offer of proof if the Court determines, at the close of the prosecution's case that probable cause exists. Id. Moreover, the Court may determine that the Plaintiff's offer of proof is sufficient to rebut the evidence submitted by the prosecution. Id. Although such hearings may be waived, the Plaintiff elected to have a hearing in probable cause. At that hearing, the prosecution submitted testimony and evidence consistent with the evidence set forth in the arrest warrant. The Plaintiff was given the opportunity to lodge objections and to cross examine the prosecution's witnesses, specifically Mercado and Martin. A Connecticut Superior Court Judge heard the testimony and the cross examination. He weighed the credibility of the witnesses. He drew inferences from what he heard and the credibility determinations which he necessarily made. He then exercised his discretion and the Plaintiff to proffer his own witnesses and evidence. At that time, the Plaintiff did not provide any alibi witnesses. Moreover, the Plaintiff did not present any evidence to counter the evidence set forth by the prosecution. The Court, thereafter, entered its finding of probable cause.

Probable cause exists under federal law when "the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir.1995). "In determining whether the necessary quantum of evidence existed to support a finding of probable cause, the Court is required to evaluate the totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause," United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), and a "plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." Rivera v. United States, 928 F.2d 592, 602 (2d Cir.1991). In order to mount such a challenge, the plaintiff must make a "substantial preliminary showing" that the affiant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); Golino v. City of New Haven, 950 F.2d 864, 870-71 (1991). Recklessness may be inferred where the omitted information was critical to the probable cause determination. Id., 871.

The crux of the Plaintiff's claims is that the Defendant coerced the statements of witnesses and provided false information in the arrest warrant for the Plaintiff. The Plaintiff has neither alleged, nor has the discovery of facts revealed that the same purported "taint" to the arrest warrant was present during the hearing in probable cause. For all intents and purposes, the Plaintiff's hearing in probable cause was pristine in that: (a) neutral magistrate was afforded the opportunity to

12

review the facts contained in the arrest warrant through the testimony of some of the witnesses who provided statements in connection with the arrest warrant, (b) the Plaintiff was afforded the opportunity to object to evidence and cross examine witnesses and (c) the Plaintiff was afforded the opportunity to make his own offer of proof. This was not an instance where the state court hearing entailed procedural limitations that curtailed the Plaintiff's efforts to litigate the issue of probable cause. Admittedly, courts have not afforded any presumptive effect to probable cause hearings where a plaintiff was not afforded the opportunity to present evidence. See Golino, supra 950 F.2d 864. Notwithstanding, as set forth above the Plaintiff's underlying probable cause hearing was not so limited.

    The instant matter is similar to the situation encountered in Brown v. D'Amico, 35 F.3d 97 (2d. Cir. 1994). In Brown, a special investigatory grand jury was convened to investigate the Plaintiff. Id., 98. The investigatory grand jury reviewed statements and testimony and made a finding of probable cause and sealed the record. Id. Based upon the investigatory grand jury's finding of probable cause, the Defendant obtained a warrant for the Plaintiff's arrest. Id., 98-99. The Plaintiff claimed that the Defendant had omitted certain facts from the warrant application. Id., 99. Although the Court's finding for the defendant in Brown was premised on qualified immunity the Court suggested that the finding of the investigatory grand jury of probable cause had a presumptive effect as to the existence of probable cause in the Plaintiff's federal claims. Id., 99-100. Although, the grand jury in Brown occurred *prior* to the issuance of the warrant, whereas the probable cause hearing for the Plaintiff occurred after the warrant was issued, the principles set forth in Brown should apply to the instant case. In Brown, the Plaintiff was not given the opportunity to participate in the hearing to cross examine witnesses or offer proof, such as the Plaintiff in this case.

13

Id., 98. The record upon which a Grand Jury made a finding of probable cause was independent and sealed. Id. In this case, the Plaintiff was offered the ability to participate, object, cross-examine and offer proof to rebut a finding of probable cause. Thus, in contrast to Brown, the plaintiff in this case was given full and fair opportunity to litigate probable cause at the state court level. Accordingly, the presumptive value of Judge Devlin's finding of probable cause is greater than the finding in Brown.

In light of the procedures afforded to the Plaintiff during the hearing in probable cause and in light of the absence of any allegation that the probable cause hearing, in which much the same evidence as contained in the warrant was presented, was somehow tainted, the Court's finding of probable cause should not be subject to review by the district court. The Plaintiff's Section 1983 claims meet the elements of Rooker-Feldman. Most importantly, the Plaintiff's current claims are an invitation by the district court to review and void a state court finding. In other words, the Plaintiff asks this Court to make a finding that Judge Devlin's prior finding of probable cause was improper. Because a finding in the Plaintiff's favor for his Section 1983 claims necessitates a finding that there was no probable cause to arrest the Plaintiff, such a ruling would render the state court's finding of probable cause void. The Rooker-Feldman Doctrine bars such review of state court findings which are intrinsically linked to Plaintiff's federal claims. The Plaintiff cannot seek to circumvent our rules of procedure to seek review of a state court finding by seeking relief from the federal court. Federal courts lack subject matter jurisdiction over claims which would essentially vitiate a state court's ruling which is intrinsically intertwined with the Plaintiff's federal claims.

## IV. CONCLUSION:

For the foregoing reasons, the Plaintiff's claims should be dismissed in their entirety for lack of subject matter jurisdiction.

DEFENDANT,

By  /s/ Thomas E. Katon
Thomas E. Katon
Federal Bar No. ct 01565
Susman, Duffy & Segaloff, P.C.
55 Whitney Ave.
New Haven, CT 06510
tel.: 203-624-9830
fax: 203-562-8430
email: tkaton@susmanduffy.com

### CERTIFICATION

I hereby certify that on August 8, 2008 a copy of the Defendants' Memorandum in Support of the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Thomas E. Katon
Thomas E. Katon
Federal Bar No. ct 01565
Susman, Duffy & Segaloff, P.C.
55 Whitney Ave.
New Haven, CT 06510
tel.: 203-624-9830
fax: 203-562-8430
email: tkaton@susmanduffy.com

I:\Client N-O\NHCITY\Session\Pleadings\Motion to Dismiss Rooker-Feldman clean 080808.doc