## TITLE, ALLEGATION AND COUNTS

| STATE OF CONNECTICUT VS. (Name of Accused) | G.A. NO. | DOCKET NO. | The undersigned Deputy Assistant State's Attorney of the Superior Court of the State of Connecticut on oath of office charges that said Deputy Assistant State's Attorney has reason to believe and does believe that: |
|---|---|---|---|
| SESSION, GARY | 6 | CR6-497231 | |
| ADDRESS | | | |
| 98 LEE STREET | | | |
| TO BE HELD AT (Town) | | COURT DATE | |
| NEW HAVEN | | 1-10-01 | |

| FIRST COUNT - DID COMMIT THE OFFENSE OF | | | CONTINUED TO | PURPOSE | REASON |
|---|---|---|---|---|---|
| MURDER | | | | | |
| AT (Town) | ON OR ABOUT (Date) | IN VIOLATION OF GENERAL STATUTE NO. | | | |
| NEW HAVEN | 01/04/01 | 53A-54A AND 53A-8 | | | |
| SECOND COUNT - DID COMMIT THE OFFENSE OF | | | | | |
| CONSPIRACY TO COMMIT MURDER | | 250,000 | | | |
| AT (Town) | ON OR ABOUT (Date) | IN VIOLATION OF GENERAL STATUTE NO. | | | |
| NEW HAVEN | 01/04/01 | 53A-48 (53A-54A) | | | |
| THIRD COUNT - DID COMMIT THE OFFENSE OF | | | | | |
| CRIMINAL USE OF FIREARM | | | | | |
| AT (Town) | ON OR ABOUT (Date) | IN VIOLATION OF GENERAL STATUTE NO. | | | |
| NEW HAVEN | 01/04/01 | 53A-217 | | | |

☐ SEE OTHER SHEET(S) FOR ADDITIONAL COUNTS   DATE 1/5/01   SIGNED (Deputy Asst. State's Attorney)

## COURT ACTION

750,000

INFORMATION
JD-CA-71.5 Rev. 9-98
Case 3:03-cv-00943-AWT   Document 209   Filed 08/08/2008   Page 2 of 17
STATE OF CONNECTICUT
SUPERIOR COURT
DISPOSITION DATE

## TITLE, ALLEGATION AND COUNTS

| STATE OF CONNECTICUT VS. (Name of Accused) | G.A. NO. | DOCKET NO. |
|---|---|---|
| SESSION, GARY | 6 | |

ADDRESS: 98 LEE STREET   WEST HAVEN, CT.

TO BE HELD AT (Town): NEW HAVEN

COURT DATE:

The undersigned Deputy Assistant State's Attorney of the Superior Court of the State of Connecticut on oath of office charges that said Deputy Assistant State's Attorney has reason to believe and does believe that:

| | CONTINUED TO | PURPOSE | REASON |
|---|---|---|---|
| FIRST COUNT - DID COMMIT THE OFFENSE OF CARRYING PISTOL WITHOUT PERMIT | | | |
| AT (Town): NEW HAVEN  ON OR ABOUT (Date): 01/04/01  IN VIOLATION OF GENERAL STATUTE NO. 29-35 | | | |
| SECOND COUNT - DID COMMIT THE OFFENSE OF | | | |
| AT (Town):   ON OR ABOUT (Date):   IN VIOLATION OF GENERAL STATUTE NO. | | | |
| THIRD COUNT - DID COMMIT THE OFFENSE OF | | | |
| AT (Town):   ON OR ABOUT (Date):   IN VIOLATION OF GENERAL STATUTE NO. | | | |

☐ SEE OTHER SHEET(S) FOR ADDITIONAL COUNTS

DATE: 1/5/01   SIGNED (Deputy Ass't State's Attorney): [signature]

## COURT ACTION

**INFORMATION**
JD-CR-71.5 Rev. 9-98

REQUESTED BY DET. RODRIGUEZ
CN- 99-46990

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

DISPOSITION DATE

## TITLE, ALLEGATION AND COUNTS

| STATE OF CONNECTICUT VS. (Name of Accused) | G.A. NO. | DOCKET NO. |
|---|---|---|
| SESSION, GARY | 6 | |

ADDRESS: 98 LEE STREET

TO BE HELD AT (Town): NEW HAVEN

COURT DATE:

The undersigned Deputy Assistant State's Attorney of the Superior Court of the State of Connecticut on oath of office charges that said Deputy Assistant State's Attorney has reason to believe and does believe that:

| | CONTINUED TO | PURPOSE | REASON |
|---|---|---|---|

**FIRST COUNT** - DID COMMIT THE OFFENSE OF
MURDER
AT (Town): NEW HAVEN
ON OR ABOUT (Date): 01/04/01
IN VIOLATION OF GENERAL STATUTE NO.: 53A-54A AND 53A-8

**SECOND COUNT** - DID COMMIT THE OFFENSE OF
CONSPIRACY TO COMMIT MURDER
AT (Town): NEW HAVEN
ON OR ABOUT (Date): 01/04/01
IN VIOLATION OF GENERAL STATUTE NO.: 53A-48 (53A-54A)

**THIRD COUNT** - DID COMMIT THE OFFENSE OF
CRIMINAL USE OF FIREARM
AT (Town): NEW HAVEN
ON OR ABOUT (Date): 01/04/01
IN VIOLATION OF GENERAL STATUTE NO.: 53A-217

☐ SEE OTHER SHEET(S) FOR ADDITIONAL COUNTS
DATE: 2/5/01
SIGNED (Deputy Asst. State's Attorney): [signature]

## COURT ACTION

| DEFENDANT ADVISED OF RIGHTS BEFORE PLEA (JUDGE) (DATE) | BOND | SURETY | ☐ 10% ☐ CASH | ELECTION ☐ CT ☐ JY (Date) |
|---|---|---|---|---|
| ☐ ATTORNEY  ☐ PUB. DEFENDER  GUARDIAN | BOND CHANGE | | | SEIZED PROP. INVENTORY NO. |

| COUNT | PLEA DATE | PLEA | PLEA WITHDRAWN DATE | NEW PLEA | VERDICT FINDING | FINE | REMIT | ADDITIONAL DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | $ | $ | |
| 2 | | | | | | $ | $ | |
| 3 | | | | | | $ | $ | |

| DATE | OTHER COURT ACTION | JUDGE |
|---|---|---|
| | | |

| RECEIPT NO. | COST ☐ IMP ☐ NCI | BOND INFORMATION ☐ BOND FORFEITED ☐ FORFEITURE VACATED | ☐ FORFEITURE VACATED AND BOND REINSTATED |
|---|---|---|---|
| APPLICATION FEE - RECEIPT NO. IF PAID | CIRCLE ONE W I Q | PROGRAM FEE - RECEIPT NO. IF PAID | CIRCLE ONE W I Q | PROBATION FEE - RECEIPT NO. IF PAID | CIRCLE ONE W I Q |
| STATE'S ATTY. ON ORIGINAL DISPOSITION | REPORTER/MONITOR ON ORIG. DISP. | SIGNED (Clerk) | SIGNED (Judge) |

See Back ☐

# INFORMATION
JD-CR-71.5 Rev. 9-98

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

DISPOSITION DATE

## TITLE, ALLEGATION AND COUNTS

The undersigned Deputy Assistant State's Attorney of the Superior Court of the State of Connecticut on oath of office charges that said Deputy Assistant State's Attorney has reason to believe and does believe that:

**STATE OF CONNECTICUT VS. (Name of Accused):** SESSION, GARY
**G.A. NO.:** 6
**DOCKET NO.:**

**ADDRESS:** 98 LEE STREET   WEST HAVEN, CT.

**TO BE HELD AT (Town):** NEW HAVEN

**COURT DATE:**

| | CONTINUED TO | PURPOSE | REASON |
|---|---|---|---|

**FIRST COUNT - DID COMMIT THE OFFENSE OF:** CARRYING PISTOL WITHOUT PERMIT
**AT (Town):** NEW HAVEN
**ON OR ABOUT (Date):** 01/04/01
**IN VIOLATION OF GENERAL STATUTE NO.:** 29-35

**SECOND COUNT - DID COMMIT THE OFFENSE OF:**
**AT (Town):**
**ON OR ABOUT (Date):**
**IN VIOLATION OF GENERAL STATUTE NO.:**

**THIRD COUNT - DID COMMIT THE OFFENSE OF:**
**AT (Town):**
**ON OR ABOUT (Date):**
**IN VIOLATION OF GENERAL STATUTE NO.:**

☐ SEE OTHER SHEET(S) FOR ADDITIONAL COUNTS
**DATE:** 1/5/01
**SIGNED (Deputy Ass't State's Attorney):** [signature]

## COURT ACTION

**DEFENDANT ADVISED OF RIGHTS BEFORE PLEA (JUDGE) (DATE):**
☐ ATTORNEY  ☐ PUB. DEFENDER  GUARDIAN

**BOND:**  **SURETY:**  ☐ 10%  ☐ CASH
**BOND CHANGE:**

**ELECTION (Date):** ☐ CT  ☐ JY
**SEIZED PROP. INVENTORY NO.:**

| COUNT | PLEA DATE | PLEA | PLEA WITHDRAWN DATE | NEW PLEA | VERDICT FINDING | FINE | REMIT | ADDITIONAL DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | $ | $ | |
| 2 | | | | | | $ | $ | |
| 3 | | | | | | $ | $ | |

**DATE** | **OTHER COURT ACTION** | **JUDGE**

**RECEIPT NO.:**
**COST:** ☐ IMP  ☐ NCI
**BOND INFORMATION:** ☐ BOND FORFEITED  ☐ FORFEITURE VACATED  ☐ FORFEITURE VACATED AND BOND REINSTATED

**APPLICATION FEE - RECEIPT NO. IF PAID:**  **CIRCLE ONE:** W  I  Q
**PROGRAM FEE - RECEIPT NO. IF PAID:**  **CIRCLE ONE:** W  I  Q
**PROBATION FEE - RECEIPT NO. IF PAID:**  **CIRCLE ONE:** W  I  Q

**STATE'S ATTY. ON ORIGINAL DISPOSITION:**  **REPORTER/MONITOR ON ORIG. DISP.:**  **SIGNED (Clerk):**  **SIGNED (Judge):**

See Back ☐

| ARREST WARRANT APPLICATION<br>JD-CR-64 Rev. 7-96<br>C.G.S. § 54-2a<br>Pr. Bk. Sec. 593, 593A, 594 | STATE OF CONNECTICUT<br>SUPERIOR COURT | FOR COURT USE ONLY<br>Supporting Affidavits Sealed<br>☐ YES  ☐ NO |
|---|---|---|

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT | G.A. NO. |
|---|---|---|
| Session, Gary  98 Lee Street  West Haven  CT  DOB: 3/11/66 | New Haven | 6 |

| POLICE DEPARTMENT | CASE NO | AFFIANT |
|---|---|---|
| New Haven PD | 99-46990 | Det. Edwin Rodriquez 0444 |

## APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the ...

[X] affidavit below...    [ ] affidavit(s) attached.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (Prosecutorial Official) |
|---|---|---|

PAGE 1                                              AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

1. The undersigned, Det. Edwin Rodriguez, being duly sworn, does depose and state that he is a member of the New Haven Police Department since January 24, 1992. At all times mentioned herein I was acting as a member of said department. The following facts and circumstances are stated from personal knowledge and observations as well as information received from other police officers acting in their official capacity and from official police reports and statements made by prudent and credible witnesses.

2. On July 25, 1999 at approximately 1:13 a.m. members of the New Haven Police Departments patrol division notified dispatch that they heard six to eight gunshots coming from the area of Howard Av. and Rosette St. Seconds later patrol officers notified dispatch that they were behind a Red Suzuki Samurai bearing CT- reg. 472- HSK, which was being operated in a reckless manner a short distance from where the gunshots were heard. The vehicle was pulled over at College St. and South Frontage Rd. Once stopped the officers had two subjects Albert McCann and Juan Scruggs exit the vehicle. The third subject Anthony Lucky who was in the rear of the vehicle did not comply with the Officers command, because he was suffering from a single gunshot to the stomach area.

3. Lucky was treated at the scene by medical personal and eventually transported to 20 York St. (Yale New Haven Hospital) where he received further medical treatment. At 2:30 a.m. Dr. Spector of the emergency unit pronounced Anthony Lucky expired. On July 26, 1999 Associate Medical Examiner Dr. Malka B. Shah determined that the gunshot wound sustained by Anthony Lucky entered from back to front, steeply upward, without any deviation, and was certified as the cause of death. The manner of death was ruled as homicide.

| DATE & SIGNATURE | DATE Thu, Jan 04, 2001 | SIGNED (Affiant) Det. Edwin Rodriquez 0444 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) Thu, Jan 4, 2001 | SIGNED (Judge, Clerk, Comm. Sup, Notary Pub.) |

**FINDING**

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (A Judge of the Superior Court) |
|---|---|---|

| ARREST WARRANT APPLICATION<br>JD-CR-64 Rev. 7-96<br>C.G.S. § 54-2a<br>Pr. Bk. Sec. 593, 593A, 594 | STATE OF CONNECTICUT<br>SUPERIOR COURT | FOR COURT USE ONLY<br>Supporting Affidavits Sealed<br>☐ YES  ☐ NO |
|---|---|---|

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT | G.A. NO. |
|---|---|---|
| Session, Gary  98 Lee Street  West Haven  CT  DOB: 3/11/66 | New Haven | 6 |

| POLICE DEPARTMENT | CASE NO | AFFIANT |
|---|---|---|
| New Haven PD | | Det. Edwin Rodriquez 0444 |

### APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the ...

[X] affidavit below...  [ ] affidavit(s) attached.

| DATE & SIGNATURE | DATE | SIGNED (Prosecutorial Official) |
|---|---|---|
| | [signature] | 1/5/01 |

**PAGE 2**                                                                                   **AFFIDAVIT**

The undersigned, being duly sworn, deposes and says:

4. During a canvas of the interior of the Suzuki Samurai officers located a 380. cal Berretta semi automatic handgun which was located under the passenger seat of the vehicle. It was at that time Scruggs and McCann were placed under arrest. McCann and Scruggs told officers at the scene that the shooting occurred at the intersection of Howard Av and Columbus Ave.

5. Det. L. Dadio of the Identification Unit ( B of I ) responded to the intersection of Howard Avenue and Columbus Avenue. Det. Dadio report stated that 9 mm spent casings were located at the intersection of Howard Av and Columbus Av. and 380. cal casings on Columbus Av. Also located was three projectiles taken from the interior and exterior of 615 Howard Av. ( Bernie's Pharmacy ), which is located at aforementioned intersection.

6. On July 25, 1999 at approximately 8:39 a.m. Juan Scruggs supplied Det. S. Coppola and this affiant with a audio taped statement regarding the shooting of Anthony Lucky. During the statement Scruggs stated that he McCann and Lucky were traveling eastbound on Columbus Av. in the red Suzuki Samurai. Scruggs stated that he was in the front passenger side of the vehicle, Lucky was in the rear, and McCann was the operator. While traveling eastbound on Columbus Av. Scruggs noticed a blue Honda behind them. The Honda then pulled up along the left side of them and proceeded to cut them off. Scruggs stated that they then pulled along the side of the Honda, at the light located at the intersection of Howard Av. and Columbus Av. It was at that time McCann and the operator of the Honda had words.

| DATE & SIGNATURE | DATE<br>Thu, Jan 4, 2001 | SIGNED (Affiant)<br>Det. Edwin Rodriquez 0444 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date)<br>Thu, Jan 4, 2001 | SIGNED (Judge, Clerk, Comm. Sup./Notary Pub.) |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE<br>1/5/01 | SIGNED (A Judge of the Superior Court) |
|---|---|---|

| ARREST WARRANT APPLICATION<br>JD-CR-64 Rev. 7-96<br>C.G.S. § 54-2a<br>Pr. Bk. Sec. 593, 593A, 594 | STATE OF CONNECTICUT<br>SUPERIOR COURT | FOR COURT USE ONLY<br>Supporting Affidavits Sealed<br>YES ☐  NO ☐ |
|---|---|---|

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT | G.A. NO. |
|---|---|---|
| Session, Gary  98 Lee Street  West Haven  CT  DOB: 3/11/66 | New Haven | 6 |

| POLICE DEPARTMENT | CASE NO | AFFIANT |
|---|---|---|
| New Haven PD | 99-46990 | Det. Edwin Rodriquez 0444 |

## APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the ...

[X] affidavit below...   [ ] affidavit(s) attached.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (Prosecutorial Official) [signature] |
|---|---|---|

**PAGE 3**                                                                                    **AFFIDAVIT**

The undersigned, being duly sworn, deposes and says:

7. Once the light turned green Scruggs stated that they drove through the intersection and continued east on Columbus Av. Scruggs stated that the Honda took a left turn northbound onto Howard Av. It was at that time the Passenger of the Honda began firing at them. Scruggs then took the weapon contained within the Suzuki, and tried to release the safety, in doing so, the weapon fired within the vehicle. Scruggs then reached across McCann, pointed the weapon out of the window and fired two more shots at the Honda. Shortly thereafter Lucky stated " I'm hit , I can't breathe " . McCann then made an attempt to take Lucky to the hospital but he missed the street because he was nervous. A short time later they were stopped by the police.

8. On July 25,1999 at approximately 10 00 a.m. Albert McCann Supplied Det. S. Coppola and this affiant with a audio taped statement. During his statement McCann also confirmed that while driving eastbound on Columbus Av. they were cut off by a blue Honda. McCann also stated that after they met the Honda at the intersection, McCann and the driver of the Honda exchanged words. McCann then heard the driver of the Honda tell the passenger " 's under the seat, get it " . It was at that time McCann proceeded eastbound on Columbus Av. As the Honda began to turn left onto Howard Av. McCann saw the passenger of the Honda point a weapon out of the window, and fire shot's at them. McCann then confirmed that Scruggs then asked him for the heat ( gun ) . McCann then told Scruggs that the weapon was under the drivers seat. Scruggs then grabbed the weapon and fired two / three shots out of the drivers side window. Once the shooting stopped McCann heard Lucky say " I been hit I been hit in the back " . McCann then made an attempt to take Lucky to the hospital but drove past the hospital. Shortly thereafter he was stopped by the police.

| DATE & SIGNATURE | DATE Thu, Jan 4, 2001 | SIGNED (Affiant) Det. Edwin Rodriquez 0444 [signature] |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) Thu, Jan 4, 2001 | SIGNED (Judge, Clerk, Comm Sup, Notary Pub.) [signature] |

**FINDING**

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (A Judge of the Superior Court) [signature] Thompson |
|---|---|---|

©1998 Hanahan Computer Designs LLC

| ARREST WARRANT APPLICATION<br>JD-CR-64 Rev. 7-96<br>C.G.S. § 54-2a<br>Pr. Bk. Sec. 593, 593A, 594 | STATE OF CONNECTICUT<br>SUPERIOR COURT | FOR COURT USE ONLY<br>Supporting Affidavits Sealed<br>[ ] YES [ ] NO |
|---|---|---|

| NAME AND RESIDENCE (Town) OF ACCUSED<br>Session, Gary  98 Lee Street  West Haven  CT  DOB: 3/11/66 | COURT TO BE HELD AT<br>New Haven | G.A. NO.<br>6 |
|---|---|---|

| POLICE DEPARTMENT<br>New Haven PD | CASE NO<br>99-46990 | AFFIANT<br>Det. Edwin Rodriquez 0444 |
|---|---|---|

## APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the ...

[X] affidavit below...   [ ] affidavit(s) attached.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (Prosecutorial Official) |
|---|---|---|

PAGE 6

### AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

13. On November 7, 1999 Sharon Adkins supplied Det.S.Coppola and this affiant with a taped statement regarding the homicide of Anthony Lucky. Adkins stated that during the summer of 1999 she was selling ( Crack ) cocaine from her apartment located at 246 Columbus Av. Adkins stated that she worked for three black males who were known to her as Shawn, E, and Black. Adkins stated that she was told by a fourth subject ( Bono ) that Shawn, and E had gotten into a dispute over some monies and drugs. Adkins stated that several days later she ran into Shawn and he told her that if she sees ( E ) to call him. Adkins went on to state that on the night of the shooting ( E ) came by her house to see if she had any work ( Drugs ).

14. Adkins then left her apartment with her friend Doris and walked to the pay phone at Liberty St. and Carlisle St. Adkins then called Shawn and told him that she needed to see him, and that ( E ) was at her apartment. Shawn told her that he would come right over her apartment. Adkins stated that she then left the Church St. South Housing Complex and as they walked up Portsea St. she heard approximately eight to nine gunshots.

15. Prior to the taped statement Adkins was afforded the opportunity to view three separate photo array's. Each photo array consisted of eight black male subjects all similar in appearance. While viewing the first photo array Adkins immediately identified photograph #4 a Shawn. Photograph # 4 is identified as Deshawn Johnson DOB 02/22/76. While viewing the second photo array Adkins immediately identified photograph # 8 as Budda. Photograph # 8 is identified as Juan Scruggs DOB 09/25/82. While viewing the third photo array Adkins immediately identified photograph # 3 as ( E ) the same person who stole drugs and monies from Shawn. Photograph # 3 is identified as Albert McCann DOB 03/01/80. Adkins signed and dated each photograph she identified.

| DATE & SIGNATURE | DATE<br>Thu, Jan 4, 2001 | SIGNED (Affiant)<br>Det. Edwin Rodriquez 0444 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date)<br>Thu, Jan 4, 2001 | SIGNED (Judge, Clerk, Comm. Sup. Notary Pub.) |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE  1/5/01 | SIGNED (A Judge of the Superior Court) |
|---|---|---|

©1998 Hanahan Computer Designs LLC

| ARREST WARRANT APPLICATION<br>JD-CR-64 Rev. 7-96<br>C.G.S. § 54-2a<br>Pr. Bk. Sec. 593, 593A, 594 | STATE OF CONNECTICUT<br>SUPERIOR COURT | FOR COURT USE ONLY<br>Supporting Affidavits Sealed<br>☐ YES  ☐ NO |
|---|---|---|

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT | G.A. NO. |
|---|---|---|
| Session, Gary  98 Lee Street  West Haven  CT  DOB: 3/11/66 | New Haven | 6 |

| POLICE DEPARTMENT | CASE NO | AFFIANT |
|---|---|---|
| New Haven PD | 99-46990 | Det. Edwin Rodriquez 0444 |

## APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the ...

[X] affidavit below...    [ ] affidavit(s) attached.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (Prosecutorial Official) |
|---|---|---|

PAGE 7

### AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

16. On December 04, 1999, at approximately 7:50 p.m. CI-2 supplied Det. Velleca and this affiant with a statement regarding the homicide of Anthony Lucky. CI-2 stated that during the early morning hours on July 25, 1999 CI-2 was in the third floor apartment at 630 Howard Av. CI-2 then heard approximately four to six gunshots coming from the exterior of the dwelling. CI-2 then looked out of the window and clearly saw what was believed to be a four door green Honda. CI-2 stated that an African American subject was on the drivers side of the vehicle, and two Hispanic male subjects were outside of the vehicle. CI-2 stated that one of the Hispanic male subject was firing a handgun at a Red Jeep which was at the corner of Columbus Av and Howard Av. After firing the handgun all three subjects fled in a green Honda southbound on Howard Av.

17. Prior to the taped statement CI-2 viewed two separate photo array's. While viewing the first photo array CI-2 identified Jose Santiago DOB 05/24/83 as one of the Hispanic Male subjects who was outside of the Honda, and the same Hispanic male who was firing the handgun at the Red Jeep. While viewing the second photo array CI-2 identified Deshawn Johnson DOB 02/22/76 as being the African America male subject who was driving the green Honda type vehicle. Both photos identified by CI-2 were signed and dated.

| DATE & SIGNATURE | DATE Thu, Jan 4, 2001 | SIGNED (Affiant) Det. Edwin Rodriquez 0444 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) Thu, Jan 4, 2001 | SIGNED (Judge, Clerk, Comm. Sup. Notary) Sgt. John Velleca #441 |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (A Judge of the Superior Court) Bruce W. Thompson |
|---|---|---|

ARREST WARRANT APPLICATION
JD-CR-64 Rev. 7-98
C.G.S. § 54-2a
Pr. Bk. Sec. 593, 593A, 594

Case 3:03-cv-00943-AWT    Document 205-3    Filed 08/08/2008    Page 10 of 17

STATE OF CONNECTICUT
SUPERIOR COURT

FOR COURT USE ONLY
Supporting Affidavits Sealed
☐ YES  ☐ NO

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT | G.A. NO. |
|---|---|---|
| Session, Gary  98 Lee Street  West Haven  CT  DOB: 3/11/66 | New Haven | 6 |

| POLICE DEPARTMENT | CASE NO | AFFIANT |
|---|---|---|
| New Haven PD | 99-46990 | Det. Edwin Rodriquez 0444 |

## APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the ...

[X] affidavit below...   [ ] affidavit(s) attached.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (Prosecutorial Official) |
|---|---|---|

PAGE 9

## AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

21. On March 16, 2000, members of the Central District Major Crime Squad assisted the New Haven Police Department with the reconstruction of the Anthony Lucky homicide. The reconstruction was conducted on the vehicle which contained the victim, the 1988 Suzuki Samurai Ct reg.- 472HSK two door convertible sport utility vehicle. The examination of the vehicle and subsequent reconstruction took place at the New Haven police Department Training Academy on Sherman Parkway. The examination of the exterior of the vehicle revealed only the single bullet strike in the rear of the vehicle that was previously located by New Haven Investigators. Based on the examination of the appearance of the strike it was apparent to investigators that the projectile was fired from outside the vehicle. An examination of the interior of the vehicle revealed no additional strikes in the interior of the vehicle.

22. A record check was conducted on Gary Session ( 03/11/66 ) which revealed that he has numerous felony convictions, to include carrying a pistol without a permti and multiple narcotic violations, Also, a check of NHPD records revealed that Gary Session ( 03/11/66 ) does not posses a valid pistol permit.

23. Wherefore: the undersigned believes that probable cause does exist to believe that Gary Session ( 03/11/66 ) did Commit the crimes of Murder, Conspiracy to Commit murder, Criminal possession of a firearm, and carrying a pistol without a permit in violation of Sec. 53a-54, and 53a-8, 53a-48(53a-54a, ),53a-217 and 29-35, respectively, of the C.G.S.

| DATE & SIGNATURE | DATE Thu, Jan 4, 2001 | SIGNED (Affiant) Det. Edwin Rodriquez 0444 |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) Thu, Jan 4, 2001 | SIGNED (Judge, Clerk, Comm. Sup. Notary Pub.) Sgt. John Williams #441 |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 1/5/01 | SIGNED (A Judge of the Superior Court) Bruce W. Thompson |
|---|---|---|

©1998 Hanahan Computer Designs LLC

# APPENDIX

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2850154 (D.Conn.)
**2005 WL 2850154 (D.Conn.)**

Page 1

C

Wiacek Farms, LLC v. City of Shelton
D.Conn.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
WIACEK FARMS, LLC, Plaintiff,
v.
CITY OF SHELTON, Mark Lauretti, Robert Kulacz, John Anglace, and Thomas Dingle, Defendants.
No. Civ. 304CV1635JBA.

Oct. 28, 2005.

Thomas E. Minogue, Jr., Minogue Birnbaum, New Canaan, CT, for Plaintiff.
Kevin Michael Tighe, Thomas R. Gerarde, Howd & Ludorf, Hartford, CT, for Defendants.

*RULING ON DEFENDANTS' MOTION TO DISMISS [DOC. # 35]*

ARTERTON, J.

*1 Plaintiff Wiacek Farms, LLC ("Wiacek"), a landowner seeking to develop a subdivision, brings a federal question lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343 against the City of Shelton, Connecticut; its Mayor, Mark Lauretti; its City Engineer, Robert Kulacz; the President of the Shelton Board of Aldermen, John Anglace; and Shelton's zoning enforcement officer, Thomas Dingle. *See* Amended Complaint [Doc. # 31]. Plaintiff alleges that defendants have illegally interfered with Wiacek's development of a 41-acre parcel in Shelton, in violation of its rights to substantive due process (Count One), procedural due process (Count Two), and equal protection of the laws (Count Three), as implemented through 28 U.S.C. § 1983 (Count Four). Plaintiff also brings supplemental state law claims for promissory estoppel (Count Five), breach of the implied duty of good faith and fair dealing (Count Six), and tortious interference with plaintiff's contracts and business expectancies (Count Seven). Defendants have moved to dismiss all the claims for lack of subject matter jurisdiction, under Fed.R.Civ.P. 12(b)(1), on the grounds that plaintiff's complaint is not ripe for adjudication. *See* Mot. to Dismiss [Doc. # 35]. For the reasons that follow, defendants' motion will be granted.

I. FACTUAL BACKGROUND

The Amended Complaint alleges the following facts. Wiacek owns approximately 41 acres of land in Shelton, which it hopes to develop into a 24-lot subdivision. Am. Compl. ¶ 11. It submitted a subdivision plat to the Shelton Planning and Zoning Commission on October 31, 2003, which was preliminarily approved on March 9, 2004. *Id.* at ¶¶ 11-12.On July 22, 2004, Wiacek posted the required subdivision bonds with the City, and the Commission approved the final subdivision map, which was filed on the Shelton land records. *Id.* ¶ 13.

Wiacek alleges that on August 6, 2004, defendant Anglace, President of the Shelton Board of Aldermen, announced in the *Connecticut Post* that the "Board had 'recently authorized' the defendant Mayor Lauretti to attempt to purchase Wiacek's property on behalf of the City of Shelton, and failing that attempt 'to commence condemnation proceedings.' "*Id.* at ¶ 14.According to the article, the City desired to add the property to its current high school complex. *Id.* Mayor Lauretti then "met with representatives of Wiacek to discuss the possible purchase by the City of twenty (20) lots in the approved 24 lot subdivision. The next day, August 31, 2004, Wiacek's representatives informed the City that Wiacek was unwilling to sell a portion of the approved subdivision to the City upon the terms suggested by the Mayor."*Id.* at ¶ 15.

Immediately thereafter, Wiacek attempted to begin construction. On September 9, 2004, Wiacek submitted an application for an excavation permit to

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

the City Engineer, John Kulacz, to install water, gas, telephone, electric or "CATV building service" and to build "new roads known as Wiacek Farm Road and Cecelia Lane."*Id.* at ¶ 17. Wiacek's subcontractor submitted a similar permit the same day. The complaint alleges that "defendant Kulacz refused to approve the Applications or to issue the ... excavation permits stating arbitrarily and without any legal authority that said Applications 'must be approved by Mayor's office.'"*Id.* at ¶ 22. Kulacz stated that the "Mayor, defendant Lauretti, had ordered him (Kulacz) not to issue any permits to the Plaintiff for the property and to direct any inquiries regarding the Property to the Mayor's ... Office."*Id.* at ¶ 23.

*2 Plaintiff alleges that the Zoning Enforcement Officer, defendant Dingle, then posted "stop work orders" on the property for violations of the building, zoning, or wetland regulations, but that these violations never existed and the City never served Wiacek with a "cease and desist" order. *Id.* at ¶¶ 24-25. Plaintiff also alleges that he was not given an opportunity to be heard before the posting of the "stop work" orders. *Id.* at ¶ 33.

In January 2005 the City commenced a "condemnation action" against 35.99 acres of Wiacek's property, *id.* at ¶ 27, and Wiacek's motion for a preliminary and permanent injunction to halt the eminent domain proceedings was denied by the Connecticut Superior Court approximately three months later. *Wiacek Farm, LLC v. City of Shelton,* No. CV054002169S, 2005 WL 1023152 (Conn.Super.Ct. Mar.30, 2005).[FN1] The complaint does not state whether plaintiff appealed this ruling, nor does it indicate the current status of the eminent domain proceeding.

> FN1. In this injunction action plaintiff raised similar allegations of arbitrary and capricious action and bad faith on the part of the mayor and other officials in taking Wiacek's property through eminent domain.*Wiacek Farm, LLC v. City of Shelton,* No. CV054002169S, 2005 WL 1023152 at

*2-3 (Conn.Super.Ct. Mar.30, 2005). Specifically, Wiacek argued that Shelton officials violated the requirement of Conn. Gen.Stat. § 48-6 permitting a city to take property by eminent domain only if it cannot agree with the owner on the amount to be paid. *Id.* at *2. The Superior Court found that the City's attempt to negotiate did not "constitute bad faith or pretext." *Id.* Although the bad faith allegations in the present case are similar, defendants have not raised the issue of collateral estoppel in their answer.

In fact, in this case plaintiff does not challenge defendants' actions under the Takings Clause of the Fifth Amendment. Rather, plaintiff alleges that he was denied substantive due process because defendants' actions prior to the initiation of eminent domain proceedings were "without discernable standards or legal justification, irrational, arbitrary, capricious, and ... motivated by political concerns."*Id.* at ¶ 30. Plaintiff alleges that the "stop work" orders were issued "without legal justification and without sufficient, due and fair process," in violation of procedural due process principles. *Id.* at ¶ 33. Finally, plaintiff alleges a "class of one" Equal Protection claim, on the grounds that he was treated "selectively and differently from others who sought to develop similar projects in Shelton,""because of a stated desire of the City of Shelton to take the property for its own purposes, which motive is impermissible and unrelated to a legitimate government objective."*Id.* at ¶¶ 35, 38.

Defendants filed an Answer and Affirmative Defenses [Doc. # 7] to the original Complaint on December 17, 2004, and the present motion to dismiss the Amended Complaint on June 29, 2005.

II. STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

power to adjudicate it."*Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Motions under Rule 12(b)(1) "technically" should be raised before the filing of a responsive pleading. *Elvig v. Calvin Presbyterian Church,* 375 F.3d 951, 955 n. 2 (9th Cir.2004). However, under Rule 12(h)(3), the issue of the Court's subject matter jurisdiction may be raised at any time: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."Fed.R.Civ.P. 12(h)(3)."The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party. For purposes of this case, the motions are analytically identical because the only consideration is whether subject matter jurisdiction arises."*Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874, 879 n. 3 (3d Cir.1992) (internal citation omitted). Thus the Court may consider defendants' motion in the present case "because the issue of jurisdiction can be raised any time during the proceedings."*Gonzalez v. Rubin,* 225 F.3d 662 (9th Cir.2000) (unpublished).

*3 "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."*Makarova,* 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996) ("The burden of proving jurisdiction is on the party asserting it.")). In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *Id.* Evidence concerning the court's jurisdiction "may be presented by affidavit or otherwise."*Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

III. DISCUSSION

Defendants challenge plaintiff's complaint on the grounds that it is unripe for review in federal court. "Ripeness is a jurisdictional inquiry" because it "is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 347 (2d Cir.2005).

The Supreme Court first set forth the ripeness test for land use cases in *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), which involved a Takings Clause challenge to a local planning commission's refusal to approve a subdivision in the form requested by a developer. The Supreme Court refused to uphold a jury verdict in the developer's favor because the developer had "not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation ..."*Id.* at 186.Thus, *Williamson* established a two-prong test in Takings Clause cases. First, because a plaintiff in a regulatory takings case must establish that he/she has "been denied all reasonable beneficial use of the property," the plaintiff must show that he/she has pursued all necessary steps to obtain a final determination from the relevant land use authorities, including requesting variances, where available. *Id.* at 190.Second, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause," and therefore a plaintiff's claim is not ripe until he/she has sought and been denied compensation through available state procedures. *Id.* at 195.

The *Williamson* test subsequently has been applied to substantive and procedural due process and equal protection claims. *See,e.g.,Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83 (2d Cir.2002) (procedural and substantive due process and equal protection); *Southview Assocs., Ltd. v. Bonqartz,* 980 F.2d 84 (2d Cir.1992) (substantive due process); *cf.Norton v. Town of Islip,* 239 F.Supp.2d 261 (E.D.N.Y.2003) (ripeness test applied only to substantive but not procedural due process claim where the two claims challenged different governmental actions).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*4 As the Second Circuit clarified in *Southview,* however, with respect to "substantive due process claim[s] premised on arbitrary and capricious government conduct, ... only the final decision prong of the *Williamson* ripeness test" applies. *Southview,* 980 F.2d at 96-97. Such claims are distinguished from Fifth Amendment claims that the state has taken its police powers "too far" in regulating land use, which are subject to both prongs of the ripeness test. *Id.* The plaintiff in *Southview* challenged a decision of environmental permitting authorities, upheld by the Vermont Supreme Court, denying an application to develop a certain portion of forested land near a ski mountain. The decision, however, left open other portions of the lot to development. The plaintiff alleged a regulatory takings claim as well as a substantive due process claim premised on arbitrary and capricious action by the Vermont regulators. The Second Circuit held that the "arbitrary and capricious government conduct" claim was not ripe because Southview had not yet submitted alternative proposals for consideration, and "[u]nless a court has a final decision before it, it cannot determine ... whether the government conduct was arbitrary or capricious."*Id.* at 97 (citing *Landmark Land Co. v. Buchanan,* 874 F.2d 717, 722 (10th Cir.1989)).

Relying on *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), the Second Circuit in *Southview,* 980 F.2d at 98, recognized a futility exception to the final decision rule. This exception was expanded in *Murphy,* 403 F.3d at 349, which held that "a property owner need not pursue [variance] applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied."

Wiacek argues that in this case there was a final decision because its subdivision plan was fully and finally approved by the Shelton Planning and Zoning Commission. Pl. Mem. of Law in Opp. [Doc. # 37] at 13.FN2Plaintiff, however, is not challenging in this case the procedures surrounding approval of the subdivision plan. As plaintiff acknowledges, *see* Pl. Mem. of Law in Opp. at 14, the complaint is directed to the actions of defendants Kulacz and Dingle, who denied excavation permits and issued "stop work" orders, respectively, after the subdivision plan was approved, and Mayor Lauretti, who allegedly ordered Kulacz to deny the excavation permits and masterminded the halt of construction in order to obtain the land for the high school. Therefore, the issue is whether the decisions of these individuals constituted final land use decisions within the meaning of *Williamson.*

> FN2. Defendants respond that the Commission's approval was only conditional, but have not submitted evidence in support of this assertion, despite the fact that a Court may examine facts outside the pleadings when determining subject matter jurisdiction.

Under state law, plaintiff had a right to *de novo* review by the Shelton Zoning Board of Appeals of defendant Dingle's issuance of the "stop work" orders, which were based on alleged violations of planning and zoning regulations.Conn. Gen.Stat. § 8-7 (Zoning Board of Appeals may hear appeal of any "order, requirement or decision of the official charged with the enforcement of the zoning regulations ... [including] any such order ... which prohibits further construction ..."); *Murphy,* 402 F.3d at 352 (citing *Caserta v. Zoning Bd. of Appeals,* 226 Conn. 80, 90, 626 A.2d 744, 748 (1993) (Zoning Board of Appeals is required to hold a *de novo* hearing "to find the facts and to apply the pertinent zoning regulations to those facts.")).

*5 Defendants have proffered the affidavit of defendant Kulacz, who states:

In my role as City Engineer, I act as the designee of the Director of Public Works of the City of Shelton when I review, and either grant or deny, applications for excavation permits.

Applicants who have had their applications for ex-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

cavation permits denied may appeal such denial to the Director of Public Works.

Kulacz Aff., ¶¶ 5-6, Def. Mem. of Law [Doc. # 36], Ex. B. The affidavit gives no meaning to "may appeal," and cites to no authority showing that an applicant who is denied an excavation permit has an appeal as of right to the Director of Public Works. Defendants have proffered no written regulations or administrative guidelines setting out any appeal process from such denial, to which plaintiff would be entitled.[FN3]

> FN3. The Court notes that Shelton's Planning and Zoning Commission has promulgated detailed guidelines for the development and approval of subdivisions, *Subdivision Regulations of the City of Shelton, Connecticut,* available at http://www.cityofshelton.org/gengov/pdf/subdivregs.pdf (last visited 10/26/05), but the Department of Public Works does not appear to have promulgated written guidelines for the issuance or appeal from the refusal to issue excavation permits. *See Inside Public Works: Engineering,* available at http://www.cityofshelton.org/publicwrks/engineer.htm (last visited 10/26/05).

However, plaintiff alleges that a "stop work" order from the Planning and Zoning Commission halts all construction, *see* Am. Compl. ¶ 24, and thus even if Kulacz had issued the excavation permit, it would be of no effect after the "stop work" order was posted. Therefore the outcome of plaintiff's appeal of the "stop work" order to the Zoning Board of Appeals also will determine whether the excavation permit could issue, and plaintiff's failure to obtain a final decision from the Zoning Board of Appeals is dispositive of this case.

Plaintiff has proffered no evidence that the challenged "stop work" orders were not appealable. Nor does plaintiff argue that appeal would have been futile, or merely supervisory rather than *de*

Rather, plaintiff argues that because it has removed its "pure" takings clause claim from the complaint, it has satisfied the ripeness prerequisite because defendants' decisions to deny the requested decisions occurred subsequent to the final approval of the subdivision plan.

Plaintiff's argument misses the mark because, despite its efforts to plead around the *Williamson* requirements, the essence of its due process claim is that defendants intentionally delayed Wiacek's construction project by denying the requested excavation permits and issuing the "stop work" orders. The crux of the equal protection claim is, likewise, that other similarly-situated landowners were not required to obtain the mayor's approval before the award of excavation permits. Wiacek's complaint therefore focuses on whether the requested permits should have issued and other construction work allowed to proceed. Under *Williamson,* this type of challenge to local regulatory action only may be brought to federal court after a plaintiff has pursued available appeals or other remedies, and obtained a final decision.

As the Second Circuit explained, four considerations "undergird [*Williamson* ] prong-one ripeness." *Murphy,* 402 F.3d at 348.

First ... requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record. Second, and relatedly, only if a property owner has exhausted [all remedies] will a court know precisely how a regulation will be applied to a particular parcel. Third [the appeal] might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes.... Finally, since *Williamson County,* courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2850154 (D.Conn.)
**2005 WL 2850154 (D.Conn.)**

Page 6

*6 *Id.* These considerations provide persuasive justification for refusing to entertain Wiacek's constitutional challenges to the actions of various Shelton officials relating to its construction project until Wiacek can show that it has obtained a "final decision" from appropriate regulatory authorities. Wiacek's current Amended Complaint is not ripe for review.

Having decided that the Court lacks subject matter jurisdiction over plaintiff's constitutional claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c) ( "The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...").

IV. CONCLUSION

Accordingly, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction [Doc. # 35] is GRANTED and the complaint is DISMISSED WITHOUT PREJUDICE. The Clerk is directed to close this case.

IT IS SO ORDERED.

D.Conn.,2005.
Wiacek Farms, LLC v. City of Shelton
Not Reported in F.Supp.2d, 2005 WL 2850154 (D.Conn.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.