# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

......................................................

GARY SESSION,
      Plaintiff

CIVIL ACTION NO.
303-CV- 00943 (AWT)

V.

EDWIN RODRIGUEZ, ET AL.
      Defendants

AUGUST 19 , 2008

......................................................

## MOTION FOR RELIEF

Counsel for the defendant has been consulted in the instant matter and objects.

The plaintiff respectfully moves the Court, pursuant to Federal Rule Civil Procedure

60(b)(2) , 60(b)(3) and 60(b)(6), for an order setting aside the summary judgments entered in this

action on August 20, 2007 and September 28, 2007, granting summary judgment to Defendants,

Officer Coppola and City of New Haven, respectively.  Plaintiff hereby seeks to reinstate said

Defendants to the instant case.  Plaintiff further seeks to have his emotional distress claims and

equal protection claims restored.

## CASE HISTORY

1.  This is an action for false arrest and malicious prosecution pursuant to 28 U.S.C. §

1983, in addition to common law causes of action for false imprisonment and malicious

prosecution, intentional infliction of emotional distress, and negligent infliction of emotional

distress. Plaintiff claims that Defendant Rodriguez and former Defendants Coppola and City of

1

New Haven, willfully misrepresented statements and submitted them, for the Judge to sign, as part of a false and misleading arrest warrant affidavit, based on witness statements which the Defendants Rodriguez and Coppola knew to be false or the product of threats and/or coercion. Plaintiff claims, as against the Defendant City of New Haven that, through its agents or employees the Defendants Rodriguez and Coppola acted with wanton, reckless or malicious disregard for Plaintiff's constitutional rights. In the manner described above, the City of New Haven deprived the Plaintiff of his right to be free from false imprisonment and prosecution and free from summary punishment. The Defendant City of New Haven deprived the Plaintiff of property without due process of law and otherwise deprived him of due process and equal protection of the laws. All of these rights are secured by the Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983.

As a result of Defendants' actions and inactions, Plaintiff was arrested for murder and was incarcerated for nearly a year, before charges against him were nolled unilaterally by the prosecutor, without Mr. Session's having requested it, and without arrangement with Mr. Session or his counsel.

2. A crucial claim in this case was that defendants, City of New Haven and Officer Coppola were erroneously granted Summary Judgment, due to the fact that they consistently failed to comply with Plaintiff's discovery requests. Said Defendants thwarted court orders and Motions to Compel by failing to produce requested items, by failing to schedule depositions, by citing bad faith excuses, and by being dilatory in the discovery process.

2

3. In order to avoid setting out a long history, Plaintiff's Motion to Compel Defendant Edwin Rodriguez's Response to Interrogatories and Request for Production and for Sanctions, together with the Memorandum of Law in Support of Plaintiff's Motion to Compel, dated May 31, 2006 (**Exhibit A** ) and Attorney Mayer's supporting affidavit (**Exhibit B**) are incorporated herein.  Said Memorandum outlines in detail, on pages 4 through 7, that Defendants' clearly used stonewalling tactics and blatantly ignored court orders, when it came to providing discovery, causing lengthy delays in the case at bar and leaving Plaintiff at a severe disadvantage.   The supporting affidavit sets forth, in detail, Defendants' discovery delays throughout the case. For a more complete discovery history, please see, number No. 6 at  pages 9-14 , infra.

4. Prior to the any Defendant filing a Motion for Summary Judgment, the Plaintiff had requested further time to conduct crucial discovery, including the filing of a Federal Rule of Civil Procedure 56(f) Motion, dated September 1, 2006  (**Exhibit C**), which the Court denied as moot, discussed infra.

5. Despite the Plaintiff's diligence in pursuing discovery, critical exculpatory  evidence was discovered *after* the Court's ruling on the Motions for Summary Judgment.  Commencing in December 2007, approximately three (3) months after the Court granted summary judgment, Defendant City of New Haven began to provide "piecemeal" discovery to Plaintiff, such as providing long-requested discovery documents relating to a deposition, minutes prior to the deposition taking place. This put Plaintiff at a distinct disadvantage when it came to preparing for and proceeding with his case.

3

6. On January 9, 2008, pursuant to Plaintiff's subpoena, the New Haven Police Department, Sergeant Redding, provided plaintiff with a large portion of the requested discovery, to wit: the entire murder investigation in the death of Anthony Lucky (consisting of two (2) six-inch binders) and the New Haven Police Dept. Policy Manual (**Exhibit D**), either of which would have probably resulted in the Court denying Defendants Coppola's and City of New Haven's Motions for Summary Judgment.

7. Throughout the instant case, Defendants Rodriguez, Coppola and City of New Haven repeatedly failed to comply with discovery requests and engaged in "game playing", including withholding exculpatory evidence, to delay and/or destroy the instant action.

8. Defendants Coppola, Rodriquez, and the City of New Haven claim they did "due diligence" search and provided all of the evidence (except that which has been allegedly destroyed). In fact, on or about February 5, 2006, the City's attorney claimed to have done a due diligence search. As a result of that "diligent" search, he provided Plaintiff with (1) one item, a copy of the Court's Feb. 15, 2002 Order for the destruction of evidence (**Exhibit E**).

9. Plaintiff has exhausted all remedies to obtain needed discovery, including filing a Motion to Compel, filing a 56(f) Motion (see Exhibit C), and issuing subpoenas.

10. For reasons explained in this motion, it is obvious that the newly discovered evidence, described herein, is highly relevant, not merely cumulative or impeaching, and substantial. Said evidence would have likely changed the Court's decision in the Summary Judgment rulings, as against Defendants Coppola and City of New Haven.

4

## GROUNDS FOR RELIEF UNDER FEDERAL RULE CIVIL PROCEDURE 60B(2)

A Motion under Rule 60(b)(2) is permitted because the Motion is being made within one year from the date on which the judgment was entered and Plaintiff's claim of newly discovered evidence meets the standard, as set forth in <u>Graham v. Wyeth Lab</u>, 906 F.2d 1399, 1416 (10th Cir. 1990). The Court held, in <u>Graham</u>, that for newly discovered evidence to be used as a basis for new trial under 60(b)(2), the moving party must show that the evidence was newly discovered since trial, that the moving party was diligent in discovering new evidence, that the newly discovered evidence is not merely cumulative or impeaching, that the newly discovered evidence is material, and that a new trial with the newly discovered evidence would probably lead to a different result.

1. The Court, in the case at bar, should set aside the Order Re Stephen Coppola and Edwin Rodriguez's Motion for Summary Judgement, dated August 20, 2007, and reinstate Stephen Coppola as a Defendant. Further, the Court should set aside the Order Re City of New Haven's Motion for Summary Judgment, dated September 28, 2007, and reinstate the City of New Haven as a Defendant. The court should act, in both instances, because, in January, 2008, the New Haven Police Department provided Plaintiff with the entire contents of the Lucky murder investigation, pursuant to Plaintiff's subpoena. The contents of the investigation contains crucial, newly discovered evidence that, if presented with Plaintiff's Objection to the foregoing defendants' Motions for Summary Judgment, would likely have changed the Court's ruling in granting Defendants', City of New Haven and Officer Coppola, Motions for Summary Judgment.

5

The Defendants' consistent failure to provide discovery, as required by law, and use of dilatory tactics has significantly delayed the case and prevented Plaintiff from utilizing requested documents in the preparation of his case, both prior to summary judgment and up to the present.

2.  Throughout the case at bar,  Defendants repeatedly failed to comply with discovery requests and engaged in "game playing", and possible criminal acts (discussed infra), to prevent Plaintiff from obtaining discovery and/or to delay instant action.  For example, the Plaintiff deposed Sergeant Roger Young, the Keeper of Records for Defendant New Haven Police Department (**Exhibit F**), on August 23, 2006.  Mr. Young was *completely* unprepared in that he did not have the requested discovery for a plethora of different reasons:

a)  Sergeant Young admitted to having seen Plaintiff's subpoena and stated that he had gathered most of the documents ordered to be produced (Exhibit F, Page 5, Lines 6 -9).

b)  Sgt. Young claimed, under oath, that there was a warrant application, prepared by the New Haven Police Department, for the arrest of Mr. Session, which had been rejected by a judge. He further testified that he has copies of same, but did not produce them due to the erasure statute and he's unaware of any application for erasure  (Page 8, Lines 3-24).

c)  Sgt. Young claimed that there was no paper list of Plaintiff herein being "arrested and convicted of numerous felonies", which statement appears in the sworn affidavit in support of the arrest warrant for Plaintiff  (Page 15, Line 23 - Page 16, Line 22).

d)  In response to Plaintiff's discovery request for production of the entire New Haven Police Department Lucky murder investigation, Sgt. Young produced a file only approximately two (2) inches thick, saying, "These are all the records I have on file at this time." (Page 16 line 24 - Page 17, Line 8).

It should be noted that, due to Defendants' discovery violations, Plaintiff subpoenaed the New Haven Police Department.  As a result, on January 9, 2008, Plaintiff was provided with two (2) binders, each approximately six (6) inches thick, which allegedly comprised the entire Lucky murder investigation.  Obviously, that was substantially more information than Sgt. Young

produced in response to the discovery request.

      e) Sgt. Young admitted that he had not read the subpoena addendum (Page 19, Lines 6-8).

      f) Sgt. Young claimed that he was unaware that Plaintiff was requesting "any and all audio tapes or video recordings made by or reviewed by the New Haven Police Department" because, "I guess I didn't read it carefully." (Page 10, Lines 2-17, Page 11, Lines 1-15). Sgt. Young was unable to state whether the Mercado tape is still in existence, and Plaintiff is still unaware if it survived destruction. Obviously, the significance of the absence of this audiotape is a critical issue in Plaintiff's case.

      g) Sgt. Young claimed, under oath, that the Lucky murder investigation remained open according to the New Haven Police Department (Page 19, Lines 9-11). After failing to provide Plaintiff's counsel with any significant discovery, Sgt. Young recanted, saying he was unsure if the Lucky investigation was still open; that he was not privy to that information. (Page 24, Line 10-11).

      h) Sgt. Young testified that he did not have the requested information due to the Erasure Statute (Page   , Line   ), which did not apply in Plaintiff's case.

      i) Sgt. Young would not commit to a date to produce the discovery as requested by Plaintiffs counsel (See Page 25, Lines 18-20);

      j) In order to do a thorough search for the requested property, Sgt. Young said he would have to locate the person in charge of locating the records requested by Plaintiff, and act as a liaison, but indicated that that, in itself, would take a long time (Page 24, Line 23 - Page 25, Line 4).

      As noted above, Sgt. Young was embarrassingly unprepared and admittedly had not complied with the Plaintiff's subpoena. The Court has made reference to Plaintiff having had enough time to conduct discovery (**Exhibit G** , Order denying Plaintiff's Motion for Enlargement of Time to Complete Discovery, dated July 24, 2008). Plaintiff takes umbrage with that because it is *Defendants* failure to comply with discovery requests (as indicated in the above example of Mr. Young), and other discovery violations, discussed below, which have lead to the need for

extensions of time, most of which have been requested by Defendants.

    3. The Court failed to enforce Plaintiff's Motion to Compel, dated May 31, 2006. During a March 5, 2007, telephonic status conference with the Court, Plaintiff's former attorney, Karen Mayer, Esq., raised the issue of Defendants' blatant noncompliance. The Court indicated it would look into the matter, but never did. The Court's failure to act on said Motion to Compel, and on discovery violations in general, severely prejudiced Plaintiff's ability to properly present his case. Defendants were allowed, due to Plaintiff's compliance with discovery requests, to proceed with their case, and in fact develop their cases based on information provided by Plaintiff. Plaintiff, on the other hand, was severely disadvantaged in that, rather than receiving the needed discovery to support the theory of his case, he was forced to work without evidence needed for him to properly present it. Plaintiff was made to speculate, rather than having the information which would enable him to actually proceed with and prove his case.

    4. On January 9, 2008, Plaintiff was finally provided the exculpatory evidence he had been desperately seeking. Had the Court allowed Plaintiff to pursue said evidence via a Motion to Compel and/or 56(f) motion, there would, most likely, have been adverse outcomes for Defendants Coppola and City of New Haven in their Motions for Summary Judgment.

    The evidence Plaintiff is referencing, includes, but is not limited to the following:

        a) Statement of Juan Scruggs, dated July 25, 1999.
        b) Statement of Albert McCann, Jr., dated July 25, 1999.
        c) New Haven Police Department procedure manual
        d) New Haven Police Department training manual

    5. Well before any Defendant filed a Motion for Summary Judgment, on September 1,

2006, Plaintiff filed a 56(f) motion and affidavit (see Exhibit A and B respectively) due to

Defendants ongoing non-compliance and willful disregard for discovery orders.

In the 56(f) motion, Plaintiff represented to the Court his dire need for the discovery

requested, including the need to take certain depositions, so that he could merely proceed with

his case on an "even playing field" with Defendants. The supporting affidavit of Attorney Mayer

outlines the reasons for the delays in taking depositions. Plaintiff has been made painfully aware

that the discovery process is an important tool in preparing a case, and in preparing for

depositions, as part of a case. Plaintiff maintains that having to oppose Defendants'

Motions for Summary Judgment without the benefit of depositions left him in the dark, without

necessary information, which would have allowed him to fully and adequately put forth his case,

in his favor, prior to summary judgment.

6. Following is a list of extension requests and discovery violations with reasons therefore:

1. On July 2, 2003, the Defendant City of New Haven requested more

time to plead in response to Plaintiff's Complaint.

2. On September 7, 2003, Defendants Coppola and Rodriguez requested

more time to plead due to the fact they had retained counsel.

3. On September 24, 2003, Defendant City of New Haven requested more

time to answer, citing that relevant criminal prosecution records related to the case were erased,

by state court, and that Plaintiff that would need to obtain a court order for said evidence, conflict

counsel needed to be appointed for the individual Defendants Coppola and Rodriguez, and the

9

fact that the City's Attorney would be on trial for two (2) weeks.

      4. In October, 2003, Defendants Coppola and Rodriguez filed a Motion for a More Definite Statement.

      5. The case was brought to a stand-still from September 4, 2005 until June, 2006, due to the fact that, for unknown reasons, the City's attorney was removed from the case, and no substitute attorney was assigned. However, during this delay, on June 29, 2005, Plaintiff filed a Revised Complaint, discovery was set to be completed by March 31, 2006, and trial was set for August 15, 2006.

      6. On July 11, 2005, Plaintiff filed Interrogatories and Requests for Production on Defendants City of New Haven and Defendants Coppola and Rodriguez. Plaintiff scheduled eighteen (18) depositions throughout September, 2005. All of said depositions had to be postponed due to the fact that counsel for Defendants Coppola and Rodriguez was on another trial.

      7. On August 1, 2005, Plaintiff served Interrogatories and Requests for Production on Defendant Rodriguez.

      8. On November 28, 2005, Defendants Coppola and Rodriguez provided Plaintiff with incomplete interrogatories and requests for production, attempting to use a Freedom of Information Act claim as a basis for not providing said information, evidence, etc.

      9. In January, 2006, Plaintiff's attorney called Defendant City of New Haven and was told that written discovery requests were being typed, and would be ready the

following week.

10. On February 3, 2006, the Defendant City of New Haven responded to Plaintiff's discovery requests by indicating that all evidence was destroyed on March 5, 2002, pursuant to Court Order, dated February 15, 2002, and signed by a civil judge.

11. On February 6, 2006, at the close of business, Plaintiff received Defendant City of New Haven's responses to discovery. Basic items were missing, such as photo evidence, statements and the autopsy. Plaintiff was unable to continue with discovery without those items.

12. On February 9, 2006, Plaintiff requests postponing the depositions of Defendants Coppola and Rodriguez, due to the fact that the City has not been complying with discovery requests needed for said depositions.

13. On February 15, 2006, Plaintiff again made good faith efforts to secure discovery required to proceed with Plaintiff's case by filing a Motion for More Definite Statement's from Defendants Coppola and Rodriguez.

14. On February 21, 2006 Plaintiff replied to all Defendants' responses and objections to interrogatories and requests for production. On said date, Plaintiff also filed a Motion for Extension of Time to Complete Discovery, due to the fact that Defendants Coppola and Rodriguez claimed that, since they no longer worked for the New Haven Police Department, they no longer had access to requested the discovery, and they failed to provide it.

15. On May 10, 2006, with all parties' counsel present, a telephonic status conference was held before Magistrate Martinez. The Court ordered the parties to comply will all

discovery requests, including privilege and evidence logs, by May 17, 2006.   The Magistrate also ordered, if necessary, Plaintiff was to file a Motion to Compel no later than May 31, 2006.  The Court also indicated that that before the parties could amend the scheduling orders, under Rule 26(f), the outstanding discovery must be closed.

16.  On May 17, 2006, Defendant City of New Haven failed, again, to comply with the Court order for production, claiming it was trying to procure more information from the New Haven Police Department and the Keeper of Records.

17.  On May 24, 2006, Plaintiff received a packet of incomplete discovery from Defendant Rodriguez.

18.  On May 31, 2006, Plaintiff filed a Motion to Compel Defendant Rodriguez's and City of New Haven's Requests for Production, based on the fact that they had not fully, faithfully and honestly answered interrogatories and requests for production.  Defendant Rodriguez refused to provide, in part,  basic information regarding his employment and/or any internal affairs files, to which Plaintiff is clearly entitled, and which is vital to Plaintiff's case.

19.  On June 19, 2006, Defendants Coppola and Rodriguez filed an Objection to Plaintiff's Motion to Compel.

20.  On July 12, 2006, Plaintiff served subpoenas on numerous entities, copies were sent to defense counsel, requesting the Internal Affairs files of  Defendants.

21.  On September 1, 2006, Plaintiff filed a 56(f) Motion seeking all requested discovery and outlining all discovery delays to date, and the fact that Plaintiff had

subpoenaed third parties to procure the information that Defendants had an obligation to provide to Plaintiff.  The Court denied said motion as moot, without explanation.

22.  On October 24, 2006, the Magistrate Martinez granted Plaintiff's Motion for Extension of Time to Complete Discovery.   The Court also granted  many of Plaintiff's requests for answers to interrogatories and requests for production,  as sought in the Motion to Compel, which Defendants had previously refused to supply.  Parties were ordered to complete discovery on December 20, 2006.

23.  On  December 22, 2006,  Defendant's Coppola and Rodriguez filed a Motion for Summary Judgment (**Exhibit H**)

24.   On January 12, 2007, the Plaintiff filed  Opposition to the Motion for Summary Judgement (**Exhibit I**), as against Defendants Coppola and Rodriguez. Plaintiff also opposed summary judgment as against Defendant City of New Haven (**Exhibit J**).

It should be noted that Affidavit of Gary Session, dated January 10, 2007 , which is attached to Exhibit I, clearly indicates that both Defendants Coppola and Rodriguez questioned Mayra Mercado on November 8, 1999.

25.  Summary Judgement was granted as against Defendant Coppola, on August 20, 2007 (**Exhibit K**),  and as against Defendant City of New Haven, in September, 2007 (**Exhibit L**).

26.  Soon after the Judge's Summary Judgement ruling in favor of Coppola, Plaintiff filed a Motion for Extension of Time.

27.   During the October 26, 2007 telephonic conference with the Court

the parties mutually agreed to an extension of time to complete discovery, until  January 26, 2008,

and the Judge indicated that he would set it down for a settlement conference  after January 26,

2008.  Said settlement conference was never scheduled by the Court.

       28.  On March 20, 2008,  Plaintiff filed a Motion for Extension of Time to

Complete Discovery, because, while discovery was set to close March 26, 2007, there was a

hearing scheduled for March 27, 2007,  on Defendant Rodriguez's Motion for a Protective

Order concerning his internal affairs files, and on Plaintiff's Motion to Compel production of said

files and other records.  The deposition of Defendant Rodriguez could not be taken by Plaintiff

until the Court had ruled on those pending motions.  The *parties agreed* to an extension of time

to complete discovery up to and including April 26, 2008.  A review of the above will show that

most extensions of time and reason for discovery  delays were due to Defendants.

## GROUNDS FOR RELIEF UNDER FEDERAL RULE CIVIL PROCEDURE 60 (B)(3)

    Pursuant to Trial Rule 60(B)(3):

       *A trial court may relieve a party from an entry of default, final order, or final judgment for fraud, misrepresentation, or other misconduct by an adverse party.  To succeed on a claim of fraud, one must establish than an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense.*

    The Court should set aside the motions for summary judgment previously entered in this

matter on August 20, 2007 and September 28, 2007, and reinstate Defendants Coppola and City

of New Haven.  There is evidence that  both have perpetrated a fraud upon the Court, along with

Defendant Rodriguez by unlawfully suppressing exculpatory evidence in Plaintiff's underlying

14

criminal case, which led to Plaintiff's false arrest and imprisonment.

1. It has been consistently held that "A police officer may not unlawfully suppress evidence as to the innocence or guilt of an accused." Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, (1963); U.S.v. Agurs, 96 S.Ct. 2392, 427 U.S. 97, 49 L.Ed 2d 342 (1976); see also, U.S. v. LeRoy, 687 F.2d 610 (OA2, 1982), cert. denied, 103 S.Ct. 823.  The government has an obligation to divulge exculpatory evidence to an accused.  U.S. v. Turkish, 623 F2d 769 (CA2, 1980), cert. denied 101 S.Ct. 856,449, U.S. 1077, 66 L.Ed. 2d 800.  The duty to disclose is on the government as a whole including investigatory agencies. See U.S. v. Caldwell, 543 F.2d 1313 (P.C.Ca., 1975).  Likewise, there is a duty to preserve notes and records of an arrest.  See, U.S. v. Ganett, 617 F. 2d 831 (CAD.C, 1980).

All Defendants named in Plaintiff's Revised Complaint "owed a duty to Plaintiff to keep and maintain information about his arrest and to include in their reports exculpatory information, and certainly not to include false and misleading information, because of the purposes for which the report was created.  To the extent that as a result of the filing of criminal charges against the Plaintiff, the Plaintiff faced criminal charges and was held in custody, the Defendants responsible for such charges would be liable for violating Plaintiff's constitutional rights.  Indeed, the Defendants had a positive duty to disclose material facts to the prosecutor." Accord, Isle v. Fish, 899 F.2d 390 (CAS, 1990); see also Hortzler v. Licking County, 740 F. Supp. 47 (S.D. Oh, 1990).

Instead of fulfilling their duties as police officers, Defendants' Coppola and Rodriguez

withheld exculpatory evidence, the July 25, 1999 statements of Juan Scruggs (**Exhibit M** ) and

Albert McCann, Jr. (**Exhibit N**), which when read, would give any Court significant pause to

sign an arrest warrant.   The two statements have tremendous exculpatory value,  however the

Defendants willfully withheld "the" crucial portions of the fact witness's statements that the

Defendants knew would have not supported probable cause for Plaintiff's arrest.   More

particularly, Defendants Coppola and Rodriguez intentionally withheld  exculpatory portions of

Juan Scruggs sworn statement, as follows:

Q. IN YOUR OWN WORDS CAN YOU TELL ME WHAT HAPPENED?

A.    WELL AFTER LEAVING A GIRLFRIEND HOUSE WE ON THE WAY
TO THE STOP SIGN OF THE, WELL THE LIGHT OF COLUMBUS AND HOWARD WE
WERE CUT OFF BY SOME PUERTO RICAN FELLAS AND THE DRIVER OF THE VEHICLE
I WAS IN CUT THEM BACK OFF. SO THEY CUT US BACK OFF AND THEY EXCHANGED
WORDS WITH THE DRIVER OF THE VEHICLE I WAS IN AND AFTER WE GOT
HALFWAY PASS BEIRNE'S ON COLUMBUS AVENUE, SHOTS WERE FIRED FROM THE
OTHER VEHICLE AND DURING THAT TIME PEOPLE IN OUR VEHICLE DUCKED AND
IN THE SAME BREATH <u>I CAME AFTER PULLING A .380 GUN FROM THE TEE SHIRT
AND ACCIDENTALLY PULLING THE TRIGGER AND NOT KNOWING SHOOTING MY
FRIEND ANTHONY LUCKY IN THE RIGHT NIPPLE.</u> (Emphasis added.)

The Defendants Rodriguez and Coppola would have never been able to get a live judge to

sign their arrest warrant, for murder, if they included the above information in their application.

And, most likely, had they not withheld the answer above, Mr. Session would not have spent

nearly a year in prison, resulting in severe emotional distress and the commencement of the

instant action.   Unfortunately, Plaintiff has been damaged, once again, by Defendants' failure to

comply with discovery and requests for production.

16

2. The Court in the instant case also found that, "the plaintiff has produced evidence that one of the prosecution's key witnesses was threatened and coerced into making statements against the plaintiff." (See Exhibit K). The Court is referring to Defendants' threatening and coercion of Mayra Mercado, whose statement (**Exhibit O**), was the sole instrument the Court relied upon to find probable cause to issue a warrant for Plaintiff's arrest.

Of significant note is the fact that Ms. Mercado's sworn statement for the arrest warrant, as taken by Defendants Rodriguez and Coppola, is represented as having been taken by Defendants Rodriguez and Coppola on November 4, 1999 (**Exhibit R, r1 and r2**), Arrest Warrant Application, dated January 5, 2001, at Page 6, (**r1**)Rodriquez's supplemental affidavit dated 12/6/99 also showing statement date, November 4, 1999 and,(**r2**) sworn statement of Myra Mercado, taken at courthouse, Page 1 showing the true date November 8,1999. This fact, clearly shows the statement was taken on November 8, 1999, at the courthouse.Ms. Mercado had no business at the courthouse that day, so her being there and "giving" the statement on that date, is highly suspect. This could not be a mere clerical error, as the time that she was allegedly questioned on November 4, 1999 is represented as 4:55 pm, and the time she was actually questioned, on November 8, 1999 was from 3:43 pm to 4:09 pm. It appears that Defendants Coppola and Rodriguez have willfully misrepresented, in the Arrest Warrant Application, the date and time they actually questioned Ms. Mercado.

Even more alarming is that her statement, as provided to Plaintiff, is approximately twenty-three (23) percent redacted, parts of which entire questions and/or answers can not be

read.  Plaintiff, despite exhausting all remedies with regard to obtaining discovery, has *never* been

provided with an unredacted version of Ms. Mercado's statement, despite being imprisoned for

nearly a year, based upon same.  It should also be noted that Ms. Mercado recanted and explained

her statement given to Plaintiff's attorney (**Exhibit  P**), which was admitted as an affidavit for the

purposes of the Summary Judgment hearing.

During the deposition of Attorney Alexy, he indicated that the blanks spaces in Mayra

Mercado statements were standard practice for inaudibles, and that was the reason that Ms.

Mercado's  statement had so many empty spaces.  This excuse is laughable, or should be.  If that

much material was "missing" from an underlying statement supporting the probable cause

affidavit, there isn't a Court in the land that would have signed it.   Furthermore, Ms. Adkin's

statement, taken the day prior to Ms. Mercado's, contained inaudibles which were clearly marked

in the spaces as "INAUDIBLE".  It is beyond belief, that the Defendant City of New Haven could

have changed its policy, regarding how it handles inaudibles, in one (1) day.

3.  The Court also states in said summary judgment, "While the plaintiff states in his

affidavit that Coppola was present for statements made by specific witnesses, there is no evidence

that Coppola was involved in or present for the alleged threatening and coercion involving

Mercado."  This statement of fact can now be proven otherwise.  Officer Coppola stated at his

deposition, which was taken after summary judgment, that he questioned Mayra Mercado *twice*;

at the courthouse on November 8, 1999 and again, at the police station on December 5, 1999

(**Exhibit Q** , relevant part of Coppola's deposition). (See also **Exhibit R** (Murder Warrant

affidavit),  at Page 6, Paragraph 9, for further evidence of this fact.)

4. The Court ruled in Order Re Defendant Coppola's Summary Judgment  (See Exhibit K)

that Plaintiff did not provide evidence of any misconduct on the part of Coppola.  That

statement is not correct.  In fact, Plaintiff characterized the two officers, Rodriguez and Coppola,

as "the defendants" throughout his Opposition to their Motion for Summary Judgment (See

Exhibit I).

Undisputed evidence shows that both Coppola and Rodriquez had responsibility for

investigating the Lucky homicide, with Coppola accompanying Rodriquez to the crime scene on

the date of the crime.  Additionally,  that evidence establishes that Rodriquez took control of the

tapes, transcribed the statements on the date of the homicide, attended the autopsy, prepared

statements from the taped interviews of fact witnesses, served as the affiant in the warrant for Mr.

Session's arrest, obtained that warrant, and retained the original audio tape in his desk drawer

through a date that was after March 8, 2001,  precluding the probable cause hearing.

In fact, the circumstances of Plaintiff's case are almost identical to those in <u>Russo</u>  (Russo
v. City of Bridgeport, Docket No. 05-4302-cv), wherein the court stated:

*Undisputed evidence shows that both Depietro and Borona had responsibility for
investigating the Amoco robbery, with Borona accompanying DePietro to the service station on the
date of the crime.  Similarly, the evidence establishes that DePietro took control of the surveillance
tape on the date of the robbery, viewed the tape, prepared photographic stills from the tape, served
as the affiant in the warrant for Russo's arrest, obtained that warrant, and retained the original
videotape in his desk drawer through a date that was after November 25, 2002.*

5. The Defendants' rely heavily on their claim that evidence was destroyed by Court

Order, dated February 15, 2002 (See Exhibit E ), in an effort to avoid providing Plaintiff with

discovery he is entitled to by law and by Court Order.

In fact, a close examination of said exhibit, reveals the following deficiencies:

a) The document is illegible in that it is not possible to read anything listed under "ITEM/S NUMBER", in either the firearms/contraband section (that appears to only have a check mark in it), or the nuisance/contraband or other property section (which only appears to have a check mark in the box marked "destroyed").

b) In the "Notice to Order of the Court" section regarding the return of compliance, the document does not appear to be signed by either Clerk of Court or Authorized Assistant, as indicated on the document itself. Rather, in this section, there is what appears to be a "PD", perhaps indicating same was signed by the New Haven Police Department, rather than the Court.

c) In the Return of Compliance portion, there is an "X" underneath the forms requirement for "Name of Individual", and nothing underneath "Title of Individual" or "Date Turned Over". The return of Compliance is dated March 5, 2002, as the date that the evidence was "discarded".

d) The destruction was allegedly ordered approximately three (3) months after Plaintiff's criminal case was nolled. At that time, others were still accused of the murder of Anthony Lucky, Jr., and within the period that the State could have restored the charges against Mr. Session to the docket. Plaintiff is of the belief that destroying evidence in an open murder investigation would vitiate having had the evidence at all; and no rational explanation has been furnished for doing so. Plaintiff has been on the receiving end of "sham" explanations for

destroying the evidence, such as the destruction was for his benefit, pursuant to the erasure statute, as proffered by Sgt. Young. That excuse is unacceptable, and no other explanation for the destruction has been furnished.

The evidence contained in the above Court Order was directed preserved until further notice (Exhibit S, Letter dated January 11, 2001.) Plaintiff knows of no "further notice" to the Communication's Center to destroy said evidence. To Plaintiff's knowledge , as of March or April, 2006, the case was still open and unsolved.

6. Certain exculpatory evidence, contained in the New Haven Police Department file on the murder of Anthony Lucky, Jr., which Defendant City of New Haven had claimed was destroyed, was provided to Plaintiff on January 9, 2008, including the statements of Juan Scruggs and Albert McCann, Jr. Interestingly, during Plaintiff's underlying criminal case, the prosecutor, Attorney Alexy, stated in his deposition that the taped statements of Albert McCann and Juan Scruggs , which turned out to be exculpatory in nature, <u>were not available</u> during the March 1 and March 8, 2001 probable cause hearings.

7. Also on January 9, 2008, the New Haven Police Department, provided Plaintiff with the entire New Haven Police Department file on the murder of Anthony Lucky, Jr. Said evidence was provided pursuant to a subpoena Plaintiff had been forced to serve on City of New Haven, in a good faith attempt to procure discovery which Defendants were legally required to provide, but did not. Also at that time, Plaintiff was provided with a copy of the police policy manual (Exhibit D), which had been sought throughout the discovery process.

21

The steadfast refusal of Defendants to turn over something as basic as information on police policy, procedure and training is not understandable and should not ignored or "swept under the rug." The information contained in the requested document would have provided enough information for Plaintiff to survive summary judgment with regard to the City, based on the theory of his case.

8. Certain information was misrepresented or withheld by all Defendants in the discovery process, before and as part of the various summary judgment motions, including, but not limited to:

a) That Mayra Mercado was not a registered informant;

b) The nondisclosure of the Witness Protection status of Mayra Mercado;

c) The fact that Sharon Adkins had been picked up, but not arrested, on a drug charge and provided a statement (**Exhibit T**) which appears to be a series of leading questions, from Defendants Rodriguez and Coppola, concerning a variety of individuals alleged to be in the drug business, which Adkins had been asked to confirm.

The names provided in the statement by Adkins proved to be unknown to Sergeant Canning who had been in and out of the narcotics division for nine (9) years. Sgt. Canning testified at his deposition (**Exhibit U**, in relevant part) that the names provided by Rodriguez and Coppola, and confirmed by Adkins and Mercado were new to him.

Since all Defendants were operating on the theory that the Lucky shooting resulted from a drug-deal gone bad, Plaintiff was entitled to know where the information Defendants were

22

operating on came from, and how reliable it was. Therefore, Plaintiff sought information, through discovery, regarding the drug activity by any of the named persons investigated or observed by the New Haven Police Department for the three (3) year period predating the Lucky shooting and in the Session's case, since 1990. Plaintiff sought this information as recently as March 5, 2008, but never received it.

      d) The failure to disclose any information, whatsoever, regarding the departure of Detectives Rodriguez and Coppola, from the New Haven Police Department. The departure was suspicious in that it was sudden, both detectives were nearing their pensions, and there had been revelations of serious misconduct within the department, prior to them leaving.

Plaintiff has consistently and persistently requested, as recently as March, 2008, information regarding why said detectives left, what processes were followed, and how any department property, including investigative notebooks, were disposed of. All of this information was, and is, highly relevant to Plaintiff's claims, and there is no acceptable excuse for failure to produce same.

      e) The failure to disclose records showing Defendants Rodriguez and Coppola's rank and duty assignments during their tenure at the New Haven Police Department. This information may have lead to the discovery of the names of other people who Plaintiff may have wanted to depose regarding their knowledge of the actions of both in connection with this case, and possible prior misconduct by one or the other.

All of the above information would have provided rich fodder for an objection to the

City's summary judgment motion.  Since all of said information was what the Plaintiff had been

seeking, and the Defendants, City of New Haven, Coppola and Rodriguez were obligated (but

failed repeatedly) to disclose,  Plaintiff has a strong, good-faith, basis for filing the instant Motion.

Furthermore, our system of discovery was designed to increase the likelihood that justice

will be served in each case, not to promote principles of gamesmanship and deception in which

the person who hides the ball the most effectively wins the case.  What happened in this case is an

example of how bad faith during discovery can lead to further misconduct.  It is clear that

Defense counsels' actions constitute misconduct, at the very least, misconduct within the scope of

60(b)(3).

## GROUNDS FOR RELIEF UNDER FEDERAL RULE CIVIL PROCEDURE 60B(6)

The Court has discretion, pursuant to Rule 60(b)(6), Federal Rules of Civil Procedure, to

relieve a party from a final judgment or order for "any other reason justifying relief from the

operation of the judgment ."  A party seeking relief under Rule 60(b)(6) must show "extraordinary

circumstances justifying the opening of the final judgment."

The Court should set aside the ruling in Order Re Stephen Coppola and Edwin

Rodriguez's Motion for Summary Judgment (See  Exhibit K, Page 4), wherein the Court granted

defendants' motion as to the negligent and intentional infliction of emotional distress claims

"because the plaintiff has not produced evidence that he suffered severe emotional distress."

The Court should also set aside the ruling in Order Re City of New Haven's Motion for

Summary Judgment (See  Exhibit L , Pages 1 and 2), wherein the Court granted defendants'

motion as to Plaintiff's emotional distress claims because "plaintiff failed to produce evidence that he suffered severe emotional distress."   In fact, Plaintiff has a very well-documented case of severe emotional distress, as a result of Defendants' actions, inactions, destruction and deception. While Plaintiff was unlawfully incarcerated,  he commenced treatment with a psychiatrist, was on medication, and continues to be treated to this day.   Needless to say, this protracted litigation is causing him to further suffer.

With regard to Plaintiff's attorney, Roy Ward, Esq.'s failure to address Plaintiff's equal protection claims in Plaintiff's opposition to summary judgment, and the Court's deeming same abandoned, the Plaintiff is requesting that the Court restore said equal protection claims as well.

Plaintiff is fully aware that a party to litigation is "considered to have 'notice of all acts, notice of which can be charged upon the attorney'".   Link v. Wabash R. Co., 370 U.S. 626, 634 (1962) (quoting Smith v. Ayer, 101 U.S. 320, 326 (1880);  Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141-42 (9th Cir.  1989) (holding that clients are "considered to have notice of all facts known to their lawyer-agent").

The Supreme Court in Link, continued, "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."

The case at bar is distinguishable from Link, in the Plaintiff did not voluntarily choose the attorney who was representing him.  Plaintiff had originally hired Attorney Phillip Russell, *personally* (Emphasis supplied), to represent him in the instant action.  Without Plaintiff's

knowledge or consent, Attorney Russell hired Attorney Roy Ward, outside counsel, to handle Plaintiff's case.

Also, "[d]espite the well-settled law rule (discussed supra, in <u>Link</u>), the Ninth Circuit has joined other circuits in distinguishing between 'a client's accountability for his counsel's neglectful or negligent acts - too often a part of normal representation - and his responsibility for the more unusual circumstances of his attorney's extreme negligence or egregious conduct." <u>Community Dental Services v. Tani</u>, 282 F.3d 1164, 1168 (9th Cir. 2002).

In <u>Tani</u>, the Court considered a defendant's request to have a default judgment set aside under Rule 60(b)(6), which permits a court to grant relief if a party "demonstrates 'extraordinary circumstances' which prevented or rendered him unable to prosecute [his case]'" *Id.* at 1168 (quoting <u>Martella v. Marine Cooks & Stewards Union</u>, 448 F.2d 729, 730 (9th Cir. 1971) (per curiam)).

In <u>Tani,</u> the court concluded that, despite the "general rule" enunciated in <u>Link</u>, an attorney's gross negligence [could] constitute 'extraordinary circumstances', warranting relief under 60(b)(6). *Id.* at 1171 See also *id.* at 1170 ("The Supreme Court decision in <u>Link</u> does not require a contrary result. While it is true <u>Link</u> states that an attorney's actions are chargeable to the client, the Court expressly declined to state whether it would have held that the district court abused its discretion if the issue had arisen in the context of a motion under Rule 60(b)...Thus, <u>Link</u> does not serve as a barrier to establishing the rule that gross negligence by a party's counsel may constitute 'extraordinary circumstances' under rule 60(b)(6)").

In <u>United States v. Cirami</u>, 535 F.2d 736, 740 (2d Cir. 1976) ("<u>Cirami I</u>", the court stated "[t]here is authority for the proposition that where the conduct of counsel is grossly negligent, there may be a basis for relief under Rule 60(b0(6)."  Such relief is usually granted only after a showing of extraordinary circumstances.

This case at bar went awry when Attorney Ward, was grossly negligent in failing to address Plaintiff's equal protection and emotional distress claims (**Exhibit V**, documentation of Plaintiff's medical claims) in Plaintiff's Oppositions to Defendants' Motions for Summary Judgment.  As a result, the Court deemed said claims abandoned.  Plaintiff addressed his concerns regarding Attorney Ward's failure to address claims in Plaintiff's summary judgment motion in letters to the Court dated February 9, 2007 and November 9, 2007.

As discussed, supra, Plaintiff has a well-documented case of severe emotional distress, as well as equal protection claims, and believes  that Attorney Ward's failure to provide evidence of same and/or argue same  in response to defendants' motions for summary judgment, was either an act of  gross negligence  and/or abandonment,  for the following reasons:

1. Attorney Ward had sought, on two (2) occasions, to withdraw from Plaintiff's case. (**Exhibit W**, Attorney Ward's Motions to Withdraw and Letter to Phillip Russell, Esq.).

Throughout Plaintiff's representation by Attorney Ward, Plaintiff had requested that he file certain motions, and file oppositions, all of which had apparently fallen on deaf ears.

2. Furthermore, Attorney Ward was involved in a dispute with Attorney Phillip Russell

27

who had brought him into the case to represent Plaintiff. Attorney Russell was forced to

withdraw his appearance due to the fact that he was indicted on federal criminal charges.

It is from that point forward that Plaintiff contends that Attorney Ward did everything

in his power to "get rid of" Plaintiff's case, including presenting an unfair portrayal of Mr. Session

as a difficult client and requesting, in writing, that Mr. Session fire him. However, Attorney Ward

contradicts himself in a letter to Attorney Philip Russell, where he indicates that he must file a

motion to withdraw for reasons having to do with lack of financial support from Mr .Russell's law

firm, and ***not due to any disagreement with Plaintiff.*** (Emphasis supplied).

    3. Attorney Ward requested that client fire him.

    4. Subsequent to the Court's ruling on Summary Judgment in favor of Defendants

Coppola and City of New Haven, wherein Plaintiff's claims were abandoned by Attorney Ward,

Mr. Ward stated to Plaintiff that, "I know you're going to come after me for this", indicating that

he believed Plaintiff would either grieve him or sue him for malpractice.

The above statement clearly indicates that Mr. Ward was aware of his mistakes, which

were gross, or that he intentionally acted against Plaintiff's interest, in an effort to be relieved of

Plaintiff's case.


## CONCLUSION

Plaintiff hereby respectfully requests that the Court grant him the relief requested in this

motion, for the multitude of reasons set forth herein.

THE PLAINTIFF
GARY SESSION

By: _____
John A. Pinheiro, Esq.
167 Cherry Street, PMB 314
Milford, Connecticut 06460
(203) 874-4477
Fax: (203) 882-0354
Cell: (203) 209-2449
Email: japinheiro@optonline.net
Fed. Bar. No. CT02977

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed first class, postage prepaid, to the following this August 19, 2008:

Thomas E. Katon, Esq.
Susman, Duffy & Segaloff, P.C.
55 Whitney Avenue
P.O. Box 1684
New Haven, Connecticut 06507

Thomas W. Ude, Jr., Esq.
Corporation Counsel
165 Church Street, 4th Floor
New Haven, Connecticut 06510

_____
John A. Pinheiro, Esq.

## EXHIBIT LIST

A) Motion to Compel, Memo of Law in Support of Plaintiff's Motion to Compel
    (Rodriguez and City Requests for Production)    5/31/06
B) Supporting Affidavit for above (Karen Mayer, Esq.)    "
C) Plaintiff's 56(f) Motion w/ supporting affidavit    9/1/06
D) New Haven Police Dept. Policy Manual
E) Court Order (destroy evidence)    2/15/02
F) Sgt. Young deposition    8/23/06
G) Order denying P's Request Enlargement Time    7/24/08
H) Motion for Summary Judgment (Cop/Rodriguez)    12/22/06
I) Opposition to Copp/Rod Summary Judgment    1/12/07
J) Opp to City Summary Judgement    6/7/07
K) Order re Coppola/Rodriguez Summary Jmt    8/20/07
L) Order re City's Summ Jmt    9/21/07
M) Scruggs statement    7/25/99
N) Albert McCann, Jr. statement    "
O) Mayra Mercado statement    11/08/99
P) Mayra Mercado affidavit (recanting)
Q) Part of Coppola's depo where he admits questioning Mayra
R) Murder Warrant Affidavit
r1)Rodriquez supplemental affidavit 12/6/99
r2)Mayra's page 1 statement dated 11/8/99
S) Do Not Destroy letter 1-11-01
T) Sharon Adkin's statement
U) Sgt. Canning depo (relevant part) stating names provided by
    Sharon Adkins were new to him.
V) Documentation of Plaintiff's medical claims
W) Roy's Motions to Withdraw, Letter to Russell